# AIMAN-SMITH & MARCY
PROFESSIONAL CORPORATION

Randall B. Aiman-Smith #124599
Reed W.L. Marcy #191531
Hallie Von Rock #233152
Carey A. James #269270
Brent A. Robinson #289373
7677 Oakport St. Suite 1150
Oakland, CA 94621
T 510.817.2711
F 510.562.6830
ras@asmlawyers.com
rwlm@asmlawyers.com
hvr@asmlawyers.com
caj@asmlawyers.com
bar@asmlawyers.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KRISTAL NUCCI and KELLY SHAW, individually and on behalf of all others similarly situated and the California Labor & Workforce Development Agency, and ANA GOSWICK, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>RITE AID CORPORATION, THRIFTY PAYLESS, INC. and DOES 1-10, inclusive,<br><br>        Defendants. | Case No.: 19-cv-01434-LHK<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>The Honorable Lucy H. Koh<br>Date:        April 16, 2020<br>Time:        1:30 p.m.<br>Courtroom:  8, 4th Floor, San Jose |

# TABLE OF CONTENTS

**NOTICE OF MOTION AND MOTION**............................................................................**6**

**MEMORANDUM OF POINTS AND AUTHORITIES**...................................................**6**

**I.      INTRODUCTION** ....................................................................................................**6**

**II.     PLAINTIFFS' OPERATIVE COMPLAINT AND CLAIMS ASSERTED** .......**9**

**III.    COMMON FACTS AND EVIDENCE**..................................................................**10**

   *A.      Rite Aid's Dress Code Is Specific, Coercive, and Mandates Employee Compliance.*...........*10*

   *B.      Rite Aid's "Blue Vest Alternative" Is Illusory.*.................................................*12*

     i.      Rite Aid's classwide blue vest policy language does not in fact permit a blue vest as an alternative to wearing a navy-blue shirt and khaki bottoms. ....................................................*13*

     ii.  There are no blue vests available at most California  stores....................................*15*

     iii.     Virtually all employees bought "Team Colors" clothing and virtually none believed that blue vests were an alternative. ...........................................................................................*16*

**IV.    RITE AID'S DRESS CODE VIOLATES CALIFORNIA LAW.**........................**18**

   *A.      Uniform Element 1: Rite Aid Specifies the Design and Color of the Clothing Worn by Its Employees.* ...........................................................................................................*19*

   *B.      Uniform Element 2:  Clothing in Rite Aid's "Team Colors" Is Not "Generally Usable in the Occupation"* ......................................................................................................*21*

   *C.      Rite Aid's Blue Vest Is Not a Defense to Liability Under the Wage Order.* ........................*22*

   *D.      All Class Claim Flow From Rite Aid's Illegal Dress Code.*..................................*23*

**V.      THE CLASS THAT PLAINTIFFS SEEK TO CERTIFY.** ...............................**24**

**VI.     CLASS TREATMENT OF PLAINTIFFS' CLAIMS IS APPROPRIATE.** ....................**25**

   *A.      Federal Rule of Civil Procedure 23(a)* ............................................................*25*

     i.      Numerosity, Typicality, and Adequacy of Representation.................................*25*

**Plaintiffs' Notice of Motion and Motion and Memorandum of Points and Authorities**
*Nucci, et al. v. Rite Aid Corporation*                                                           **Case No. 19-cv-01434-LHK**
Page 2

     ii.    Commonality.................................................................................27

  **B.**   *Federal Rule of Civil Procedure 23(b)(3)* ...............................................29

     i.    Predominance................................................................................29

     ii.    Superiority...................................................................................30

**VII.**   **CONCLUSION.**.................................................................................**31**

## TABLE OF AUTHORITIES

### Statutes

Cal. Lab. Code § 1174.......................................................................................24

Cal. Lab. Code § 1174.5....................................................................................24

Cal. Lab. Code § 1194.........................................................................................9

Cal. Lab. Code § 1194.2......................................................................................9

Cal. Lab. Code § 1197.........................................................................................9

Cal. Lab. Code § 201..............................................................................9, 10, 24

Cal. Lab. Code § 202..............................................................................9, 10, 24

Cal. Lab. Code § 203.....................................................................................9, 24

Cal. Lab. Code § 226.....................................................................................9, 24

Cal. Lab. Code § 2802...............................................................................passim

I.W.C. Wage Order No. 4 (8 C.C.R. 11040)......................................................7

I.W.C. Wage Order No. 7 (8 C.C.R. 11070)..............................................passim

Labor Code Private Attorneys General Act of 2004 (\Labor Code § 2698, *et seq.*)................................9

Unfair Competition Law (Cal. Bus. & Profs. Code § 17200, et seq.) ................................9, 24

### Other Authorities

DLSE Enforcement Manual................................................................................19

DLSE Opinion Letter 1989.11.03.................................................................21, 22

DLSE Opinion Letter 1991.02.13.....................................................................22

DLSE, Minimum Wage Bulletin, 2011..............................................................19

**Plaintiffs' Notice of Motion and Motion and Memorandum of Points and Authorities**
*Nucci, et al. v. Rite Aid Corporation*                                       **Case No. 19-cv-01434-LHK**
Page 3

Statement of Basis, 1976, Wage Order No. 4 ..................................................................7, 19

Statement of Basis, 1980, Wage Order No. 7 ...........................................................................7

**Rules**

FRCP 23 ...............................................................................................................25, 27, 29, 30

**California Supreme Court Decisions**

*Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal.4th 1094 (2007) .........................................21

*Schachter v. Citigroup, Inc.*, 47 Cal.4th 610 (2009) .........................................................10

*Voris v. Lampert*, 7 Cal.5th 1141 (2019) ..........................................................................10

**California Court of Appeal Decisions**

*Dep't of Industrial Relations v. UI Video Stores, Inc.*, 55 Cal.App.4th 1084 (1997) ...........10

*Espejo v. The Copley Press, Inc.*, 13 Cal.App.5th 329 (2017)............................................10

*In re Work Uniform Cases*, 133 Cal.App.4th 328 (2005) ...................................................10

*Townley v. BJ's Restaurants, Inc.*  37 Cal.App.5th 179 (2019) ..........................................18

*Vasquez v. Franklin Management Real Estate Fund, Inc.*, 222 Cal.App.4th 819 (2013).....................10

*Von Nothdurft v. Steck*, 227 Cal.App.4th 524 (2014) ........................................................21

**United States Supreme Court Decisions**

*Adams v. Tanner*, 244 U.S. 590 (1917).................................................................................9

*Tyson Foods Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2015).................................................29

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .........................................25, 27, 28

**United States Circuit Court of Appeals Decisions**

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ............................................................27

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011)..........................................27

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)...................................25, 26, 29

*Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161 (9th Cir. 2014).....................24, 27, 28, 30

*Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125 (9th Cir. 2016) .................................18

*Senne v. Kan. City Royals Baseball Corp.*,934 F.3d 918, 938, 944 (9th Cir. 2019).....................7, 29

*Vaquero v. Ashley Furniture Indus.*, 824 F.3d 1150 (9th Cir. 2106)..............................29, 30

**Plaintiffs' Notice of Motion and Motion and Memorandum of Points and Authorities**
*Nucci, et al. v. Rite Aid Corporation*                                    Case No. 19-cv-01434-LHK
Page 4

*Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168 (9th Cir. 2010) ...................................................25

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) ...............................................29

**United States District Court Decisions**

*Alonzo v. Maximus, Inc.*, 275 F.R.D. 513 (C.D. Cal. 2011) ...............................................................25

*Becerra v. Radioshack Corp.*, 2012 U.S. Dist. LEXIS 175522 (N.D. Cal. 2012) .......................7, 19, 22

*Brown v. Abercrombie & Fitch Co.*, 2015 U.S. Dist. LEXIS 176214 (C.D. Cal. 2015) .......................10

*Guifi Li v. A Perfect Day Franchise, Inc.*  2012 U.S.Dist.LEXIS 83677 (N.D.Cal. 2012, No. 5:10-CV-
01189-LHK) .....................................................................................................................................17

*Hoffman v. Blattner Energy, Inc.*, 315 F.R.D. 324 (C.D. Cal. 2016) ..................................................30

*Hopkins v. Stryker Sales Corp.*, 2012 U.S. Dist. LEXIS 67101 (N.D. Cal. 2012) ..............................28

*Jimenez v. Allstate Ins. Co.*, 2012 U.S. Dist. LEXIS 65328 (C.D. Cal. 2012) ...............................27, 28

*Kamar v. Radio Shack Corp.*, 254 F.R.D. 387 (C.D. Cal. 2008) .......................................................29

*Ruiz v. XPO Last Mile, Inc.*, 2016 U.S. Dist. LEXIS 152095 (S.D. Cal. 2016) .................................30

