Randall B. Aiman-Smith #124599
Reed W. L. Marcy #191531
Hallie Von Rock #233152
Brent A. Robinson #289373
**AIMAN-SMITH & MARCY, PC**
7677 Oakport St. Suite 1150
Oakland, CA 94621
T 510.817.2711
F 510.562.6830
ras@asmlawyers.com
rwlm@asmlawyers.com
hvr@asmlawyers.com
bar@asmlawyers.com

Attorneys for Plaintiffs and the Plaintiff Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KRISTAL NUCCI and KELLY SHAW, individually and on behalf of all others similarly situated and the California Labor & Workforce Development Agency, and ANA GOSWICK, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> RITE AID CORPORATION, THRIFTY PAYLESS, INC. and DOES 1-10, inclusive, <br><br> Defendants. | Case No.: 19-cv-01434-LHK <br><br> **NOTICE OF PLAINTIFF'S UNOPPOSED MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT** <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** <br><br> Date: February 10, 2022 <br> Time: 1:30 PM <br><br> Hon. Lucy H. Koh <br> Courtroom 8 <br> 280 South First Street, 4th Floor <br> San José, CA 95113 |

# TABLE OF CONTENTS

**NOTICE OF MOTION AND MOTION** ...................................................................... 1

**MEMORANDUM OF POINTS AND AUTHORITIES** ............................................... 3

I.      INTRODUCTION ............................................................................................... 3

II.     FACTUAL BACKGROUND................................................................................ 4

III.    PROCEDURAL HISTORY ................................................................................. 5

      **A.**     **Mediation** ........................................................................................... 7

IV.     TERMS OF THE SETTLEMENT ....................................................................... 7

      A.      Basic Terms and Value of the Settlement............................................. 7

      B.      Settlement Class Period ....................................................................... 9

      C.      Allocation and Awards......................................................................... 9

      D.      Scope of Release ................................................................................ 11

      E.      Settlement Administration ................................................................. 11

      F.      Payment Options ................................................................................ 12

V.      LEGAL DISCUSSION ..................................................................................... 13

      A.      The Court Should Grant Preliminary Approval of the Settlement...................... 13

      B.      The Settlement Should Be Preliminarily Approved Because it Is Fair, Reasonable, and Adequate ................................................................................................ 13

            i.      The terms of the Settlement are fair, reasonable, and adequate.................. 14

            ii.     The Parties' discovery enabled them to make informed decisions regarding settlement.     15

            iii.    Litigating the Action not only would delay recovery, but would be expensive, time consuming, and involve substantial risk. ............................................. 16

            iv.     The Settlement is the product of informed, non-collusive, and arm's-length negotiations between experienced counsel. ................................................. 17

      C.      The Service Awards to Representative Plaintiffs Are Reasonable ...................... 18

      D.      The Requested Attorney's Fees and Costs Are Reasonable ................................ 18

      E.      The Proposed Notice of Settlement and Claims Process Are Reasonable............ 21

      F.      Class Members Already Had an Opportunity to Opt Out..................................... 22

G.      The Court Should Approve the Proposed Schedule................................................ 22

VI.      CONCLUSION ........................................................................................................ 23

1

# TABLE OF AUTHORITIES

2

## Cases

3

*Balderas v. Massage Envy Franchising, LLP* 2014 WL 3610945 (N.D. Cal. July 21, 2014)... 14

4

*Boyd v. Bechtel Corp.* 485 F.Supp. 610 (N.D. Cal. 1979) ........................................................ 15

5

*Carrington v. Starbucks Corp.* (2018) 30 Cal.App.5th 504 ....................................................... 16

6

*Carter v. Anderson Merchandisers, LP* No. EDCV 08-0025-VAP OPX, 2010 WL 1946784

7

   (C.D. Cal. May 11, 2010) ....................................................................................................... 17

8

*Churchill Village, LLC. v. Gen. Elec.* 361 F.3d 566 (9th Cir. 2004) .................................. 13, 21

9

*Eisen v. Carlisle & Jacquelin* 417 U.S. 156 (1974) ................................................................... 20

10

*Gonzalez v. Southern Wine & Spirits of Am., Inc.*, 555 Fed.Appx. 704 (9th Cir. 2014) .......... 19

11

*Hanlon v. Chrysler Corp.* 150 F.3d 1011 (9th Cir. 1998) ............................................. 12, 13, 17

12

*In re Activision Sec. Litig.*, 723 F.Supp. 1373 ......................................................................... 19

13

*In re Mego Fin. Corp. Sec. Litig.* 213 F.3d 454 (9th Cir. 2000) ............................................... 14

14

*In re Syncor ERISA Litig.* 516 F.3d 1095 (9th Cir. 2008) .......................................................... 13

15

*Laffitte v. Robert Half International, Inc.,* 1 Cal.5th 480 (2016) ............................................. 19

16

*Lewis v. Starbucks Corp.* No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690 (E.D. Cal. Sept.

17

   11, 2008) ............................................................................................................................... 15

18

*Low v. Trump Univ., LLC* (9th Cir. 2018) 881 F.3d 1111 ....................................................... 22

19

*Ma v. Covidien Holding, Inc.*, 2014 WL 360196, at *4-5 (C.D. Cal. Jan. 31, 2014) ............... 14

20

*Magadia v. Wal-Mart Associates, Inc.* (May 31, 2019) 384.F.Supp.3d 1058 .......................... 16

21

*Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470 (9th Cir. 1995) ........................................ 19

22

*Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 .................................................. 19

23

*Moorer v. Stemgenex Med. Group*, 2021 U.S.Dist.LEXIS 4037 .............................................. 22

24

*Mullane v. Cent. Hanover Bank & Trust Co.* 339 U.S. 306, 314 (1950) .................................. 20

25

*Officers for Justice v. Civil Serv. Comm'n* 688 F.2d 615 (9th Cir. 1982) .................... 13, 14, 15

26

*Phillips Petroleum Co. v. Shutts* 472 U.S. 797 (1985) ............................................................ 20

27

28

*Regino Primitivo Gomez, et al. v. H&R Gunlund Ranches, Inc.* No. CV F 10–1163 LJO MJS, 2011 WL 5884224 (E.D. Cal. 2011) ........................................................................ 20

*Rodriguez v. Disner*, 688 F.3d 645 (9th Cir. 2012) ...................................................... 19

*Silber v. Mabon* 18 F.3d 1449 (9th Cir. 1994)............................................................. 20

*Singer v. Becton Dickson and Co.*, 2010 U.S. Dist. LEXIS 53416, 2010 WL 2196104 ........... 20

*Soto et al. v. O.C. Communications, Inc., et al.*, Case No. 3:17-cv-00251-VC (N.D. Cal. Oct. 23, 2019)............................................................................................................ 19