*Sanchez v. Aerogroup Retail Holdings, Inc.*, 2013 U.S. Dist. LEXIS 66571 (N.D. Cal. 2013) ............10

*Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520 (N.D. Cal. 2018) .....................................25

*Schulz v. Qualxserv, LLC*, 2012 U.S. Dist. LEXIS 58561 (S.D. Cal. 2012)............................27, 28, 29

*Stuart v. RadioShack Corp.*, 2009 U.S. Dist. LEXIS 12337 (N.D. Cal. 2009)....................................26

*Sullivan v. Kelly Services, Inc.*, 268 F.R.D. 356 (N.D. Cal. 2010) .....................................................29

*Trosper v. Styker Corp.*, 2014 U.S. Dist. LEXIS 117453 (N.D. Cal. 2014).........................................27

**Plaintiffs' Notice of Motion and Motion and Memorandum of Points and Authorities**
*Nucci, et al. v. Rite Aid Corporation*                                                                   **Case No. 19-cv-01434-LHK**
Page 5

1

## NOTICE OF MOTION AND MOTION

2     PLEASE TAKE NOTICE that on April 16, 2020, at 1:30 p.m., in Courtroom 8 of the

3  United States District Court for the Northern District of California, San Jose Division,

4  Plaintiffs Kristal Nucci, Kelly Shaw, and Ana Goswick ("Plaintiffs") will and hereby do move

5  this Court for an order certifying this matter as a class action pursuant to Federal Rule of Civil

6  Procedure 23.  This motion is based upon this notice of motion and motion, the supporting

7  memorandum of points and authorities filed herewith, the evidence and declarations filed

8  herewith, and any further briefing and arguments of counsel as permitted by the Court at the

9  hearing or otherwise.

10     Plaintiffs request that this Court: certify this case as a class action as to the claims

11  asserted in Plaintiffs' Second Amended Complaint (ECF No. 30); create necessary subclasses

12  as determined by the Court in its discretion; appoint Plaintiffs as representatives of the class or

13  classes so certified; appoint the law firm of Aiman-Smith & Marcy as class counsel; and make

14  such other orders as are necessary to effectuate the primary relief sought.

## MEMORANDUM OF POINTS AND AUTHORITIES

15

16  **I.    INTRODUCTION**

17     Defendants Rite Aid Corporation and Thrifty Payless, Inc. (together, "Rite Aid")

18  operate retail drug stores throughout the United States, including approximately 544 stores in

19  California.  Declaration of Brent A. Robinson ("Robinson Dec."), Ex. 1 at 11:6-13 (Resp. to

20  Interrogatories).  This case arises from Rite Aid's requirement that its California employees

21  purchase and wear work uniforms – Rite Aid's "Team Colors" – without reimbursement in

22  violation of California law, including Wage Order 7, and Labor Code section 2802.

23     Plaintiffs seek to certify a class consisting of all non-exempt employees – excluding

24  pharmacists, pharmacy interns, and asset protection agents[1] – working in any California Rite

25

26

27  [1] Plaintiffs' Second Amended Complaint (ECF No. 30) does not exclude pharmacists, pharmacy interns, and loss prevention agents from the putative class.  However, discovery has

28  revealed that these employees are subject to different dress codes – for example, "asset protection agents" wear plain clothes in stores.  Accordingly, Plaintiffs do not seek

Plaintiffs' Notice of Motion and Motion and Memorandum of Points and Authorities
*Nucci, et al. v. Rite Aid Corporation*
Page 6

Case No. 19-cv-01434-LHK

1   Aid store at any time from March 13, 2015 through the trial date (the "Class Period").  There

2   are approximately 26,232 putative class members.  *Id*., Ex. 1 at 1:23-28.

3          California law requires employers to pay for necessary expenditures of employment,

4   including work uniforms.  Lab. C. § 2802; Wage Order No. 7, § 9(A).  An expenditure under

5   2802 can be anything that the employer requires the employee to purchase.  *See,* Lab. C. §

6   2802 ("An employer shall indemnify his or her employee for all necessary expenditures ...

7   incurred ... in direct consequence of the discharge of his or her duties, or of his or her

8   obedience to the directions of the employer ... .").  Wage Order No. 7 (which applies to the

9   mercantile industry and, thus, governs this case) provides that a "uniform" is clothing of a

10  "distinctive design or color."  Wage Order No. 7 § 9(A).  "Distinctive" in this context does not

11  mean "unique."  *See, Becerra v. Radioshack Corp.*, 2012 U.S. Dist. LEXIS 175522, at *9-10,

12  16 (N.D. Cal. 2012).  Rather, clothing is of a "distinctive design or color" where the employer

13  specifies the color or design of the clothing, and the clothing is not "generally usable in the

14  occupation."  *Id*.; CAJ Dec, Ex. 2 at 24 (Statement of Basis, 1976, Wage Order No. 4[2]); *id.*,

15  Ex. 3 at 85-86 (Statement of Basis, 1980, Wage Order No. 7).

16         Here, Rite Aid requires, by companywide written policy, that its employees dress in its

17  "Team Colors" of navy blue tops and khaki colored bottoms, which must also comply with

18  numerous additional, detailed style requirements imposed by Rite Aid.  *See,* Robinson Dec., Ex

19  4  at 11-12 (Associate Handbook); *id.*, Ex. 5 at 3-6, 9 (Store Dress Standards).  The colors Rite

20  Aid has adopted as its "Team Colors" – blue shirts and khaki pants – have been found to be a

21  uniform under California law.  *See, id.*, Ex. 6 at § 45.5.6 (DLSE Enforcement Manual); *see*

22  *also, Becerra*, at *14.

23         Liability arises directly from Rite Aid's written policies; therefore, certification of

24  Plaintiffs' claims is appropriate.  *See, Senne v. Kan. City Royals Baseball Corp.*,934 F.3d 918,

25  938, 944 (9th Cir. 2019).  Class treatment is also supported by Plaintiffs' survey evidence:  of

26

27  certification of those employees' claims.

28  [2] Wage Order 4 is identical in all relevant particulars to Wage Order 7, which governs this case.

**Plaintiffs' Notice of Motion and Motion and Memorandum of Points and Authorities**
*Nucci, et al. v. Rite Aid Corporation*                                                    **Case No. 19-cv-01434-LHK**
Page 7

1    the surveyed putative class members, 100 percent said they were required to wear navy blue

2    tops, 98 percent said they were required to wear khaki bottoms, 95.9 percent said they

3    purchased a navy blue top to comply with Rite Aid's "Team Colors" dress code, and 93.8

4    percent stated that they purchased khaki bottoms to  comply with Rite Aid's "Team Colors"

5    dress code.  *See,* Robinson Dec., Ex. 7 at 2 (Declaration of Jeffrey S. Petersen, Ph.D.).

6          Rite Aid's primary defense appears to be that employees were permitted to wear a Rite

7    Aid-provided blue vest as an alternative to "Team Colors" of navy blue top and khaki-colored

8    bottoms.  There are manifold problems with this defense, however.  First, Rite Aid's own dress

9    code is clear that Team Colors are expected and a blue vest is permitted only where the

10   employee is "unable" to dress in Team Colors.  Second, a blue vest is an alternative only if it is

11   available to be worn; Rite Aid had no blue vests at all at 71 percent of its California stores, and

12   only one or two vests at another 12 percent of its stores.  Third, Plaintiffs' survey evidence,

13   showing that virtually all employees bought Team Colors clothing , demonstrates that

14   employees never believed they could wear a blue vest as an alternative to Team Colors

15   clothing.  And, fourth, the blue vest is a defense only as to employees who *never* purchased or

16   wore Team Colors and the blue vest is, therefore, of no moment at class certification unless

17   there was evidence that some significant group of employees *never* bought Team Colors

18   because they *always* wore a blue vest.  That evidence does not exist.

19          Plaintiffs' claims rest on two common questions:  1) is Rite Aid's written dress code

20   lawful; and 2) does Rite Aid's purported "blue vest alternative" operate to absolve it from

21   liability under either the Wage Order or Labor Code section 2802.  These questions are capable

22   of classwide resolution with common evidence, and answering these questions will resolve the

23   central issues in this case in a single stroke.  Damages – which are always variable and not a

24   basis for denial of class certification – can be readily determined with simple survey and

25   statistical evidence.  *See,* Robinson Dec., Ex. 7 at 3, 25 (Declaration of Jeffrey S. Petersen,

26   Ph.D.).

27          This case is eminently suited for class treatment.  The basic inequity of requiring

28   employees to pay to work – a necessary consequence of compelling employees to purchase

**Plaintiffs' Notice of Motion and Motion and Memorandum of Points and Authorities**
*Nucci, et al. v. Rite Aid Corporation*                                                    Case No. 19-cv-01434-LHK
Page 8

their own uniforms – is well-recognized.  As long ago as 1917, Justice Brandeis observed that "the necessity of paying for the privilege of going to work, and paying more the more urgently the job is needed, not only keeps people unnecessarily unemployed, but seems foreign to the spirit of American freedom and opportunity"  *See, Adams v. Tanner*, 244 U.S. 590, 604 (1917) (Brandeis, J., dissenting)

Rite Aid alone benefits from its dress code, which exists to promote Rite Aid's brand and identify employees to customers.  The cost of that benefit should be borne by Rite Aid, not its employees.