*Staton v. Boeing Co.* 327 F.3d 938 (9th Cir. 2003) ..................................................... 17

*Stovall-Gusman v. W.W. Granger, Inc.*, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015). 14

*Van Vranken v. Atl. Richfield Co.* 901 F. Supp. 294 (N.D. Cal. 1995).................................... 18

*Vasquez v. Coast Valley Roofing, Inc.,* 266 F.R.D. 482 ................................................... 20

*Vizcaino v. Microsoft Corp.* (9th Cir. 2002) 290 F.3d 1043 ............................................. 18, 19

*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224 ................................................ 19

*Wren v. RGIS Inventory Specialists* No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011)....................................................................................................... 13, 17, 20

**Treatises**

Conte, Newberg on Class Actions
   § 8.39 (3rd Ed. 1992).................................................................................... 21

Manual for Complex Litigation, *Judicial Role in Reviewing a Proposed Class Action Settlement*
   § 21.61 (4th ed. 2004) ......................................................................... 12, 21, 22

Manual for Complex Litigation, Settlement Notice
   § 21.312 (4th ed. 2004) ............................................................................... 21

**NOTICE OF MOTION AND MOTION**

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 10, 2022, at 1:30 p.m., in Courtroom 8 of the United States District Court for the Northern District of California, San José Division, the Honorable Lucy H. Koh, presiding, Plaintiffs Kristal Nucci, Kelly Shaw, and Ana Goswick, on behalf of themselves, the Plaintiff Class, the California Labor Workforce Development Agency, and all others similarly situated (collectively "Plaintiffs"), move the Court for preliminary approval of the Class Action and Private Attorneys General Act ("PAGA")Settlement Agreement and Release (the "Settlement Agreement" or the "Settlement," attached as **Exhibit 1** to the accompanying Declaration of Hallie Von Rock).

The Settlement resolves all of the claims in this action on a class basis. In particular, Plaintiffs move for orders:

(1)     Granting preliminary approval of the Settlement;

(2)     Approving the proposed schedule and procedure for completing the final approval process for the Settlement, including setting the Final Approval Hearing;

(3)     Approving the Class Notice as it pertains to the Class (attached as **Exhibit A** to the Settlement Agreement);

(4)     Approving the Postcard Class Notice as it pertains to the Class (attached as **Exhibit B** to the Settlement Agreement);

(5)     Appointing Aiman-Smith & Marcy, PC, as Class Counsel for purposes of this Settlement;

(6)     Appointing Kristal Nucci, Kelly Shaw, and Ana Goswick as Class Representatives for purposes of this Settlement;

(7)     Preliminarily appointing and approving Atticus Administration ("Atticus") as the Settlement Administrator for the Class;

(8)     Authorizing the Settlement Administrator to mail and email the approved Class Notice to the Class as set forth in the Settlement Agreement; and

(9)     Preliminarily approving Class Counsel's request for attorney's fees and costs.

Plaintiffs bring this unopposed Motion pursuant to Federal Rule of Civil Procedure 23(e). The Motion is based on this notice, the following Memorandum of Points and Authorities, the Declaration of Hallie Von Rock, the Settlement Agreement attached as Exhibit 1 thereto, and all other records, pleadings, and papers on file in the consolidated action and such other evidence or argument as may be presented to the Court at the hearing on this Motion. Plaintiffs also submit a Proposed Order Granting Preliminary Approval of Class Action Settlement with their moving papers.

Date: October 22, 2021                          Respectfully submitted,

*/s/ Hallie Von Rock*

Hallie Von Rock
AIMAN-SMITH & MARCY PC
Attorneys for Plaintiffs and the Plaintiff Class

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs Kristal Nucci, Kelly Shaw, and Ana Goswick, on behalf of themselves, the Plaintiff Class, and the Labor Workforce Development Agency (collectively "Plaintiffs"), having reached a class-wide settlement with Defendants Rite Aid Corporation and Thrifty Payless, Inc. (collectively "Defendants" or "Rite Aid"), seek preliminary approval of the Settlement. After two and a half years of intense litigation, and on the eve of trial, and following class certification, formal discovery, expert discovery, pending cross-motions for summary judgment and a motion to decertify the class that were fully briefed, and extensive arm's-length negotiations in four mediations, the Parties have reached a settlement, memorialized in the proposed Class Action and Private Attorneys General Act Settlement Agreement and Release (the "Settlement Agreement" or the "Settlement"). *See,* Declaration of Hallie Von Rock ("Von Rock Dec."), **Exhibit 1** (filed herewith).

In June 2020, the Court ordered certification of a Rule 23(b)(3) class defined as: "All non-exempt employees, excluding pharmacists, pharmacy interns, and asset protection agents, working in any Rite Aid store in California at any time from March 13, 2015 through the trial date." (ECF 69). The Settlement Class is co-extensive with the Certified Class, except that the Settlement Class Members will be Class Members employed from March 19, 2015 through the date of preliminary approval. *See,* Von Rock Dec. ¶ 3.

There are approximately 25,000 Class Members who will benefit from this Settlement ("the Class Members") (the Aggrieved Employees are a subset of the Class Members). *Id*. ¶ 4.[1] Plaintiffs contend that Defendants violated California wage and hour laws by requiring Class Members to wear and purchase uniforms and allege that Defendants failed to compensate Class Members for uniforms, which resulted in violations of various California Labor Code sections (including, *inter alia,* unreimbursed business expenses, unpaid minimum wages, wage

---

[1] At the time the Class List was provided in September 2020, there were approximately 19,940 Class Members.  Rite Aid has represented there are approximately 4,500 Class Members hired after the Team Colors policy ended on March 22, 2020; these Class Members would not be subject to the Team Colors policy at issue in this Action, but they are being included in this Settlement. The precise Class Member data will be provided to the Settlement Administrator.

statement violations, failure to pay wages upon separation, and PAGA).

The Settlement resolves the Class and PAGA claims for a total non-reversionary settlement of $12,000,000. By any standard, this is a fair, adequate, and reasonable settlement. Both Parties believe in the merits of their cases and compromised to reach this settlement. The outcome of the liability trial hinged on the rulings of the competing summary judgment motions and the Court's definition of a "uniform" under California law; even if Plaintiffs prevailed, penalties were uncertain to be awarded and the amount of expense reimbursement and minimum wage violations were subject to differing expert opinions that could significantly reduce the damages amounts. Lengthy appeals were also likely to follow any judgment. This Settlement provides immediate relief to Class Members and Aggrieved Employees, who will not have to deal with the uncertainty and delay through lengthy trials and appeals.