## II.    PLAINTIFFS' OPERATIVE COMPLAINT AND CLAIMS ASSERTED

Plaintiffs filed their initial complaint on March 19, 2019, and the operative Second Amended Complaint ("SAC") on October 2, 2019.  ECF No. 30.  The SAC brings class claims, a claim for public injunctive relief, and a claim under the Labor Code Private Attorneys General Act of 2004 ("PAGA"; Labor Code § 2698, *et seq*.).  All claims in the SAC arise from Rite Aid's requirement that California employees purchase and wear work uniforms without reimbursement.  The SAC contains class claims for: (1) failure to indemnify business expenses (Labor Code § 2802); (2) failure to provide uniforms (Wage Order No, 7, § 9(A)); (3) failure to pay minimum wage (Labor Code §§ 1194, 1194.2, and 1197 and Wage Order No. 7, § 4(A)); (4) failure to furnish accurate wage statements (Labor Code § 226); (5) waiting time penalties (Labor Code §§ 201, 202, and 203); and (6) restitution under California's Unfair Competition Law (Business and Professions Code § 17200, *et seq*.).

Plaintiffs' claim for failure to pay minimum wages alleges that, by requiring members of the putative class to purchase their own uniforms, Rite Aid effectively pushes their wages below the legal minimum.  *See,* ECF No. 30 at ¶ 24; *Sanchez v. Aerogroup Retail Holdings,*

**Plaintiffs' Notice of Motion and Motion and Memorandum of Points and Authorities**
*Nucci, et al. v. Rite Aid Corporation*                                                                    **Case No. 19-cv-01434-LHK**
**Page 9**

*Inc.*, 2013 U.S. Dist. LEXIS 66571, at *25-35 (N.D. Cal. 2013) (Koh, J.).[3]  Plaintiffs' claims for inaccurate wage statements and waiting time penalties are premised not only on Rite Aid's minimum wage violations, but also on the theory that the amounts Rite Aid failed to reimburse for uniform expenses are themselves wages which, for example, are owed at termination of employment under Labor Code §§ 201 and 202.[4]

## III.    COMMON FACTS AND EVIDENCE

### A.    Rite Aid's Dress Code Is Specific, Coercive, and Mandates Employee Compliance.

At the beginning of their employment, all Rite Aid store employees are provided with Rite Aid's Associate Handbook.  *See,* Robinson Dec., Ex. 9 at 32:9-19 ((30(b)(6) Depo of Ceballos).  Rite Aid's  Associate Handbook states:  "This Handbook … introduces Rite Aid's policies and procedures, summarizing our expectations of you as a Rite Aid associate."  *Id.*, Ex. 4 at 7 (Associate Handbook).  Rite Aid's Handbook devotes an entire section to "Team Colors" and provides:  "Team Colors attire is mandatory in our store environment."  *Id.* at 11.  "Our signature navy blue and khaki Team Colors look," the Handbook states beside an animated picture of a dog in khaki pants and a navy blue shirt, "focuses on comfort, team

---

[3] *See also, Brown v. Abercrombie & Fitch Co.*, 2015 U.S. Dist. LEXIS 176214, at *24-25 (C.D. Cal. 2015) (quoting *id.*) ("'An employee who has ostensibly been paid the minimum wage but has been required to make an expenditure which reduces the employee's net income below the minimum wage is, in essence, in the same position as an employee who was paid less than the minimum wage ... .'"); *Vasquez v. Franklin Management Real Estate Fund, Inc.*, 222 Cal.App.4th 819, 825, 827, 828 and n. 8 (2013) (employer's failure to reimburse business expenses resulted in failure to pay minimum wage).

[4] Cases holding clothing reimbursements are wages:  *Sanchez*, 2013 U.S. Dist. LEXIS 66571, at *37-38 ("reimbursements for uniform expenses are wages"); *Schachter v. Citigroup, Inc.*, 47 Cal.4th 610, 618 (2009) ("wages also include those benefits to which an employee is entitled ... including … clothing"); *In re Work Uniform Cases*, 133 Cal.App.4th 328, 338 (2005) ("payment to employees for work uniforms ... should be considered like any other payment of wages ... ."); *Espejo v. The Copley Press, Inc.*, 13 Cal.App.5th 329, 367 (2017) (same; quoting *id.*); *Dep't of Industrial Relations v. UI Video Stores, Inc.*, 55 Cal.App.4th 1084, 1091-1192 (1997) (payments for work uniforms are wages); *Voris v. Lampert*, 7 Cal.5th 1141, 1155 (2019) (same).

**Plaintiffs' Notice of Motion and Motion and Memorandum of Points and Authorities**
*Nucci, et al. v. Rite Aid Corporation*                                                                 **Case No. 19-cv-01434-LHK**
Page 10

1   unity, and helps to project a friendly, neighborhood environment in our stores …'" *Id.* "If you

2   work in a store," the Handbook continues, "you are expected to dress according to our Team

3   Colors guidelines." *Id.* at 12.  The Handbook admonishes: "Associates who report to work

4   inappropriately … dressed may be asked to leave and change into acceptable clothing or to

5   otherwise correct the violation.  In such instances, the time away from work may be without

6   pay." *Id.*  The Handbook makes no mention whatsoever of blue vests or the purported option

7   of wearing such a vest as an alternative to an employee's own navy blue top.  *Id.*

8       Rite Aid's Team Colors requirement is also set forth in Rite Aid's New Hire Orientation

9   kit.  The New Hire Orientation kit is intended to be reviewed by management personnel with

10  every new employee.  *See, id.*, Ex. 9 at 38:9-40:7 (30(b)(6) Ceballos Depo.).  Next to a picture

11  of a navy blue shirt and a pair of khaki pants, the kit states: "We wear a name badge and dress

12  in Team Colors to differentiate us from the competition, helping us to stand out and connect

13  with our customers on a personal level." *Id.*, Ex. 10 at 000181 (New Hire Orientation Kit).

14  The kit continues: "Please remember to wear your name badge and dress in Team Colors

15  during working hours." *Id.*  Like the Associate Handbook, the New Hire Orientation kit says

16  nothing whatsoever about blue vests or any alternative to an employee's own navy blue top.

17  *Id.*

18      Rite Aid's dress code is further explained in Rite Aid's Store Dress Standards booklet

19  and Retail Dress Code.  The Retail Dress Code states that it "applies to all retail Rite Aid

20  associates." *Id.* Ex. 12 at 105.  The Dress Standards and Dress Code set forth an extensive list

21  of mandatory requirements for employee dress.  Any "shirt, blouse, or sweater that is not navy

22  blue" is "unacceptable." *Id.*, Ex. 11 at 000106-07 (Retail Dress Code); *id.*, Ex. 5 at 9 (Store

23  Dress Standards).  Shirts in the "wrong shade of blue" are "unacceptable."  "Slacks, skirts, or

24  dresses not khaki in color" are also "unacceptable." *Id.*, Ex. 11 at 000106-07 (Retail Dress

25  Code); *id.*, Ex. 5 at 9, 12 (Store Dress Standards).

26      Men's tops must be polos, button-downs with collars, or sweaters.  Men's bottoms must

27  be "khaki colored slacks which are clean, pressed and conservative." *Id.*, Ex. 5 at 5 (Store

28  Dress Standards); *id.*, Ex. 11 at 106-07 (Retail Dress Code).  Women's navy blue tops must be

**Plaintiffs' Notice of Motion and Motion and Memorandum of Points and Authorities**
*Nucci, et al. v. Rite Aid Corporation*                                                    Case No. 19-cv-01434-LHK
Page 11

polos, button-downs with collars, blouses, or sweaters; women's bottoms must be "khaki colored slacks or skirts which are clean, pressed and conservative." *Id.*, Ex. 5 at 3 (Store Dress Standards); *id.*, Ex. 11 at 000106 (Retail Dress Code).  Blouses must be "loosely fitting," and must extend "to the waist or slightly below"; skirts must have a "hemline that does not exceed two inches above the knee"; slacks must be "trousers made from woven cloth with a flat front or pleats"; and sweaters must be a "knitted or crocheted pull over that extends to the waist or slightly below." *Id.*, Ex. 5 at 2 (Store Dress Standards); *id.*, Ex. 11 at 105-106 (Retail Dress Code).  "T-shirts, tank tops, and tops that are sheer or see through, expose the midriff or back, or have a low cut neckline" are prohibited.  *Id.*, Ex. 11 at 106 (Retail Dress Code).  "Any shirt, blouse, or sweater with a graphic or logo other than the Rite Aid logo" is prohibited, unless it can be "completely covered by the Rite Aid Name Badge." *Id.*, Ex. 11 at 000106-107 (Retail Dress Code); *Id.*, Ex. 5 at 9 (Store Dress Standards).  "Any item of clothing that is dirty, torn, frayed, stained, wrinkled, revealing, or too tight" is prohibited, as are shorts, leggings, cargo pants, denim, capris, and athletic wear.  *Id.*, Ex. 11 at 000106-107 (Retail Dress Code); *Id.*, Ex. 5 at 9-10 (Store Dress Standards).