The Settlement provides an average recovery for those Class Members subject to the Team Colors Policy of $600 gross and approximately $365 net.  Plaintiffs' expert survey calculated that Class Members spent an average of $286 on uniform purchases. *See,* Von Rock Dec. ¶5. Thus, the net recovery of $365 constitutes full reimbursement of all uniform purchases plus a compromised amount for potential penalties. Additionally, those Class Members hired after the Team Colors policy ended will receive a $25 payment for a release of their claims. Aggrieved Employees will also receive a *pro rata* share of the $50,000 Net PAGA settlement amount. On top of the net recovery amounts, Class Members and Aggrieved Employees will have received the benefits of the services of experienced class action counsel, the litigation costs expended by class counsel, and claims administration services, as well as payment to the LWDA under the PAGA settlement.

Plaintiffs request, therefore, that the Court grant their motion for preliminary approval, order the Class Notices to be sent out, and set a date and time for a fairness hearing pursuant to Rule 23(e)(2). If the Court is inclined to decide this motion on the papers, the parties would agree to proceed without a hearing.

## II.    FACTUAL BACKGROUND

Plaintiffs are those individuals who, according to Defendants' personnel and payroll

records, worked for Rite Aid as non-exempt associates, excluding pharmacists, pharmacy interns, and asset protection agents, in Rite Aid retail stores in California at any time during the period of March 19, 2015 through the date of preliminary approval. *See,* ECF 69; Von Rock Dec., ¶ 3. The Class is comprised of approximately 19,940 members who were subject to the Team Colors Policy and approximately 4,500 members who worked after the Team Colors Policy ended (i.e., after March 22, 2020). *Id*., ¶ 4.

Plaintiffs allege that Class Members experienced wage and hour violations in their work for Defendants. *Id*., ¶ 6. In particular, Plaintiffs contend that Rite Aid required Class Members to dress in "Team Colors," consisting of navy blue tops and khaki bottoms with specific style requirements for both garments. *Id*. The gravamen of Plaintiffs' case is that Team Colors are a uniform under the Wage Order and, accordingly, Labor Code section 2802 requires Rite Aid to reimburse its employees for purchases of Team Colors clothing.  Plaintiffs also assert additional claims based on wage and hour violations, including for minimum wages, wage statement penalties, waiting time penalties, and PAGA penalties, all related to Class Members' uniform clothing purchases.

Defendants have at all times denied, and continue to deny, all of these allegations, and deny any and all liability for Plaintiffs' claims.

## III.   PROCEDURAL HISTORY

On March 19, 2019, Plaintiff Kristal Nucci filed a class action Complaint in this Court for Failure to Indemnify Business Expenses (Labor Code §2802); Failure to Reimburse for Required Uniforms (IWC Wage Order 7, § 9 (A)); Unfair Business Practices (Business and Professions Code § 17200, *et seq*.); and Injunction. *See,* ECF 1.

On May 23, 2019, a First Amended Complaint was filed that added Plaintiff Ana Goswick and added cause of actions for Failure to Pay Minimum Wage (Labor Code §§ 1194, 1194.,2, 1197, IWC Wage Order No. 7, § 4(A)), Failure to Furnish Accurate Wage Statements (Labor Code § 226), Waiting Time Penalties (Labor Code §§ 201, 202, and 203), and Penalties under the Private Attorneys General Act ("PAGA") (Labor Code § 2698, *et seq.*). *See,* ECF 13.

On October 2, 2019, a Second Amended Complaint was filed that added Plaintiff Kelly

Shaw. *See,* ECF 30. This is the operative Complaint.

On February 6, 2020, Plaintiffs moved for Class Certification. The Court granted Plaintiffs' motion for Class Certification on June 16, 2020. *See,* ECF 69.

On December 3, 2020, the Court granted Plaintiffs' Motion for Provision of Notice of Pendency of Class Action. *See,* ECF 86. The Class Notice provided Class Members with an opportunity to opt-out and ordered that "By doing nothing, you are staying in the Class. If you stay in, regardless of whether the Plaintiffs win or lose the trial, you will not be able to sue, or continue to sue, Rite Aid—as part of any other lawsuit—about the same legal claims that are the subject of this lawsuit. You will also be legally bound by all of the Orders the Court issues and judgments the Court makes in this class action." *Id.* The Notice of Class Action was sent on December 23, 2020. The exclusion deadline was January 27, 2021; twenty-two (22) persons excluded themselves from the Class Action. *See,* Von Rock Dec., ¶ 7.

On July 20, 2021, Plaintiffs filed a Motion for Partial Summary Judgment, Defendants filed a Motion for Summary Judgment, and Defendants filed a Motion to Decertify Class. *See,* ECF 95, 97, 98. These motions were fully briefed as of August 10, 2021; the respective hearing dates were vacated by the Court and no rulings were issued. *See,* Von Rock Dec., ¶ 8.

Trial was set for November 19, 2021, with a final pre-trial conference scheduled for October 28, 2021. *See,* ECF 90.

On June 17, 2021, the Court ordered the parties to mediate by September 27, 2021 and set a Case Management Conference for October 6, 2021. *See,* ECF 94.

On September 13, 2021, the Parties requested the mediation deadline be continued to September 30, 2021, which the Court granted. *See,* ECF 109, 110. On September 30, 2021, the parties conducted a fourth mediation, this time with Jeffrey A. Ross. *See,* Von Rock Dec. ¶ 9.

On October 1, 2021, the Parties filed a Joint Case Management Statement informing the Court that the Action had settled. *See,* ECF 112. That same date, the Court continued the Case Management Conference to October 28, 2021. *See,* ECF 113.

In the intervening time since informing the Court that the Action had settled, the Parties have negotiated and drafted the Settlement Agreement and Notices.

### A.    Mediation

The Parties participated in four mediations. *See,* Von Rock Dec. ¶ 9. Prior to class certification, the parties mediated twice with Michael Loeb, Esq., on December 13, 2019, and on March 20, 2020. *Id.* Following class certification, the parties mediated with Hon. Daniel Weinstein (Ret.) and Lizbeth Hasse, Esq., on November 20, 2020. Additional negotiations continued after the mediation, but the parties did not progress toward a settlement. *Id.*

While the cross-motions for summary judgment were pending, on September 30, 2021, the parties participated in a full-day mediation with mediator Jeff Ross, Esq.  *Id*. With the assistance of Mr. Ross, who has vast experience mediating wage and hour disputes, counsel engaged in serious and arm's-length negotiations. *Id.* Ultimately, the next day, on October 1, 2021, the Parties accepted a mediator's proposal, which culminated in an agreement to settle for $12,000,000. *Id.* After the agreement to settle, counsel for the Parties met and conferred extensively over the detailed terms of the settlement for purposes of finalizing a long-form Settlement Agreement and corresponding notice documents. *Id.*, ¶ 10. Several drafts and revisions were circulated in order to arrive at the final settlement. *Id.* The Settlement Agreement was fully executed on October 21, 2021. *Id.*