The extensive, highly-specific requirements of Rite Aid's Dress Code bring the required navy blue tops and khaki bottoms firmly within the definition of "uniform" as that term is defined by California law.  More importantly, for purposes of certification, the question of whether Rite Aid's dress code prescribes a uniform is common to the class, will be answered by common evidence, and will resolve an issue central to the claims of each class member in a single stroke.

**B.      Rite Aid's "Blue Vest Alternative" Is Illusory.**

Rite Aid's primary contention appears to be that employees are permitted to wear a Rite Aid-provided blue vest as an alternative to the mandatory "Team Colors."  The evidence, however, demonstrates: 1) that Rite Aid's written policy does not, in fact, permit blue vests as an alternative to "Team Colors;" 2) that most Rite Aid stores have no vests at all and the remainder only a tiny fraction of the vests needed to create an actual viable alternative to "Team Colors;" 3) that virtually all Rite Aid employees purchase and wear "Team Colors" -

**Plaintiffs' Notice of Motion and Motion and Memorandum of Points and Authorities**
*Nucci, et al. v. Rite Aid Corporation*                                                    **Case No. 19-cv-01434-LHK**
Page 12

1   navy blue shirts and khaki pants; and 4) virtually none believes that blue vests are ever an
2   alternative to wearing "Team Colors."

3              i.      **Rite Aid's classwide blue vest policy language does not in fact permit**
4                      **a blue vest as an alternative to wearing a navy-blue shirt and khaki**
5                      **bottoms.**

6

7           Rite Aid's Store Dress Standards booklet and Retail Dress Code contain identical
8   language regarding blue vests:  "In the event an associate is unable to report to work in Team
9   Colors, Rite Aid will make available a company-issued vest which he/she will be required to
10  wear ....  Each store will be supplied with company issued vests (navy blue) that will be
11  available for those associates who are unable to meet Rite Aid's navy blue requirement or
12  report to work wearing a color other than navy blue."  *Id.*, Ex. 11 at 000105 (Retail Dress
13  Code); *id.*, Ex. 5 at 13 (Store Dress Standards).
14          Rite Aid would have the Court examine this language in a vacuum, detached from the
15  remainder of the "Team Colors" policies.  The blue vest language appears as an afterthought
16  following extensive, detailed descriptions of "Team Colors" and the exhortation to always
17  dress in "Team Colors."  Consider the wording Rite Aid uses to describe the Team Colors
18  policy:

19          •   "Team Colors attire is *mandatory* in our store environment." *Id.*, Ex. 4 at 000119
20              (Associate Handbook).

21          •   "Our *signature* ... Team Colors look…" *Id.*

22          •   "You are *expected* to dress according to our Team Colors *guidelines*." *Id*. at
23              000120.

24          •    Any top in any color but navy blue, or in the wrong shade of navy blue, is
25              "*unacceptable*."  *Id.*, Ex. 11 at 000106 (Retail Dress Code)

26          •   Bottoms in any shade except khaki are "*unacceptable*."  *Id*.

27          •   Not in Team Colors means "*inappropriately … dressed*."  *Id*. at 000120.

28          •   The dress code imposes lengthy proscriptive requirements:  "loosely fitting shirt

**Plaintiffs' Notice of Motion and Motion and Memorandum of Points and Authorities**
*Nucci, et al. v. Rite Aid Corporation*                                                                    **Case No. 19-cv-01434-LHK**
Page 13

that extends to the waist;" "a hemline … two inches above the knee;" "trousers [of] woven cloth with flat front or pleats;" "sweater knitted or crocheted." *Id.*, Ex. 11 at *passim* (Retail Dress Code).

- Employees who are "*inappropriately dressed*" may be asked to leave and change into "*acceptable clothing*" and the absence is "*without pay*." *Id*, Ex. 4 at 000120 (Associate Handbook).

This is coercive, mandatory, language that does not in any way suggest that employee deviation is permitted. Only after a lengthy description of what employees must, and must not, wear, every day, without fail, on pain of being sent home without pay, comes this language in the Store Dress Standards: "In the event an associate is *unable* to report to work in Team Colors ... " a blue vest is permitted. *Id.*, Ex. 5 at 13 (Store Dress Standards).

In overall context, Rite Aid's words regarding the blue vest – "in the event" and "unable" and "Team Colors" – all suggest that Rite Aid expects employees to wear the "Team Colors," and that the "Team Colors" must be worn unless the employee is "unable" to do so. Rite Aid's words "in the event" suggest that being "unable" to wear Team Colors should be an infrequent and unusual occurrence, and it is not a matter of choice on any given day. "Unable" is not cognate with "would rather not," or "if you don't want to buy these clothes." Rite Aid does not say, for example: "If you would prefer not to wear a navy blue shirt or khaki colored pants, then please feel free to wear one of our company-provided blue vests." Rite Aid's blue vest language, in contrast to its lengthy, specific, mandatory dress code, does not provide an actual alternative to employees wearing the "Team Colors" uniform of navy blue shirt and khaki pants. Thus, Rite Aid's purported "blue vest alternative" is, in context, not provided as a freely-to-be-chosen alternative to "Team Colors," but is, at best, an unusual exception to be invoked infrequently, preferably never. Interestingly, the penalty for coming to work "inappropriately dressed" is to leave work, "without pay" to change into "acceptable clothing." *See, id.,* Ex. 4 at 12 (Associate Handbook). Query, if a blue vest is a real alternative to not being in Team Colors, why would the employee have to leave? He or she could just put on a blue vest.

**Plaintiffs' Notice of Motion and Motion and Memorandum of Points and Authorities**
*Nucci, et al. v. Rite Aid Corporation*                                          Case No. 19-cv-01434-LHK
Page 14

Still further, Rite Aid's own 30(b)(6) witness testified that: "the Retail Dress Code is not a document that Rite Aid expects to be provided to all associates" but Rite Aid does expect that the Associate Handbook is provided to all new hires. *See, id.*, Ex. 9 at 91:3-92:10 (30(b)(6) Ceballos Depo.)  Since the Associate Handbook, which is provided, contains no mention of blue vests, and the Dress Code, which does mention blue vests, is not provided, some significant number of employees are never actually provided with *any* information regarding the "blue vest alternative." *Id.*, Ex. 9 at 91:3-92:10 (30(b)(6) Ceballos Depo.); *Id.*, Ex. 4 at 11-12 (Associate Handbook).  Numerous absent class members, and the representative plaintiffs in this action all provided declaration testimony that they were never informed of Rite Aid's purported blue vest alternative and were simply required to wear navy blue tops and khaki bottoms. *See, id.* Ex. 15 at 25:6-12, 30:19-25, 31:21-33:23, 79:6-13, 80:6-19 (Shaw Depo.); Ex. 16 at 13:18-15:24, 19:12-15, 28:16-29:23, 55:4-56:4, 60:2-61:7 (Nucci Depo.); Exs. 21-33 (Class Member Declarations).[5]  Rite Aid's decision not to tell a large number of employees anything at all about the "blue vest alternative" is class-wide evidence that Rite Aid never really intended the blue vest as a substitute for Team Colors.

### ii.  There are no blue vests available at most California  stores.

Regardless of the interpretation of Rite Aid's policy, Rite Aid's purported vest alternative cannot relieve employees of the obligation to purchase uniforms unless a sufficient number of vests are actually present in Rite Aid's stores.  And, they are not.

In discovery, Rite Aid produced it's own recent survey of California store managers, asking the number of blue vests in their stores.  By January of 2020, 471 of 544 California stores had responded to the survey. *See, id.*, Ex. 14 at 6:16-26 (Resp. to Rog's) (describing survey); *id.,* Ex. 8 (Survey Results).  According to this, very recent, survey data there are no blue vests at all in 337 stores (71%); only one vest in an additional 23 stores (6%); and only

---

[5] While Plaintiff Ana Goswick's deposition transcript is not yet available, her testimony was to the same effect.