## IV.    TERMS OF THE SETTLEMENT

### A.    Basic Terms and Value of the Settlement

Defendants have agreed to pay a non-reversionary Gross Settlement Amount of $12,000,000 to settle all aspects of the case. *Id.*, ¶ 11. The Net Settlement Amount is defined as the Gross Settlement Amount, less deductions for: Service Payment Awards to the Named Plaintiffs (not to exceed $10,000 each), attorney's fees to Class Counsel (not to exceed 33.33%, or $3,999,600.00), Class Counsel's litigation costs (not to exceed $305,000.00), administrative expenses to the Settlement Administrator, Atticus Administration ("Atticus"), (estimated at $67,000.00 – this amount has been updated to reflect the additional Class Members hired after March 22, 2020), and payment to the Labor & Workforce Development

Agency ("LWDA") for its 75% share of the PAGA penalties ($150,000.00).[2] *Id.*

The Gross Settlement Amount is a negotiated amount that resulted from substantial arms' length negotiations and significant investigation and analysis by Class Counsel. *Id.*, ¶ 13. Class Counsel based their damages analysis and settlement negotiations on the discovery propounded, including payroll and timekeeping data, the survey conducted by Plaintiffs' expert, Jeffrey Petersen, Ph.D., and the damages analysis conducted by Plaintiffs' expert, Dwight Steward, Ph.D. *Id.* Based on the analysis of the documents and data produced by Defendants and on the survey results, Plaintiffs made reasonable assumptions regarding the wage and hour violation rates, and resulting damages and potential penalties. *Id.* ¶¶ 13, 14.

Using these assumptions and further assuming that Plaintiffs and the Class Members would prevail on all claims at summary judgment and/or at trial, the maximum total amount of damages and penalties is broken down as follows:

The total principal amount for unreimbursed uniform purchases is $5,002,535. Interest through August 2021 is $2,484,810, totaling $7,487,345. *Id.*, ¶¶ 15, 16.

The total principal amount of unpaid minimum wages is $528,055, plus $176,864 in interest, totaling $704,919. *Id.*, ¶ 17.

During the statutory period from March 15, 2018-2020, if the court were to find that Class Members suffered injury, Class counsel calculated 86,642 potential wage statement violations affecting 18,510 Class Members, resulting in maximum section 226 statutory penalties of $7,738,700. *Id.*, ¶ 18.

During the statutory period from March 15, 2016-2020, if the court were to find that there was no good faith defense, waiting time penalties were calculated for 4,793 Class Members, resulting in maximum section 203 statutory penalties of $12,300,000. *Id.*, ¶ 19.

For PAGA penalties, the Court has discretion over the penalty amount to be awarded. However, Class Counsel calculated a maximum potential exposure of over $18,000,000 for

---

[2] The Parties agreed to allocate $200,000.00 of the Gross Settlement Amount to the settlement of the PAGA claims, which the Parties believe in good faith is a fair and reasonable apportionment. The Settlement Administrator shall pay 75%, or $150,000.00, of this amount to the LWDA, and 25% will remain as part of the Net Settlement Amount. *See,* Von Rock Dec. ¶ 12. The Net PAGA Settlement Amount is to be divided equally amongst all PAGA Aggrieved Employees. *Id.*

1    initial violations. *Id.*, ¶¶ 20-25.

2          Totaling these estimated substantive and derivative damages across the Settlement Class

3    yields the total estimated damages amount for the entire action of approximately $46,230,694.

4    *Id.*, ¶ 26.

5          Thus, the Gross Settlement Amount of $12,000,000 represents more than 25% of the

6    total estimated damages and penalties for all claims.  Again, these figures are based on

7    Plaintiffs' assessment of a best-case-scenario. On a more realistic note, the $12,000,000

8    settlement represents a full recovery for the unreimbursed uniform purchases and minimum

9    wages, valued at $8,192,264 (including interest). That Class Counsel was able to secure a full

10   payment of out-of-pocket expenses and unpaid wages for Class Members plus nearly

11   $4,000,000 more in a compromise of penalties, which were uncertain, provides an excellent

12   recovery in the face of expanding and uncertain litigation. *Id*. ¶ 27.

13         The Settlement will result in immediate and certain payment to Class Members of

14   meaningful amounts. *Id*., ¶ 28. For those Class Members subject to the Team Colors Policy,

15   the average net recovery is approximately $365 per Class Member (this amount is the average

16   division of the *net* Settlement Class recovery, after deducting the expected $25 payments to the

17   approximately 4,500 Class Members hired after March 22, 2020).  *Id*.  Additionally, $50,000

18   will be shared among the Aggrieved Employees. *Id*., ¶ 29.  This amount provides significant

19   compensation to the Class Members, and in light of all of the risks, the settlement amount is

20   fair, reasonable, and adequate. *Id*., ¶ 30.

21         **B.     Settlement Class Period**

22         The Class Members are as defined in the Court's Order granting class certification: All

23   non-exempt employees, excluding pharmacists, pharmacy interns, and asset protection agents,

24   working in any Rite Aid store in California. *See,* ECF 69. The Settlement Class Period is from

25   March 19, 2015 through the date of final approval. The PAGA Class Period is from March 19,

26   2018 through the date of final approval.

27         **C.     Allocation and Awards**

28         The Net Settlement Amount to be paid to Class Members is approximately $7,398,400.

**MEMO OF Ps &As IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**
*Nucci, et al. v. Rite Aid Corporation*                                                    Case No. 19-cv-01434-LHK
Page 9

*See,* Von Rock Dec. at ¶ 11. Class Members will receive a direct settlement award payment without the need to submit a claim form. *Id.*, ¶ 31.

The allocation is set forth as follows:  (1) Rite Aid implemented a new dress code policy on March 22, 2020, which no longer required that Class Members dress in Rite Aid's specific "Team Colors" – accordingly, those Class Members hired after March 22, 2020 were not necessarily required to purchase uniform clothing and, therefore, a nominal payment of $25.00 is being provided to Class Members hired after March 22, 2020 for the release of any potential claims alleged in the Action; (2) for Class Members hired prior to March 22, 2020, Class Members will receive a share of the Net Settlement Amount, after subtracting the payment to the Class Members hired after March 22, 2020, based on their pro-rata percentage of workweeks determined by dividing the number of weeks worked (that is, weeks of employment, regardless of any leave or vacation) by the Class Member as a non-exempt employee, excluding pharmacists, pharmacy interns, and asset protection agents, in any Rite Aid store in California at any time from March 19, 2015 through the date of preliminary approval of the settlement by the Court, such that these Class Members will receive a dollar amount calculated by multiplying each of their respective percentages by the Net Settlement Amount; (3) for those Class Members hired prior to March 22, 2020 whose employment has terminated with Defendants, an additional four workweeks will be added to their total workweeks, as described above in this paragraph, in consideration of their release of waiting time penalties; and (4) for Aggrieved Employees, the Net PAGA Settlement Amount of $50,000 will be shared on a pro rata basis among Aggrieved Employees in addition to the amounts they are otherwise eligible for under (1) through (3). *See,* Von Rock Dec. at ¶ 32; Settlement Agreement, ¶ 11.