Plaintiffs' Notice of Motion and Motion and Memorandum of Points and Authorities
*Nucci, et al. v. Rite Aid Corporation*                                                          Case No. 19-cv-01434-LHK
Page 15

two vests in 26 stores (7%).  *Id.*

Unless there are blue vests in a store, an employee cannot wear a blue vest.  Further, and of equal logical force, Rite Aid's failure to provide the blue vests in its stores means that Rite Aid has no real intention of permitting employees to wear a blue vest as an alternative to the "Team Colors" of navy blue shirts and khaki bottoms.  This reality is reinforced by Rite Aid's Dress Standards, providing that employees who come to work in "unacceptable" clothing have to leave the store to change – there is no suggestion that such an employee could just put on a blue vest.

Rite Aid's own survey data demonstrates – before Plaintiffs' evidence is even considered – that there is no blue vest alternative possible for even one employee in at least 337 stores.  Where there are fewer vests than scheduled employees, any employee relying on the possible availability of a vest risks being sent home "without pay" each and every time the employee reports for a shift.  *See, id.*, Ex. 4 at 12 (Associate Handbook).  Thus, at the remainder of stores, where there are fewer vests than scheduled employees, every employee must purchase "Team Colors" uniform clothing because no employee can be certain that a vest will be available when he or she arrives at work.

Rite Aid claims that in 2012 (three years before this Class Period), it sent approximately 9,100 vests to its California stores, and that from 2013 to 2016, it sent an additional 352 vests to its California stores.  (*Id.*, Ex. 1 at 13:2-6 (Resp. to Rog's.); Ex. 12 at 12:5-7 (Resp. to Rog's); Ex. 13 at 23:21-24:8 (Mee depo. under (30(b)(6)) (last receipt of vests by any California store was 2016).  If Rite Aid is to be believed, it sent an average of 17 vests to stores between 2012 and 2016.  Rite Aid's claim regarding these shipments of vests is strikingly at odds with the reality that there are no vests in 70% of California stores and only one or two in most of the remainder.

### iii. Virtually all employees bought "Team Colors" clothing and virtually none believed that blue vests were an alternative.

**Plaintiffs' Notice of Motion and Motion and Memorandum of Points and Authorities**
*Nucci, et al. v. Rite Aid Corporation*                                    Case No. 19-cv-01434-LHK
Page 16

Plaintiffs employed Dr. Jeffery S. Peterson, Ph.D.[6], to conduct a statistically valid survey of Rite Aid employees in California.[7] *See, id.*, Ex. 7 at 1-2 (Declaration of Jeffrey S. Petersen, Ph.D.).

Plaintiffs' survey responses demonstrated the following:

- 100 % of putative class members stated that they were required to wear a navy blue shirt;
- 95.9 % purchased a blue top to comply with Rite Aid's dress code;
- 98.0 % stated that they were required to wear khaki-colored pants;
- 91.8 % purchased khaki-colored pants to comply with Rite Aid's dress code;
- 4.1 percent stated that they were permitted to wear a vest instead of khaki pants;
- 6.1 percent stated that they were permitted to wear a vest instead of a navy blue top on a regular basis.

Employees who are only permitted to wear a vest on a non-regular basis are not relieved of the obligation to purchase their own uniforms because they must wear navy blue tops and khaki bottoms on those days they are not permitted to wear a vest. These employees are likely permitted to wear a vest in unusual circumstances, such as an event on a work day, the timing of which does not allow the employee to return home and change before work, or the laundering of their regular uniform (*e.g.,* Rite Aid Store Manager testified that "in my career, I've had one employee … show up that was not in anything close to a blue color, and that was because he didn't do laundry. So he wore a vest." *Id.*, Ex. 20 at 33:12-14 (Deposition of Duane Debenedetti)).

Finally, Rite Aid's dress code provides that two categories of employees – Wellness

---

[6] This Court previously approved Dr. Peterson's statistical calculations in *Guifi Li v. A Perfect Day Franchise, Inc.* 2012 U.S.Dist.LEXIS 83677, at *43-44 (N.D.Cal. 2012, No. 5:10-CV-01189-LHK).

[7] Dr. Peterson's "pilot" survey had approximately 50 respondents. Rite Aid will, no doubt, argue that this is too small a sample for a valid survey. As Dr. Petersen explains in his declaration, because the responses are so consistent, only a small sample is needed to achieve a high "confidence interval." *See,* Ex. 7 at ¶¶ 4-5 (Jeffrey S. Peterson, Ph.D. Declaration).

**Plaintiffs' Notice of Motion and Motion and Memorandum of Points and Authorities**
***Nucci, et al. v. Rite Aid Corporation*** **Case No. 19-cv-01434-LHK**
**Page 17**

1   Ambassadors and Pharmacy Technicians – must wear navy blue tops and khaki colored pants

2   under position-specific outer garments; no iteration of the dress code purports to allow these

3   employees to wear a company-issued vest instead of a navy blue top.  *See, e.g., id.*, Ex. 5 at 7

4   (Store Dress Standards).  Rite Aid's vest defense is, therefore, inapplicable to these employees,

5   and liability turns on the single common question of whether navy blue tops and khaki colored

6   bottoms constitute a uniform.

7        Thus, Rite Aid's purported "blue vest alternative" is: 1) by its own language and terms

8   not a freely-to-be-chosen alternative to "Team Colors;" 2) not recognized or understood by

9   employees as an alternative to "Team Colors;" 3) not utilized by employees as an alternative to

10  purchasing "Team Colors" clothing; 4) not actually available because there are virtually no

11  blue vests in the majority of Rite Aide's California stores; and 5) does not apply at all to

12  Wellness Ambassadors and Pharmacy Technicians.

13  **IV.    RITE AID'S DRESS CODE VIOLATES CALIFORNIA LAW.**

14       Merits questions – such as whether Rite Aid's dress code is unlawful – are considered at

15  certification only to the extent they are relevant to determining whether the requirements of

16  have been met.  S*ee, Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1133 (9th Cir. 2016).

17  Since Rite Aid is expected to make a vigorous attempt to convince the Court that its policies

18  are not unlawful, Plaintiffs provide this brief analysis of Rite Aid's illegal dress code.

19       Wage Order No. 7 governs the mercantile industry, and thus, this case.  Wage Order No.

20  7 provides that employers must reimburse employees for "uniforms."[8]  Lab. C. § 2802; Wage

21  Order No. 7, § 9(A).  A "uniform," in turn, is clothing of "distinctive design or color."  *Id.*

22

23  ───────────────────────

24  [8] Labor Code section 2802 requires an employer to indemnify employees for "necessary
    expenditures."  Lab. C. § 2802.  Section 2802 does not contain the "generally useable"
25  language contained in the Wage Order and so would appear to impose a lesser standard than
    the Wage Order.  However, a recent California decision determined that a party seeking
26  reimbursement for clothing expenditures under section 2802 had to meet the requirements of a
    uniform claim under the Wage Order.  *See, Townley v. BJ's Restaurants, Inc.*  37 Cal.App.5th
27  179, 185 (2019).  Accordingly, Plaintiffs' discussion here assumes, without conceding, that the
    elements of a section 2802 claim are the same as a claim under the Wage Order.
28

**Plaintiffs' Notice of Motion and Motion and Memorandum of Points and Authorities**
*Nucci, et al. v. Rite Aid Corporation*                                                    **Case No. 19-cv-01434-LHK**
**Page 18**

"Distinctive" in this context does not mean "unique." *Becerra*, at *9-10.  Rather, clothing is of a "distinctive design or color" where: 1) the employer specifies the color or design of the clothing;  and 2) the clothing is not "generally usable in the occupation." *Id*. at *16-17; Robinson Dec. Ex. 3 at 85-86 (Statement of Basis, 1980, Wage Order No. 7); Ex. 2 at 24 (Statement of Basis, 1976, Wage Order No. 4).  Rite Aid's dress code satisfies both of these elements.

### A.    Uniform Element 1: Rite Aid Specifies the Design and Color of the Clothing Worn by Its Employees.

First, Rite Aid specifies the color and the design of the clothing worn by its employees. As the IWC's 1976 Statement of Basis[9] for Wage Order 4 provides:

> With regard to color and design of uniforms (subsection A), ordinary work clothes are not considered to be uniforms when the employees have a free choice of what to wear, but when the employer specifies the design or color … the employer does so for his or her own advantage as a matter of advertising, public image, or some other business function … It is inappropriate for employers to require employees to bear such an expense.

*Id.*, Ex. 2 at 24; *see also, id.*, Ex. 17 at 2 (DLSE, Minimum Wage Bulletin, 2011) ("When the employer specifies the design *or* color … it is considered a uniform" (Emphasis added.)).