Class Members will have 35 days to object to the settlement and motion for attorney's fees and costs. *See, id.*, ¶ 33; Settlement Agreement, ¶ 31(a).

Class Members will have an option to choose a digital payment or a hard copy check. *See,* Von Rock Dec. at ¶ 34; Settlement Agreement, ¶ 29.  If a Class Member does not affirmatively choose a digital payment, a hard copy check will be mailed.  *Id.* The digital

1  payment options will include E-Mastercard, Paypal, and Venmo. Class members will have one
2  hundred eighty (180) calendar days to activate their digital payment. *Id.*

3        All settlement checks will be valid for one hundred eighty (180) calendar days. At the
4  end of the 180-day period, settlement checks will be canceled and digital payments not
5  activated will be combined with the uncashed settlement checks. *Id*.

6        If the total residual amount of uncashed settlement checks and non-activated digital
7  payments is less than $200,000.00, then the amount will revert to *cy près*. *See,* Von Rock Dec.
8  at ¶ 36; Settlement Agreement ¶ 29. The Parties propose that the *cy près* recipient be Legal Aid
9  at Work, which provides legal services assisting low-income, working families and promotes
10  better understanding of the conditions, policies, and institutions that affect the well-being of
11  workers and their families and communities. *See,* Settlement Agreement ¶ 29(d)(i).

12        If the total residual amount is $200,000.00 or greater, a second distribution will occur to
13  those Class Members who cashed their Settlement Award checks and activated their digital
14  payments. *See,* Von Rock Dec. at ¶ 37; Settlement Agreement, ¶ 29(d)(ii). Any residual funds
15  uncashed after the second distribution will revert to the *cy près* recipient. *Id.*

16        **D.    Timeline**

17        The proposed timeline is set forth in the [Proposed] Order and Von Rock Declaration.

18        **E.    Scope of Release**

19        Upon the Final Approval by the Court, and subject to the exclusions described below,
20  each Class Member fully releases all claims that were raised in the litigation and all claims that
21  could have been brought based on the facts alleged in the complaint. *See,* Von Rock Dec. at ¶
22  38; Settlement Agreement ¶ 33, 35. The released claims are co-extensive with the certified
23  claims, with the addition of a release of potential claims arising from the same facts under the
24  Fair Labor Standards Act. *Id.*  Plaintiffs Nucci, Shaw, and Goswick also agree to a general
25  release from all known and unknown claims they may have against the Released Parties. *Id.*;
26  Settlement Agreement ¶ 34.

27        **F.    Settlement Administration**

28        Plaintiffs obtained quotes for settlement administration from four established

**MEMO OF Ps &As IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**
*Nucci, et al. v. Rite Aid Corporation*                    Case No. 19-cv-01434-LHK
Page 11

1   administration firms. The parties have agreed to use Atticus Administration ("Atticus") to

2   administer the Settlement.  Class Counsel have successfully used Atticus in four recent class

3   actions. *See,* Von Rock Dec., ¶ 39.

4         Atticus provided a competitive bid for the services offered of total fees and costs

5   currently estimated at $67,000. *Id.*  Atticus will distribute the Postcard Notices of Settlement

6   via U.S. mail and email, re-mail any Postcard Notices returned as non-deliverable but with

7   forwarding addresses, and re-mail the Notice to any new address obtained by way of skip-

8   trace. *Id.*, ¶ 40; Settlement Agreement ¶ 24(b). Atticus will also receive and process workweek

9   disputes, calculate the settlement payments, calculate all applicable payroll taxes,

10  withholdings, and deductions; and prepare and issue all disbursements to Class Members,

11  Service Awards to Plaintiffs, payment to the LWDA payment, payment to Class Counsel for

12  fees and costs, and payment to itself for fees in administering the settlement. *Id.*; Settlement

13  Agreement ¶ 24.

14        Atticus will also create a website for the Settlement which will allow Class Members to

15  view the Class Notice in substantially the form attached as **"Exhibit A"** to the Settlement

16  Agreement, the Settlement Agreement, Plaintiffs' preliminary and final approval motions, and

17  payment options. *Id.*; Settlement Agreement ¶ 24(c)*. The Settlement Administrator will also

18  establish a toll-free call center for inquiries from Class Members. *Id*.

19        **G.    Payment Options**

20        Class Members will have the option to receive their settlement amount in a digital form,

21  through a prepaid E-Mastercard, or electronically with a Paypal or Venmo account. These

22  digital payment options provide more flexibility and provide a substantial benefit to Class

23  Members who do not have traditional bank accounts. The Settlement Administrator will have a

24  secure link on the settlement website for Class Members to submit a request for a digital

25  payment option. *See*, Von Rock Dec. ¶ 34. If a Class Member does not submit a request for a

26  digital payment option, the Settlement Administrator will mail a check to the Class Member.

27  / / /

28  / / /

1

## V.     LEGAL DISCUSSION

2

### A.     The Court Should Grant Preliminary Approval of the Settlement

3

A certified class action may only be settled with court approval. *See* Fed.R.Civ.P. 23(e).

4 Court approval of a class action settlement requires three steps: (1) preliminary approval of the

5 proposed settlement upon a written motion; (2) dissemination of notice of the settlement to all

6 class members; and (3) a final settlement approval hearing at which objecting class members

7 may be heard, and at which evidence and argument concerning the fairness, adequacy, and

8 reasonableness of the settlement is presented. Manual for Complex Litigation, *Judicial Role in*

9 *Reviewing a Proposed Class Action Settlement*, § 21.61 (4th ed. 2004). The decision to

10 approve or reject a proposed settlement is committed to the sound discretion of the court. *See*

11 *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). Rule 23 requires that all class

12 action settlements satisfy two primary prerequisites before a court may grant certification for

13 purposes of preliminary approval: (1) that the settlement class meets the requirements for class

14 certification if it has not yet been certified; and (2) that the settlement is fair, reasonable, and

15 adequate. Fed.R.Civ.P. 23(a), (e)(2); *Hanlon*, 150 F.3d at 1020.