In *Becerra*, the court found that the employer specified the color and design of the bottoms worn by employees where (exactly as here) the employer required khaki bottoms – i.e., pants or skirts.  *Becerra*, at *3, 17.  Moreover, both the DLSE and the Northern District have recognized that blue shirts and khaki pants constitute a uniform.  *See id.*, Ex. 6 at § 45.5.6 (DLSE Enforcement Manual); *see also, Becerra,* at *14, 16-17 ("when the employer specifies … a specific color combination (blue shirt with tan pants)… it is a 'uniform' and the employer is obligated to reimburse employees for its cost").

Here, Rite Aid not only requires its employees to wear navy blue shirts and khaki-

---

[9] The IWC's statements of basis are entitled to deference in their interpretation of the meaning of the Wage Orders.  *See, Becerra*, at *10.

**Plaintiffs' Notice of Motion and Motion and Memorandum of Points and Authorities**
*Nucci, et al. v. Rite Aid Corporation*                                                              Case No. 19-cv-01434-LHK
**Page 19**

1  colored bottoms, but goes much further by imposing the exhaustive list of additional pre-and-
2  pro-scriptions  described above.  *See,* Section III(A), above.  As Rite Aid candidly states, these
3  dress requirements are for the sole benefit of Rite Aid – "to differentiate us from the
4  competition, helping us to stand out and connect with our customers."  *See,* James Dec., Ex. 10
5  at 000181 (New Hire Orientation Kit).  California law does not permit the employer to shift the
6  cost of this benefit to its employees.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Plaintiffs' Notice of Motion and Motion and Memorandum of Points and Authorities**
*Nucci, et al. v. Rite Aid Corporation*                                                      Case No. 19-cv-01434-LHK
Page 20

1

2

3

**B.      Uniform Element 2:  Clothing in Rite Aid's "Team Colors" Is Not "Generally Usable in the Occupation"**

4

5

6

7

8

9

10

11

12

13

14

15

Second, the clothing prescribed by Rite Aid's dress code is not "generally usable in the occupation."  The "generally usable" exception applies only when the employer's required clothing constitutes a standard uniform or outfit worn by employees on an "industry wide basis."  *See, e.g.,* James Dec., Ex. 18 at 1 (DLSE Opinion Letter 1989.11.03).  This rule protects employees by ensuring that they will be reimbursed for employer-required clothing unless they can wear that clothing while working for all, or nearly all, employers in the industry.  Rite Aid has argued, wrongly, that clothing is "generally usable" whenever some possible future employer might allow that clothing.  Rite Aid's proposed construction of "generally usable" is inconsistent with the legislative and judicial mandate that the Wage Orders are to be broadly construed in favor of protecting employees.[10]  Rite Aid's proposed interpretation would significantly undermine the "generally usable" requirement by bringing almost every clothing item within the meaning of that term.

16

17

18

19

20

21

22

Merriam-Webster defines "general" as "involving, applicable to, or affecting the whole" or "involving, relating to, or applicable to every member of a class, kind, or group …."[11]  "Generally" is defined as "in a general manner: such as … in disregard of specific instances and with regard to an overall picture … as a rule: usually."[12]   In perfect accord with these dictionary definitions, DLSE opinion letters state that clothing items are "generally usable in the occupation" only when they constitute a standard, well-recognized outfit customarily worn by employees in the occupation on a nearly ubiquitous basis.

23

---

24

25

26

27

[10] *See, Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal.4th 1094, 1103 (2007) ("statutes governing conditions of employment are to be construed broadly in favor of protecting employees"); *Von Nothdurft v. Steck*, 227 Cal.App.4th 524, 532 (2014) ("Labor Code and the wage orders are to be liberally construed with an eye to promoting employee protections, and must be interpreted in the manner that best effectuates that protective intent").

[11] https://www.merriam-webster.com/dictionary/general.

28

[12] https://www.merriam-webster.com/dictionary/generally.

Plaintiffs' Notice of Motion and Motion and Memorandum of Points and Authorities
*Nucci, et al. v. Rite Aid Corporation*                                                                                    Case No. 19-cv-01434-LHK
Page 21

For example, a white nurse's uniform is "generally usable" in the nursing occupation because nurses can wear such a uniform "wherever they work" on an "industry wide basis."[13] *Id.*, Ex. 18 at 1 (DLSE Opinion Letter 1989.11.03); *id.,* Ex. 19 at 1 (DLSE Opinion Letter 1991.02.13).  However, that same white nurse's uniform is not "generally usable" for health care assistants who perform housekeeping or clerical work.  *Id.*  Similarly, black pants and white shirts are generally usable for waiters and waitresses (as of 1989), but tuxedos are not "generally usable" for maître d's and hosts. *Id.*, Ex. 18 at 1 (DLSE Opinion Letter 1989.11.03) And further, blue shirts and khaki pants are not "generally usable" for video store employees. *Becerra*, at *14, 16-17.

Unlike nurses' and waiters' uniforms (of 1989), Rite Aid's "Team Colors" of blue shirts and khaki pants are not worn by retail employees "as a rule" on an "industry wide basis" and are not a basic outfit recognized as the customary standard in the occupation.  Rite Aid's "Team Colors" are particular to Rite Aid, and are clearly intended to promote Rite Aid's brand and to assist Rite Aid's retail customers in identifying Rite Aid's employees and differentiating them from other customers. Accordingly, the clothing required by Rite Aid's dress code is not "generally usable in the occupation."

## C.    Rite Aid's Blue Vest Is Not a Defense to Liability Under the Wage Order.

Plaintiffs' case seeks recovery of expenditures that employees were required to make to comply with Rite Aid's dress code.  Rite Aid will no doubt argue that its "blue vest alternative" means that employees do not in fact have to purchase any clothing at all – they can just wear the blue vest and spend nothing.  Rite Aid's blue vest alternative devolves to this proposition:

---

[13] These Opinion Letters must be viewed in some historical context: when written, the white nurses' uniform was ubiquitous in virtually every hospital or doctor's office and this near-ubiquitous-ness would appear to be the standard envisions by the DLSE.  Query whether today, 30 years after these Opinion Letters, a white nurses' uniform would be viewed  the same way since hospital and doctor office dress standards are now much more diverse with colored scrubs and uniforms now common.

**Plaintiffs' Notice of Motion and Motion and Memorandum of Points and Authorities**
*Nucci, et al. v. Rite Aid Corporation*                                                    Case No. 19-cv-01434-LHK
Page 22

1   all employees were permitted to wear the blue vest as a freely-chosen alternative to Team

2   Colors; everyone who bought Team Colors did so completely by free choice.  Rite Aid,

3   therefore, argues that even if Team Colors are a uniform, it was not a *required* uniform, just

4   something employees could wear if they wanted.  *See,* Wage Order No. 7 § 9(A).

5        The blue vest is only an alterative to purchasing Team Colors if it is available every day

6   to every employee.  For example, if an employee could wear a blue vest four days out of five

7   (and there is no evidence that even one employee ever did this), they would still have to

8   purchase Team Colors for the fifth day.  Thus, for the blue vest defense to succeed, Rite Aid

9   would need to show all of the following:  1) it had a policy that Team Colors were completely

10  optional; 2) it communicated that policy to all employees; and 3) enough vests were available

11  so that all employees could, on every single day, wear a blue vest instead of Team Colors.

12       Rite Aid would have to show all of these elements for its bleu vest defense – and the

13  evidence conclusively rebuts each of them.  Rite Aid's written policies require Team Colors

14  and do not provide the blue vest as a freely-chosen alternative; the vast majority of employees

15  purchased clothing to comply with the Team Colors policy; there were no vests in over 70

16  percent of stores and one or two in most of the remainder.  For the majority of its stores, Rite

17  Aid did not provide enough vests to meet the needs of a *single* employee to opt out of

18  purchasing team colors on a *single* day, much less *all* employees on *every* day.  Rite Aid's

19  PMK testified that Rite Aid never considered making a vest available to each employee to

20  wear as an alternative to Team Colors.  *See,* Robinson Dec., Ex. 9 at 108:7-109:1 (Deposition

21  of Roger Ceballos).   Thus, Rite Aid's blue vest defense is simply not viable here.