16

Here, the proposed Settlement Class definition is consistent with the Class previously

17 certified (ECF 69) and therefore meets the requirements of Federal Rule of Civil Procedure 23

18 for the reasons set forth in the Order Denying Motion to Strike and Granting Class

19 Certification (ECF 69). Furthermore, the Settlement is fair, reasonable, and adequate in

20 accordance with Rule 23(e)(2). *See,* Von Rock Dec. ¶¶ 3, 30. Accordingly, the Court should

21 preliminarily approve the Settlement. *Id.*

22

### B.     The Settlement Should Be Preliminarily Approved Because it Is Fair, Reasonable, and Adequate

23

24

In deciding whether to approve a proposed class settlement, the Court must find that the

25 proposed settlement is "fair, reasonable, and adequate." Fed.R.Civ.P. 23(e)(2); *Officers for*

26 *Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Lynn's Food Stores*, 679 F.2d

27 at 1354-55. Included in this analysis are considerations of: (1) the strength of the plaintiff's

28 case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of

maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Village, LLC. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026). Importantly, courts apply a presumption of fairness, where, as is the case here, "the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011). There is also "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). In light of these factors, the proposed settlement is fair, reasonable, and adequate.

### i. The terms of the Settlement are fair, reasonable, and adequate.

In evaluating the fairness of a proposed settlement, courts compare the settlement amount with the estimated maximum damages recoverable in a successful litigation. *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 459 (9th Cir.2000). Courts routinely approve settlements that provide a fraction of the maximum potential recovery. *See, e.g.*, *Officers for Justice,* 688 F.2d at 623; *Viceral v. Mistras Grp., Inc.*, Case No. 15-cv-2198-EMC, 2016 WL 5907869, at *7 (N.D. Cal. Oct. 11, 2016) (approving wage and hour settlement which represented 8.1% of the total verdict value).[3] A review of the Settlement Agreement reveals the fairness, reasonableness, and adequacy of its terms. *See,* Von Rock Dec., ¶ 41. The Gross Settlement Amount of $12,000,000, represents 100% of the unreimbursed business expenses

---

[3] *See also Stovall-Gusman v. W.W. Granger, Inc.*, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) ("10% gross and 7.3% net figures are 'within the range of reasonableness'"); *Balderas v. Massage Envy Franchising, LLP*, 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (gross settlement amount of 8% of maximum recovery and net settlement amount of 5%); *Ma v. Covidien Holding, Inc.*, 2014 WL 360196, at *4-5 (C.D. Cal. Jan. 31, 2014) (9.1% of "the total value of the action" is within the range of reasonableness).

1   and minimum wages plus interest, plus an additional $3.8 million, representing 10% of the

2   approximately $38 million in maximum potential statutory and PAGA penalties. *Id.*

3   Again, these figures are based on Plaintiffs' assessment of a best-case-scenario. *Id.* ¶ 42.

4   To obtain such a result at trial, Plaintiffs would have to prove that each Class Member

5   purchased uniform clothing on average of $286 during their employment, that such purchases

6   reduced their pay below minimum wages, that injury was caused by having incorrect "wages

7   earned" on their paychecks during the pay periods when uniform clothing was purchased, and

8   that Defendants did not act in good faith when failing to paying all wages due for purchased

9   uniform clothing at the time of termination. *Id.* These figures would of course be disputed and

10   hotly contested, and any award of that size would inevitably be appealed. *Id.*

11   The final settlement amount takes into account the substantial risks inherent in any class

12   action wage and hour case, as well as the procedural posture of the Actions and the specific

13   defenses asserted by Defendants, including that the Team Colors dress code did not constitute

14   a uniform, and the pending motion by Defendants to decertify the class. *Id.*, ¶ 43*; see Officers*

15   *for Justice*, 688 F.2d at 623. By obtaining 100% of the claimed unreimbursed purchases and

16   minimum wages plus over 10% of potential statutory and PAGA penalties, which were

17   uncertain to be awarded, the settlement is an excellent recovery for Class Members. *Id.*

18         *ii.*    *The Parties' discovery enabled them to make informed*

19                    *decisions regarding settlement.*

20   The amount of discovery completed prior to reaching a settlement is important because

21   it bears on whether the Parties and the Court have sufficient information before them to assess

22   the merits of the claims. *See, e.g.*, *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 617, 625 (N.D. Cal.

23   1979); *Lewis v. Starbucks Corp.*, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008).

24   Here, both fact and expert discovery had ended by the time of the mediation on

25   September 30, 2021, and the parties were preparing for trial. The Parties engaged in extensive

26   discovery, including: initial disclosures; two sets of supplemental initial disclosures; Plaintiffs

27   served and Defendants responded to four sets of document demands and three sets of special

28   interrogatories; Defendants amended multiple responses following extensive meet and confer

efforts; Defendants provided thousands of pages of documents and time and payroll records; Defendants served and Plaintiffs responded to three sets of document demands and three sets of special interrogatories; Plaintiffs' depositions were taken; Defendants' 30(b)(6) depositions were taken with four deponents; the deposition of a store manager was taken; a total of 64 Class Member declarations obtained by Plaintiffs and Defendants were exchanged; expert and rebuttal expert reports were exchanged; and expert depositions were taken. *See,* Von Rock Dec., ¶ 44.

Accordingly, the Parties were able to accurately assess the legal and factual issues that would arise if the case proceeded to trial. *Id*. ¶ 45.  In addition, in reaching this Settlement, Class Counsel relied on their substantial litigation experience in similar wage and hour class actions. *Id*.  Class Counsel's liability and damages evaluation was premised on a careful and through analysis of the effects of Defendants' policies and practices on Class Members' pay. *Id*. Ultimately, in their fourth mediation, facilitated by mediator Jeffrey Ross, the Parties used this information and discovery to fairly resolve the litigation. *Id*.

iii.        *Litigating the Action would delay recovery and be expensive, time consuming, and involve substantial risk.*

The monetary value of the proposed Settlement represents a fair compromise given the risks and uncertainties posed by continued litigation. *See,* Von Rock Dec., ¶ 46. Litigating the class action claims would require substantial additional preparation and resources. *Id.* The parties were preparing for a series of pre-trial deadlines for a rapidly approaching trial date of November 19, 2021, the consideration, preparation, and presentation of voluminous documentary and witness evidence. *Id.*

Additionally, dispositive motions were pending that could have seriously curtailed Plaintiffs' claims if the Court were to adopt Defendants' definition of a "uniform." *See,* Von Rock Dec. ¶ 47. Furthermore, whichever way the Court ruled on the definition of a uniform would have likely resulted in the losing party appealing, since there is virtually no binding precedent on this issue. Plaintiffs' statutory penalty claims were also subject to formidable defenses by Defendants, including that failure to include unreimbursed business expenses on

wage statements are not an injury subject to Labor Code section 226 penalties and that

Defendants had a good faith belief that the Rite Aid dress code did not require a "uniform,"

which would prevent Labor Code section 203 penalties. *Id.* If the Court had sided with

Defendants on either of those defenses, Class Members would not receive any statutory

penalties. *Id.* As to PAGA penalties, it is within the Court's discretion to determine the

amount, which could have resulted in a lesser award than recovered under the Settlement. *Id., ¶*

48. For example, in *Carrington v. Starbucks Corp.* (2018) 30 Cal.App.5th 504, the trial Court

reduced the PAGA penalty amount to only $5 per pay period and in *Magadia v. Wal-Mart*

*Associates, Inc.* (May 31, 2019) 384.F.Supp.3d 1058, this Court awarded only $5.8 Million of

the $34.7 Million in PAGA penalties sought by Plaintiffs. Defendants also had a pending

motion to decertify the class. If the Court had granted Defendants' motion, it would have

resulted in substantial delay or no recovery at all for Class Members. *Id.*

In contrast to litigating and appealing this suit, resolving this case by means of the

Settlement will yield a prompt, certain, and very substantial recovery for the Class Members.