22       **D.    All Class Claim Flow From Rite Aid's Illegal Dress Code.**

23

24       All of Plaintiffs' claims arise out of the same conduct here and are based on the same

25  class-wide evidence.  The Wage Order claims and section 2802 claims are based on failure to

26  reimburse for required uniforms.  The failure to pay minim wage claim arises because for

27  employees who are paid at or near the minim wage, the cost of a uniform will drive the

28  employee below the minim wage for the pay period where the expenditure is required.  The

**Plaintiffs' Notice of Motion and Motion and Memorandum of Points and Authorities**
*Nucci, et al. v. Rite Aid Corporation*                                          **Case No. 19-cv-01434-LHK**
Page 23

wage statement claim under Labor Code section 226 arises because Rite Aid's failure to reimburse for clothing expenses renders the Wage Statement inaccurate under section 226. Unpaid clothing reimbursements are wages that must be paid within 72 hours of an employee's termination. Rite Aid's failure to pay these clothing reimbursements to employees who have left employment gives rise to Plaintiff's claims under Labor Code sections 201, 202, and 203). Finally, unreimbursed clothing purchases are subject to restitution under California's Unfair Competition Law (UCL") Business and Professions code section 17200 *et seq*.

As is clear, all of these claims arise from the same allegations and will be proved through the exact same evidence as will support Plaintiffs' Wage Order claims. Where necessary, the damages amounts for claims such as wage statements and waiting time can be determined from Rite Aid's payroll records which will contain hourly rate and termination date information. *See,* Labor Code §§ 226, 1174, 1174.5, regarding employer's required recordkeeping.

## V.   THE CLASS THAT PLAINTIFFS SEEK TO CERTIFY.

Plaintiffs' proposed class is as follows:

> All non-exempt employees, excluding pharmacists, pharmacy interns, and asset protection agents, working in any Rite Aid store in California at any time from March 13, 2015 through the trial date (the "Class Period").

The Class claims are:  1) failure to indemnify business expenses; 2) failure to provide uniforms; 3) failure to furnish accurate wage statements; 4) waiting time penalties; and 5) restitution under the UCL.

The Class Period is:  March 13, 2015, through the trial date

The Class seeks certification on the theory that Rite Aid has a policy of requiring that employees purchase clothing constituting a uniform, that Rite Aid is required to and does not reimburse employees for the costs and expenses of this uniform, that Plaintiffs have provided sufficient evidence of this policy, and that certification is therefore mandated by *Jimenez v. Allstate Ins. Co*., 765 F.3d 1161 (9th Cir. 2014) and progeny.  Liability for the Class will turn almost exclusively on two common questions:  1) whether Rite Aid's "Team Colors" of navy

**Plaintiffs' Notice of Motion and Motion and Memorandum of Points and Authorities**
*Nucci, et al. v. Rite Aid Corporation*                                                                        **Case No. 19-cv-01434-LHK**
Page 24

blue tops and khaki-colored bottoms constitute a uniform under California law; and 2) whether Rite Aid, as a matter of practice and policy, provides blue vests as an alternative to the required "Team Colors" uniform, including in a sufficient number to provide to all employees for every shift.

## VI.     CLASS TREATMENT OF PLAINTIFFS' CLAIMS IS APPROPRIATE.

Class certification is appropriate where all requirements of Rule 23(a) are met and, additionally, at least one of the elements of Rule 23(b) are met.  *See,* FRCP 23; *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).   Plaintiffs here meet the four criteria of (a), which are: numerosity; commonality; typicality; and adequacy of representation.  *Id*.  Further, Plaintiffs meet the criteria of  Rule 23(b)(3), which requires:  predominance of common questions of law or fact; and superiority of class treatment for fair and efficient adjudication of the case.  *See,* FRCP 23(b)(3).

### A.     Federal Rule of Civil Procedure 23(a)

#### i.     Numerosity, Typicality, and Adequacy of Representation

Numerosity is satisfied where the proposed class is so large that joinder of all class members is impracticable.  *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1019 (9th Cir. 1998). "Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members."   *Schneider v. Chipotle Mexican Grill, Inc*., 328 F.R.D. 520, 536 (N.D. Cal. 2018).  Here, there are approximately 26,232 putative class members.  Robinson Dec., Ex. 1 at 1:23-28 (Resp. Interrogatories).

Typicality is satisfied where the named plaintiffs have suffered the same or similar injuries as other class members and have been injured by the same course of conduct.  *Wolin v. Jaguar Land Rover N. Am*., 617 F.3d 1168, 1175 (9th Cir. 2010).  This standard is permissive and does not require that a plaintiff's claims be identical to those of other class members. *Hanlon*, 150 F.3d at 1019-20; *Alonzo v. Maximus, Inc*., 275 F.R.D. 513, 523 (C.D. Cal. 2011).

Here, the named plaintiffs were all non-exempt employees, working in Rite Aid's California stores and all purchased clothing to comply with the Team Colors Dress Code. Named plaintiffs Nucci and Goswick were subjected to the team Colors Dress Code and

**Plaintiffs' Notice of Motion and Motion and Memorandum of Points and Authorities**
*Nucci, et al. v. Rite Aid Corporation*                                                                    **Case No. 19-cv-01434-LHK**
Page 25

worked at California stores at which no vests were present; and plaintiff Shaw was subjected to the Team Colors Dress Code and worked as a Wellness Ambassador that could not wear a vest. *See, id*., Ex. 14 at 3:6-24, 4:17-5:7 (Thrifty Resp. to Goswick Interrogatories, Set Two); Ex. 15 at 10:23-11:4, 21:2-14 (Shaw Depo.).

Plaintiffs' evidence shows that all employees were subject to the same set of policies and requirements regarding Rite Aid's Team Colors, Associate Handbook, and Dress Code, and that the named plaintiffs, like all putative class members, were required to wear, and therefore to purchase, navy blue shirts and khaki pants, and therefore suffered the same injuries as alleged by the Class. *See,* Robinson Dec., Ex. 16 at 25:6-12, 30:19-25, 31:21-33:23, 79:6-13, 80:6-19 (Shaw Depo.); Ex. 17 at 13:18-15:24, 19:12-15, 28:16-29:23, 55:4-56:4, 60:2-61:7 (Nucci Depo.).[14]

Accordingly, the named plaintiffs' claims are "reasonably co-extensive with those of absent class members" and are typical of the claims of the Class and the proposed subclasses. *See, Hanlon*, 150 F.3d at 1020.  The adequacy of representation requirement is, thus, satisfied with respect to the Class.

Adequacy of representation is satisfied where named plaintiffs and counsel have no conflicts of interest with absent class members and will vigorously prosecute the action for the class.  *Id.* at 1019-20.  A "plaintiff may adequately represent the class if he or she has a basic understanding about the nature of the suit."  *Stuart v. RadioShack Corp.,* 2009 U.S. Dist. LEXIS 12337 at 32 (N.D. Cal. 2009).  Here, named plaintiffs assert claims identical to those of the absent class members and, therefore, have no conflicts.  Further, named plaintiffs have actively engaged in this litigation by giving deposition testimony, responding to discovery, and working with counsel.  Moreover, named plaintiffs' counsel have significant experience prosecuting wage and hour class actions; have sufficient resources to represent the Class; and have demonstrated their commitment to plaintiff classes in other litigation.  *See,* Robinson

---

[14] As previously noted, Plaintiff Ana Goswick's deposition transcript is not yet available, but her testimony was to the same effect.

**Plaintiffs' Notice of Motion and Motion and Memorandum of Points and Authorities**
*Nucci, et al. v. Rite Aid Corporation*                                          Case No. 19-cv-01434-LHK
Page 26

Dec., Ex. 34 (Aiman-Smith & Marcy *curriculum vitae*).  Accordingly, the adequacy of

representation requirement is satisfied with respect to the Class.

### ii.  Commonality.

Commonality requires the presence of "questions of law or fact common to the class."

FRCP 23(a)(2).  Commonality has been construed permissively and may be satisfied by even a

single common issue.  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011);

*Dukes*, 564 U.S. at 359.  Commonality is satisfied where a plaintiff's claims rest on common

contentions "capable of classwide resolution – which means that determination of its truth or

falsity will resolve an issue that is central to the validity of each one of the claims in one

stroke." *Id.* at 350.  Accordingly, commonality is generally satisfied where employees

challenge "uniform policies and systemic practices" of the employer.  *Schulz v. Qualxserv,

LLC*, 2012 U.S. Dist. LEXIS 58561, at *10-12 (S.D. Cal. 2012); *Trosper v. Styker Corp.*, 2014

U.S. Dist. LEXIS 117453, at *27-29 (N.D. Cal. 2014) (Koh, J.) (citing *id.*); *Armstrong v.

Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (commonality satisfied even where system-wide

practices affect individual class members differently).  Here, the commonality requirement is

satisfied with respect to the Class.