*Id.*, at ¶ 49. Such a result will benefit the Parties and the court system. *Id.* It will bring finality

to the Action and will foreclose the inevitability of expanding litigation. *Id.*

   iv.   *The Settlement is the product of informed, non-collusive, and arm's-length negotiations between experienced counsel.*

Courts routinely presume a settlement is fair where it is reached through arm's-length

bargaining. *See, Hanlon*, 150 F.3d at 1027; *Wren*, 2011 WL 1230826, at *14. Furthermore,

where counsel are well-qualified to represent the class in a settlement based on their extensive

class action experience and familiarity with the strengths and weaknesses of the action, courts

find this factor to support a finding of fairness. *Wren*, 2011 WL 1230826, at *10; *Carter v.*

*Anderson Merchandisers, LP*, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's

opinion is accorded considerable weight.").

Here, the settlement was a product of non-collusive, arm's-length negotiations. *See,*

Von Rock Dec., ¶ 50. The Parties participated in four mediations during this litigation. *Id.* On

nearly the eve of trial, the last mediation session was held before Jeffrey Ross, a skilled

mediator with many years of experience mediating employment matters. *Id.* The day after the mediation, the Parties agreed to a mediator's proposal. *Id.* The parties then went through several rounds of edits related to the terms and details of the Settlement. *Id.*  Plaintiffs are represented by experienced and respected class action litigators who feel strongly that the proposed Settlement achieves an excellent result for the Class Members. *Id.*, ¶ 51, Ex. 2.

The Settlement also compares favorably to past settlements reached by Plaintiffs' Counsel in other uniform reimbursement cases and against the same Defendants. *Id.* ¶ 52, Ex. 3 (Chart of Prior Uniform Reimbursement Settlements).

### C.    The Service Awards to Representative Plaintiffs Are Reasonable

Named plaintiffs in class action litigation are eligible for reasonable service awards. *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) ("Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation"); *Van Vranken v. Atl. Richfield Co.*, 901 F.Supp. 294, 300 (N.D. Cal. 1995) (named plaintiff received $50,000 for work in class action). The service payments requested here of $10,000 each (totaling $30,000) are intended to compensate the Named Plaintiffs for the critical role they played in this case, and the time, effort, and risks undertaken in helping secure the result obtained on behalf of the Class Members. *See,* Von Rock Dec., ¶ 53. In agreeing to serve as Class Representatives, these individuals formally agreed to accept the responsibilities of representing the interests of all Class Members. *Id.*  Each Named Plaintiff participated fully in discovery, worked closely with Class Counsel, and had her deposition taken by Defendants. *Id.* Defendants do not oppose the requested payments to these representatives as reasonable service awards. *Id.* Moreover, the service awards are fair when compared to the awards approved in similar cases in the Northern District and by this Court. *Id.,* ¶ 54. An award at the higher end of the range typically approved by this Court is appropriate here where each Plaintiff was deposed and participated fully in discovery and settlement efforts, up through the eve of trial. *Id.,* ¶ 55.

### D.    The Requested Attorney's Fees and Costs Are Reasonable

In their fee motion to be submitted with the final approval papers, Class Counsel will

request a percentage of the common fund, up to 33.33% of the Gross Settlement Amount, or $3,999,600.00, plus reimbursement of costs up to $305,000. *See,* Von Rock Dec., ¶ 56. Defendants do not oppose this request. *Id.* At final approval, Plaintiffs will present the factors that district courts in the Ninth Circuit normally consider in awarding attorney's fees, including: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *See, Vizcaino v. Microsoft Corp.* (9th Cir. 2002) 290 F.3d 1043, 1048-50. Plaintiffs will also provide an index of all costs expended in this matter. Relevant case law supports Plaintiffs' request for fees and costs.

The percentage fee will also be reasonable on a lodestar/multiplier basis.  Based on Plaintiffs' current lodestar, the multiplier sought will be in the range of 1.5 -2.0, which is well within the range California courts consider reasonable.  *See,* Von Rock Dec., ¶ 57; see also, *Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 255 (multiples "can range from 2 to 4 or even higher"); *Vizcaino,* 290 F.3d 1043 (holding 3.65 multiplier appropriate).

When a district court exercises diversity jurisdiction over a case consisting of exclusively California claims, as here, California substantive law applies to the calculation of the attorney fee award. *See, Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478-1479 (9th Cir. 1995) (finding state law to be applicable in "in determining not only the right to fees, but also the method of calculating the fees."); *see also, Rodriguez v. Disner*, 688 F.3d 645, 653 fn. 6 (9th Cir. 2012) ("If … we were exercising our diversity jurisdiction, state law would control whether an attorney is entitled to fees and the method of calculating such fees"); *Gonzalez v. Southern Wine & Spirits of Am., Inc.*, 555 Fed.Appx. 704, 704-705 (9th Cir. 2014) (finding district court abused its discretion in applying federal law instead of California substantive law to the calculation of attorneys' fees, holding that, because the court exercised diversity jurisdiction, California substantive law should have been applied).

Here, Plaintiffs' claims arise exclusively from California law. Accordingly, the Court should apply the method for calculating attorney's fees as set forth by California jurisprudence. *See, e.g., Laffitte v. Robert Half International, Inc.,* 1 Cal.5th 480, 503-506 (2016) (percentage

method with a lodestar crosscheck is appropriate in common fund cases). Furthermore, use of the percentage method in common fund cases appears to be dominant in the Ninth Circuit. *See, e.g., Vizcaino*, 290 F.3d 1043, 1047; *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). The advantages of using the percentage method have been described thoroughly by other courts. *See, e.g., In re Activision Sec. Litig.*, 723 F.Supp. 1373, 1374-77 (N.D. Cal. 1989).