Commonality is satisfied by *Jimenez*, 765 F.3d at 1164-66.  *Jimenez* involved claims for

unpaid overtime.  *Id.* at 1163.  In *Jimenez*, as here, defendant claimed that its formal, written

policy was legal.  *See, Jimenez v. Allstate Ins. Co.*, 2012 U.S. Dist. LEXIS 65328, at *22-24

(C.D. Cal. 2012); *Jimenez*, 765 F.3d at 1166, n. 5.  Defendant's written policy stated that

employees would be paid for all hours worked.  *Jimenez.*, 2012 U.S. Dist. LEXIS 65328, at

*22-24.  Defendant, thus, took the position that any failures to pay overtime arose from

deviations from defendant's written policy, and were therefore not common to the class.  *Id.* at

23.  The trial court rejected this argument, certifying the class and holding: "Although

Defendant has presented testimony that its official policies are lawful, this showing does not

end the inquiry.  Plaintiff's theory is that Defendant has a common practice of not following its

official policy regarding overtime."  *Id.* at 23, 59-60.  The Ninth Circuit affirmed, holding that

commonality was satisfied because "proving at trial whether … [the] informal or unofficial

**Plaintiffs' Notice of Motion and Motion and Memorandum of Points and Authorities**
*Nucci, et al. v. Rite Aid Corporation*                                    Case No. 19-cv-01434-LHK
Page 27

1  policies [alleged by plaintiffs] existed will drive the resolution of" plaintiff's claims. *Jimenez*,

2  765 F.3d at 1164-66.

3  Here, Rite Aid alleges that its dress code is legal because certain iterations of the dress

4  code state that employees will be provided a vest as an alternative to a navy blue top. This,

5  however, "does not end the inquiry." *Jimenez*, 2012 U.S. Dist. LEXIS 65328, at *23.

6  Plaintiffs' theory, here, is that Rite Aid's official policy does not, under its terms and in fact,

7  permit wearing a blue vest as an alternative to purchasing and wearing Team Colors.

8  Alternatively, if Rite Aid's official policy for permitting blue vests actually constitutes a

9  defense, Rite Aid has an unofficial policy of not providing sufficient vests for all employees to

10  wear one as an alternative to wearing Team Colors. Either way, Plaintiffs' "theory is that

11  Defendant has a common practice of not following its official policy," and proving at trial

12  whether Defendants' unofficial policy exists will drive the resolution of the claims of all

13  members of the Class. *Id.* at 23; *Jimenez*, 765 F.3d at 1166. Plaintiffs have submitted

14  substantial evidence of Rite Aid's common practice of not providing employees with a vest,

15  including evidence that no vests are present in at least 337 of Rite Aid's California stores.

16  Commonality is therefore satisfied under *Jimenez* as to the Class.

17  Commonality is also satisfied because the class members' claims will turn almost

18  exclusively on the single, common question of whether navy blue tops and khaki-colored

19  bottoms constitute a uniform under California law. Plaintiffs maintain that navy blue tops and

20  khaki-colored bottoms are a "uniform"; Rite Aid claims they are not. In either case, however,

21  Plaintiffs' claims rest on a common contention "capable of classwide resolution – which means

22  that determination of its truth or falsity will resolve an issue that is central to the validity of

23  each one of the claims in one stroke." *Dukes*, 564 U.S. at 350; *see also, Schulz*, 2012 U.S.

24  Dist. LEXIS 58561 at 12 ("whether the Defendants' policies and practices comply with

25  California's specific requirements is the type of question that can be answered on a classwide

26  basis"); *Hopkins v. Stryker Sales Corp.*, 2012 U.S. Dist. LEXIS 67101, at *20 (N.D. Cal. 2012)

27  (Koh, j.) (similar; quoting *id.*.) Accordingly, commonality is satisfied as to the proposed

28  subclasses.

**Plaintiffs' Notice of Motion and Motion and Memorandum of Points and Authorities**
*Nucci, et al. v. Rite Aid Corporation*                                   Case No. 19-cv-01434-LHK
Page 28

## B.   Federal Rule of Civil Procedure 23(b)(3)

FRCP 23(b)(3) requires that questions of law or fact common to class members predominate over any questions affecting only individual members (predominance), and that a class action be superior to other available methods for fairly and efficiently adjudicating the controversy (superiority).  FRCP 23(b)(3).  Both of these conditions are satisfied here.

### i.   Predominance

The predominance requirement is met where "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022.  Common issues need only predominate and are not required to be "dispositive of the litigation." *Sullivan v. Kelly Services, Inc*., 268 F.R.D. 356, 364 (N.D. Cal. 2010).  A finding of predominance is supported where class treatment will promote judicial economy.  *Zinser v. Accufix Research Inst., Inc*., 253 F.3d 1180, 1189 (9th Cir. 2001); *Kamar v. Radio Shack Corp*., 254 F.R.D. 387, 399 (C.D. Cal. 2008). Predominance is satisfied where an employee challenges an employer's uniform policies and practices because the legality of those policies can be settled on a classwide basis.  *Schulz*, 2012 U.S. Dist. LEXIS 58561, at *19; *see also, Senne*, 934 F.3d at 944 ("predominance is 'rarely' defeated in cases" challenging an employer's uniform policies).  Further, the need for individualized damages calculations does not defeat predominance.  *See, Vaquero v. Ashley Furniture Indus.*, 824 F.3d 1150, 1155 (9th Cir. 2106).  Here, the predominance requirement is satisfied with respect to the Class.

Predominance is satisfied as to the Class because questions of law of fact common to the Class predominate over any questions affecting only individual class members.  "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2015) (internal punctuation and citation omitted).

Here, the claims of the members of the Class turn almost exclusively on two common

**Plaintiffs' Notice of Motion and Motion and Memorandum of Points and Authorities**
*Nucci, et al. v. Rite Aid Corporation*                                                    **Case No. 19-cv-01434-LHK**
Page 29

questions:  1) whether Rite Aid's Team Colors requirements, including navy blue tops and khaki-colored bottoms, constitute a uniform under California law; and 2) whether Rite Aid's purported "blue vest alternative" is a defense to liability.  These questions are central issues in this litigation, will be answered with common evidence, and will establish Rite Aid's liability – or lack thereof – as to the entire Class.  Moreover, courts have found predominance satisfied, where, as here, plaintiffs present sufficient evidence of either an official policy, or an "unofficial" policy allegedly maintained by defendant.  *See, Hoffman v. Blattner Energy, Inc.*, 315 F.R.D. 324, 338-41 (C.D. Cal. 2016); *Ruiz v. XPO Last Mile, Inc.*, 2016 U.S. Dist. LEXIS 152095, at \*29-35 (S.D. Cal. 2016).[15]  Thus, here, even if Rite Aid's blue vest policy is found to undermine Plaintiffs' claims that the Team Colors Dress Code is a uniform, still Rite Aid has an unofficial policy of not actually making blue vests available because there are none at most stores.  Under either theory – official policy or unofficial policy – predominance is satisfied.  The only issue in this case capable of generating individual questions is the amount of damages owed to each member of the Class, and this issue cannot defeat certification.  *See, Vaquero*, 824 F.3d at 1155.

### ii.    Superiority

Rule 23(b)(3) requires a finding that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  FRCP 23(b)(3).  The matters pertinent to a finding of superiority include: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action.  *Id*.  Here, all of these factors support a finding of superiority.

_____

[15] *Jimenez* itself did not consider predominance and instead focused on the issue of commonality.   However, the *Jimenez* Court did state that, were it to reach the question of predominance, it would "affirm the district court's predominance holding for many of the same reasons that we affirm the result of its commonality analysis."  *Jimenez*, 765 F.3d at n. 4.

**Plaintiffs' Notice of Motion and Motion and Memorandum of Points and Authorities**
*Nucci, et al. v. Rite Aid Corporation*                                                                    Case No. 19-cv-01434-LHK
Page 30

First, the class members have little interest in individually controlling the prosecution of separate actions because the possible recovery of individual class members in this case is small relative to the burden and expense of individual litigation.  Second, there is no other litigation concerning the controversy at issue in this case.  Third, the Northern District is not an undesirable forum for this case.  And, fourth, this case will not present significant manageability issues.  Accordingly, a class action is superior to other available methods for fairly and efficiently adjudicating this case.

## VII.   CONCLUSION.

For the foregoing reasons, Plaintiffs respectfully request that the Court, pursuant to Federal Rule of Civil Procedure 23, certify the Class described herein, or, alternatively, certify subclasses to be defined by the Court's discretion; appoint Plaintiffs as representatives of the Class or subclasses certified; appoint the law firm of Aiman-Smith & Marcy as class counsel; and make such other orders as are necessary to effectuate the primary relief sought.

Respectfully submitted,

February 6, 2020

AIMAN-SMITH & MARCY
A PROFESSIONAL CORPORATION

*Carey A. James*

_____

Carey A. James
Attorneys for Plaintiffs

**Plaintiffs' Notice of Motion and Motion and Memorandum of Points and Authorities**
*Nucci, et al. v. Rite Aid Corporation*                                          **Case No. 19-cv-01434-LHK**
**Page 31**