In California, federal and state courts have customarily approved payments of attorney's fees amounting to one-third of the common fund in comparable wage and hour class actions. *See, e.g., Soto et al. v. O.C. Communications, Inc., et al.*, Case No. 3:17-cv-00251-VC, ECF 304 (N.D. Cal. Oct. 23, 2019) (approving attorneys' fees of one-third of the gross settlement in recent hybrid FLSA/Rule 23 settlement); *Regino Primitivo Gomez, et al. v. H&R Gunlund Ranches, Inc.*, No. CV F 10–1163 LJO MJS, 2011 WL 5884224 (E.D. Cal. 2011) (approving attorneys' fees award equal to 45% of the settlement fund); *Wren,* 2011 WL 1230826 (approving attorneys' fee award of just under 42% of common fund); *Martin v. FedEx Ground Package System, Inc.* 2008 WL 5478576, *8 (N.D. Cal) (trucker meal break class action where the court approved attorneys' fees of 1/3 of common fund stating); *see also, Vasquez v. Coast Valley Roofing, Inc.,* 266 F.R.D. 482, 491-492 (E.D. Cal. 2010) (citing to five recent wage and hour class actions where federal district courts approved attorney fee awards ranging from 30 to 33%); *Singer v. Becton Dickson and Co.*, 2010 U.S. Dist. LEXIS 53416, 2010 WL 2196104, *8 (S.D. Cal. June 1, 2010) (approving attorney fee award of 33.33% of the common fund and holding that award was similar to wage and hour cases where fees ranged from 30.3% to 40%).

Further, under the circumstances present here, upward adjustment from the Ninth Circuit "benchmark" of 25% is warranted not only by the application of California fee award jurisprudence, but by the circumstances of the case. Plaintiffs obtained a rare class certification in a uniform reimbursement case, filed a summary judgment motion which may well have made new law, and litigated the case to the eve of trial.

The amount of fees and costs requested are clearly set forth in the Notice. Accordingly, Plaintiffs respectfully request the Court preliminarily approve the terms of the settlement,

1    including the request for fees and costs.  Any objections by Class Members to the request for

2    fees and costs may be considered by the Court at final approval.

3        **E.    The Proposed Notice of Settlement and Claims Process Are Reasonable**

4        The Court must ensure that Class Members receive the best notice practicable under the

5    circumstances of the case. *See, Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985);

6    *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974). Procedural due process does not

7    guarantee any particular procedure, but rather requires only notice reasonably calculated "to

8    apprise interested parties of the pendency of the action and afford them an opportunity to

9    present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314

10    (1950); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). A settlement notice "is

11    satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert

12    those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill

13    Village LLC*, 361 F.3d at 575.

14        The parties propose sending a Postcard Notice, attached as **Exhibit B** to the Settlement

15    Agreement, which summarizes the settlement and directs the Class Members to the long form

16    Notice of Settlement, attached as **Exhibit A** to the Settlement Agreement, on the settlement

17    website. *See,* Von Rock Dec., ¶ 58. The parties also propose sending the information contained

18    on the Postcard Notice via email to all Class Members for whom an email address is provided

19    that includes a link to the settlement website with the long form Notice of Settlement.  This is

20    "the best notice practicable." *Id.*; Fed.R.Civ.P. 23(c)(2)(B). Mailing of a postcard saves on the

21    costs of administration and Class Members will immediately see the settlement information on

22    the postcard, rather than opening an envelope, which could be inadvertently tossed as junk

23    mail. *Id.* The proposed Notice is clear and straight-forward and provides information on the

24    nature of the action, the terms and provisions of the Settlement Agreement, and the monetary

25    awards that the Settlement will provide Class Members. *Id.* In addition, the Parties will provide

26    a settlement website that provides the Notice, the Settlement Agreement, and other case related

27    documents and contact information. *Id*

28        The proposed Notice fulfills the requirement of neutrality in class notices. *See,* Conte,

Newberg on Class Actions (3rd Ed. 1992) § 8.39. It summarizes the proceedings necessary to provide context for the Settlement Agreement and summarizes the terms and conditions of the Settlement, including an explanation of how the settlement amount will be allocated between the Named Plaintiffs, Class Counsel, the Settlement Administrator, and the Class Members, in an informative, coherent and easy-to-understand manner, all in compliance with the Manual for Complex Litigation's recommendation that "the notice contain a clear, accurate description of the terms of the settlement." *See,* Manual for Complex Litigation (4th ed. 2004) § 21.312.

The Notice of Settlement clearly explains the procedures and deadlines for objecting to the Settlement, and the date, time and place of the Final Approval Hearing. *See,* Von Rock Dec., ¶ 59. Pursuant to Rule 23(h), the proposed Notice of Settlement also sets forth the amounts of attorney's fees and costs sought by Plaintiffs, as well as an explanation of the procedure by which Class Counsel will apply for them. *Id.* The Notice of Settlement clearly states that the Settlement does not constitute an admission of liability by Defendants. *Id..* Accordingly, the Notice of Settlement complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court.

Accordingly, the Notice of Settlement should be preliminarily approved.

### F.   Class Members Already Had an Opportunity to Opt Out

As described above, Class Members will have an opportunity to object to the Settlement. However, there will not be a second opportunity to opt out because the Court previously ordered the dissemination of individual notice of the pendency of a class action to Class Members and ample opportunity to opt out, which 22 Class Members did.

Members of a Rule 23(b)(3) class need not be given a second chance to opt out at the settlement stage. *See, Low v. Trump Univ., LLC* (9th Cir. 2018) 881 F.3d 1111; *Moorer v. Stemgenex Med. Group,* 2021 U.S.Dist.LEXIS 4037 (S.D.Cal. Jan. 8, 2021). Accordingly, Class Members need not be given a second opportunity to opt out at the settlement stage.

### G.   The Court Should Approve the Proposed Schedule

The last step in the settlement approval process is to hold a Final Approval Hearing at which the court will hear argument and make a final decision about whether to approve the

1    Settlement pursuant to Rule 23(e)(3).  *See*, Manual for Complex Litigation, *supra*, at §21.63.

2    Plaintiffs have submitted a proposed order setting forth the proposed schedule of events from

3    here through final approval. *See,* Von Rock Dec., ¶60 and [Proposed] Order. Plaintiffs submit

4    that the proposed schedule complies with Rule 23 and secures the benefits for Class Members

5    in a timely fashion.

6    **VI.    CONCLUSION**

7          For the foregoing reasons, Plaintiffs respectfully request that this Court grant

8    preliminary approval of the Settlement Agreement in accordance with the proposed schedule.

9    Date: October 22, 2021                    Respectfully submitted,

10                                             */s/ Hallie Von Rock*

11                                             Hallie Von Rock
                                               AIMAN-SMITH & MARCY PC
12                                             Attorneys for Plaintiffs and the Plaintiff Class

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28