UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| KRISTAL NUCCI, KELLY SHAW, and ANA GOSWICK, individually and on behalf of all others similarly situated and the California Labor & Workforce Development Agency,<br><br>Plaintiffs,<br><br>v.<br><br>RITE AID CORPORATION, THRIFTY PAYLESS, INC. and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 19-cv-01434-LB<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS-ACTION SETTLEMENT**<br><br>Re: ECF No. 115 |

## INTRODUCTION

This is a wage-and-hour class action under Federal Rule of Civil Procedure 23. The plaintiffs — current and former employees of defendants Rite Aid Corporation and Thrifty Payless, Inc. — challenge the defendants' alleged failure to reimburse their expenses for uniforms and resulting failures to pay minimum wage, issue accurate wage statements, pay wages due on termination of employment, and pay all wages due on regularly scheduled paydays. The plaintiffs claim violations of an Industrial Welfare Commission (IWC) Wage Order, the California Labor Code, California's Unfair Competition Law (UCL), and California's Private Attorneys General Act

(PAGA).[1] The parties settled their case,[2] and the plaintiffs moved for preliminary approval of the proposed settlement.[3] The court grants the unopposed motion.

**STATEMENT**

**1. The Lawsuit**

The plaintiffs filed the lawsuit on March 19, 2019, claiming failure to indemnify business expenses under the California Labor Code, failure to reimburse for required uniforms under IWC Wage Order 7, and unfair business practices under the UCL.[4] They filed a first amended complaint on May 23, 2019, adding a named plaintiff, claims under the California Labor Code and IWC Wage Order 7 for failure to pay minimum wage, failure to furnish accurate wage statements, and waiting time penalties, and a claim for PAGA penalties.[5] They also filed a second amended complaint on October 2, 2019, adding another named plaintiff.[6]

The court certified the following class under Rule 23(b)(3) on June 14, 2020: "All non-exempt employees, excluding pharmacists, pharmacy interns, and asset protection agents, working in any Rite Aid store in California at any time from March 13, 2015 through the trial date."[7]

The court approved notice to the class on December 3, 2020.[8] The notice was sent on December 23, 2020, and twenty-two class members requested exclusion.[9]

The parties engaged in extensive discovery, including initial and supplemental initial disclosures, seven sets of document requests and six sets of special interrogatories, meet and

---

[1] Second Am. Compl. (SAC) – ECF No. 30. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Settlement Agreement, Ex. 1 to Von Rock Decl. – ECF No. 119 at 23–58.

[3] Mot. – ECF No. 115.

[4] Compl. – ECF No. 1.

[5] First Am. Compl. – ECF No. 13.

[6] SAC – ECF No. 30.

[7] Order – ECF No. 69 at 34.

[8] Order – ECF No. 86.

[9] Mot. – ECF No. 115 at 11; Von Rock Decl. – ECF No. 119 at 3 (¶ 7).

confer efforts, "thousands of pages of documents and time and payroll records" provided by the defendants, depositions, exchanges of class member declarations, and exchanges of expert and rebuttal expert reports.[10] The defendants produced data that, in conjunction with the plaintiffs' experts' assessments, allowed the plaintiffs' counsel to evaluate class damages.[11]

The parties had four mediations. They mediated twice before class certification with Michael Loeb, Esq., on December 13, 2019 and March 20, 2020. After class certification, they mediated on November 20, 2020 with the Honorable Daniel Weinstein (Ret.) and Lizbeth Hasse, Esq. Finally, they had a full-day mediation with Jeff Ross, a respected wage-and-hours mediator, on September 30, 2021. One day later, they accepted a proposal from Mr. Ross and reached an agreement to settle the entire case.[12] Following the initial agreement to settle, the parties "met and conferred extensively over the detailed terms of the settlement" and executed a settlement agreement on October 21, 2021.[13]

At the time of settlement, there were pending two motions for summary judgment and a motion to decertify the class.[14] All of these motions were fully briefed. Trial was scheduled to begin on November 19, 2021.[15]

On October 22, 2021, the plaintiffs moved for preliminary approval of the settlement.[16] The court held a hearing on February 3, 2022. The parties consented to magistrate-judge jurisdiction.[17]

---

[10] Von Rock Decl. – ECF No. 119 at 14 (¶ 44).

[11] *Id.* at 5–9 (¶¶ 13–27).

[12] *Id.* at 4 (¶ 9).

[13] *Id.* (¶ 10).

[14] Mots. – ECF Nos. 95, 97, 98.

[15] Order – ECF No. 90.

[16] Mot. – ECF No. 115.

[17] Stipulation – ECF No. 121.

**2. The Proposed Settlement**

**2.1    Settlement Class**

The "Class" is defined as in the order granting class certification: "All non-exempt employees, excluding pharmacists, pharmacy interns, and asset protection agents, working in any Rite Aid store in California at any time from March 19, 2015 through the date of the preliminary approval of the settlement by the Court."[18]

"According to representations by Rite Aid, there are approximately 25,000" Class Members. Approximately 4,500 of the Class Members were hired after the defendants ended their mandatory dress policy in March 2020.[19] "The precise Class Member data will be provided to the Settlement Administrator."[20]

The Class excludes the twenty-two individuals who requested exclusion, and Class Members will not be provided with a second opportunity to request exclusion.[21]

**2.2    Settlement Amount and Allocation**

The Gross Settlement Amount is $12,000,000, and the Net Settlement Amount — the fund recovered by the Class — is approximately $7,448,400 after the following deductions: (1) representative payment awards to the named plaintiffs of $30,000 ($10,000 to each); (2) attorney's fees of up to $3,999,600 (approximately one third of the gross amount); (3) costs of up to $305,000; (4) administration costs estimated at $67,000; and (5) PAGA penalties of $150,000 to be paid to the California Labor and Workforce Development Agency.[22] $50,000 of the Net Settlement Amount is for PAGA penalties.[23] Of the Net Settlement Amount, 10% will be allocated

---

[18] Settlement Agreement, Ex. 1 to Von Rock Decl. – ECF No. 119 at 26 (¶ 8(b)).

[19] Von Rock Decl. – ECF No. 119 at 2 (¶ 4).

[20] Mot. – ECF No. 115 at 8 n.1.

[21] Settlement Agreement, Ex. 1 to Von Rock Decl. – ECF No. 119 at 26–27 (¶ 8(b)(i)), 44 (¶ 30).

[22] *Id.* at 29–31 (¶ 10), 33–35 (¶¶ 14–16); Mot. – ECF No. 115 at 12–13.

[23] Settlement Agreement, Ex. 1 to Von Rock Decl. – ECF No. 119 at 31 (¶ 10(c)).

as wages and the remaining 90% will be allocated as "non-wages for the settlement of expense reimbursements, interest claims, statutory and civil penalty claims, and for attorneys' fees."[24]

The individual settlement payment amounts will be allocated as follows. Class Members hired after March 2020 will receive a "nominal payment" of $25. For Class Members hired before March 2020, payments will be based on each member's number of workweeks during the Class Period, "such that [they] will receive a dollar amount calculated by multiplying each of their respective percentages by the Net Settlement Amount." "[F]or those Class Members hired prior to March 2020 whose employment has terminated with Defendants, an additional four workweeks will be added to their total workweeks."[25] In addition, the PAGA Aggrieved Employees — those Class Members who worked "in any Rite Aid store in California at any time from March 19, 2018 through the date of the preliminary approval of the settlement by the Court" — will share on a pro rata basis the $50,000 net amount for PAGA penalties.[26]

Claim forms are not required.[27] The Settlement Administrator will issue settlement payments as either checks or digital payments. Class members who make no choice will receive a check. The checks and digital payments will be good for 180 days.[28]

The Settlement is non-reversionary.[29] Uncashed checks and unactivated digital payments will be distributed as follows. If after 180 days their total amount is less than $200,000, the amount will be distributed to the *cy pres* beneficiary Legal Aid at Work. If the amount is $200,000 or more, a second distribution will be made to those class members who did cash their checks or activate their digital payments. The second distribution will be based on workweek totals, as

---

[24] *Id.* at 32 (¶ 13).

[25] *Id.* at 31–32 (¶ 11).

[26] *Id.* at 28 (¶ 8(e)), 32 (¶ 11).

[27] Von Rock Decl. – ECF No. 119 at 10 (¶ 31).

[28] Settlement Agreement, Ex. 1 to Von Rock Decl. – ECF No. 119 at 42 (¶ 29); Proposed Order – ECF No. 115-2 at 3–4 (¶ 5).

[29] Von Rock Decl. – ECF No. 119 at 4 (¶ 11).

described above. Any uncashed checks or unactivated digital payments from the second distribution will be distributed to the *cy pres* beneficiary.[30]

### 2.3   Release

The release provisions of the settlement agreement are, in short, (1) a release of the class and PAGA claims for all claims under federal or state law that were pleaded or could have been pleaded under the facts alleged in the complaint, and (2) a general release by the named plaintiffs.[31]

### 2.4   Administration

Atticus Administration, selected after a competitive bidding process, is the proposed Settlement Administrator.[32] Within thirty calendar days from the issuance of this order, the defendants will provide class data to Atticus.[33] Within ten business days from receipt of the class data, Atticus will send the Postcard Notice "by first class mail to each Class Member's current or last known address on file with [the defendants], following an updated review of the National Change of Address Registry by [Atticus], as well as by email (where available)."[34]

Atticus will also set up a settlement website and toll-free number, handle the payments to Class Members, and provide status reports to the parties.[35] In addition, other administration procedures — including notice, procedures for exclusion, and procedures for objections — are set forth in the Settlement Agreement.[36]

---

[30] Settlement Agreement, Ex. 1 to Von Rock Decl. – ECF No. 119 at 42–43 (¶ 29).

[31] *Id*. at 47–49 (¶¶ 33–35).

[32] Von Rock Decl. – ECF No. 119 at 12 (¶ 39); Settlement Agreement, Ex. 1 to *id*. – ECF No. 119 at 37 (¶ 22).

[33] Settlement Agreement, Ex. 1 to *id*. – ECF No. 119 at 37 (¶ 23); Proposed Order – ECF No. 115-2 at 3 (¶ 3).

[34] Settlement Agreement, Ex. 1 to Von Rock Decl. – ECF No. 119 at 41 (¶ 28); Proposed Order – ECF No. 115-2 at 3 (¶ 4).

[35] Settlement Agreement, Ex. 1 to Von Rock Decl. – ECF No. 119 at 37–39 (¶ 24).

[36] *Id*. at 40–46 (¶¶ 25–32).

# ANALYSIS

## 1. Jurisdiction

The court has diversity jurisdiction under the Class Action Fairness Act. *See* 28 U.S.C. 1332(d)(2).

## 2. Certification of Settlement Class

The court previously certified the class under Rule 23, as described above. Excluded from the class are the twenty-two individuals who submitted the requests for exclusion.

## 3. Preliminary Approval of Settlement

Settlement is a strongly favored method for resolving disputes, particularly "where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see, e.g.*, *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). A court may approve a proposed class-action settlement only "after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The court need not ask whether the proposed settlement is ideal or the best possible; it determines only whether the settlement is fair, free of collusion, and consistent with the named plaintiffs' fiduciary obligations to the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

In *Hanlon*, the Ninth Circuit identified factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class-action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. *Id.* at 1026.

Rule 23 also sets forth factors relevant to assessing a settlement proposal. The court is directed to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;

      (B) the proposal was negotiated at arm's length;

      (C) the relief provided for the class is adequate, taking into account:

          (i) the costs, risks, and delay of trial and appeal;

          (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

          (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

          (iv) any agreement required to be identified under Rule 23(e)(3); and

      (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). These factors "are substantially similar to those articulated" in *Hanlon*. *Student A v. Berkeley Unified Sch. Dist.*, No. 17-CV-02510-JST, 2021 WL 6332353, at *2 n.2 (N.D. Cal. July 8, 2021). They do not displace the factors used in each circuit; instead, they are meant to "focus the court . . . on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.* (quoting Fed. R. Civ. P. 23 Advisory Committee Notes (2018 Amendments)).

"Where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable." *Garner v. State Farm Mut. Auto Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *13 (N.D. Cal. Apr. 22, 2010); *see, e.g.*, *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019) ("[W]e put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.") (cleaned up); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair.").

The court has evaluated the Settlement Agreement for overall fairness under the *Hanlon* factors and concludes preliminarily that it is free of collusion and approval is appropriate.

First, the settlement provides good value (when contrasted to the maximum damages estimated by the plaintiffs, which assumes complete success on the merits).[37] As discussed above, counsel reached the settlement only after obtaining discovery sufficient to allow a robust damages

---

[37] Von Rock Decl. – ECF No. 119 at 9 (¶ 27).

ORDER – No. 19-cv-01434-LB          8

assessment. The individual settlement amounts average $365, which is higher than the $286 calculated by plaintiffs' expert survey to be the average amount spent by Class Members on uniforms.[38] The settlement compares favorably with other settlements in uniform-reimbursement cases.[39] A settlement now also results in money paid now, while litigation results in delay and expense.

Second, the value of the settlement is significant compared to the litigation risks and uncertainties. The maximum recovery assumes complete success for the plaintiffs, which was not a guaranteed outcome, particularly given the defendants' pending motion for summary judgment (arguing that the defendants' mandatory dress was not a uniform) and their pending motion to decertify the class. When viewed against the risk of no recovery, this settlement is fair. *See Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 331 (N.D. Cal. 2014) (litigation risks, including maintaining class-action status, favor settlement approval). Moreover, settlement allows payment to the Class Members now, before costly and protracted litigation.

Third, a class action allows class members — who otherwise would not pursue their claims individually because costs would exceed recoveries — to obtain relief.

Finally, the settlement is the product of serious, non-collusive, arm's-length negotiations and was reached after mediation with an experienced mediator with subject-matter expertise.

The recoveries here are adequate to justify preliminary approval. Given other comparable settlements and the litigation risks identified above, the settlement amount at least preliminarily appears fair.

The court has also considered the Rule 23(e)(2) factors and finds that they support preliminary approval of the settlement as fair, reasonable, and adequate.

The PAGA allocation is within the range of reasonable settlements. *See, e.g., Viceral v. Mistras Grp., Inc.*, No. 15-cv-02198-EMC, 2016 WL 5907869, at *8–9 (N.D. Cal. Oct. 11, 2016).

---

[38] *Id.* (¶ 28); Mot. – ECF No. 115 at 9, 19–20.
[39] Chart, Ex. 3 to Von Rock Decl. – ECF No. 119 at 79.

The court will address the issue of attorney's fees at the final fairness hearing. *See Hanlon*, 150 F.3d at 1029 (twenty-five percent is a benchmark in common fund cases); *cf. Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002) (twenty-five percent benchmark, though a starting point for analysis, may be inappropriate in some cases; fees must be supported by findings).

**4. Appointment of Class Representative, Class Counsel, and Settlement Administrator**

The court previously appointed Kristal Nucci, Kelly Shaw, and Ana Goswick as class representatives.[40]

The court appoints Atticus as the Settlement Administrator. It will administer the settlement in accordance with the requirements set forth in the Settlement Agreement.

The court also appoints Randall B. Aiman-Smith, Reed W.L. Marcy, Hallie Von Rock, and Brent A. Robinson (all of Aiman-Smith & Marcy PC) as Class Counsel. *See* Fed. R. Civ. P. 23(a) & (g)(1). The court finds that they have sufficient qualifications, experience, and expertise in prosecuting class actions.[41]

**5. Class Notice**

The court approves the class notice and plan, including both the Postcard and Long-form Notices. The court finds that the class notice provides the best notice practicable, satisfies the notice requirements of Rule 23, adequately advises class members of their rights under the settlement agreement, and meets the requirements of due process. *Cf. In re Hyundai and Kia*, 926 F.3d at 567 ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.") (internal quotation marks omitted).

---

[40] Order – ECF No. 69.

[41] *See* Von Rock Decl. – ECF No. 119 at 16 (¶ 51); Curriculum Vitae, Ex. 2 to *id.* – ECF No. 119 at 68–77.

The forms of notice fairly, plainly, accurately, and reasonably provide class members with all required information, including (among other things): (1) a summary of the lawsuit and claims asserted; (2) a clear definition of the class; (3) a description of the material terms of the settlement, including the estimated payment; (4) a disclosure of the release of the claims; (5) the date, time, and location of the final fairness hearing; and (6) the identity of class counsel and the provisions for attorney's fees, costs, and class-representative service awards.[42]

Further, the court declines to "refuse to approve [the] settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so." Fed. R. Civ. P. 23(e)(4).

**6. Service Awards**

District courts must evaluate proposed service awards individually, using relevant factors that include "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (citation omitted). The Ninth Circuit has "noted that in some cases incentive awards may be proper but [has] cautioned that awarding them should not become routine practice." *Radcliffe v. Experian Info. Sols.*, 715 F.3d 1157, 1163 (9th Cir. 2013) (discussing *Staton*, 327 F.3d at 975–78). The Ninth Circuit also has emphasized that district courts "must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Id.* at 1164.

The court defers consideration of the awards until the final approval hearing.

---

[42] Von Rock Decl. – ECF No. 119 at 18–19 (¶¶ 58–59); Postcard and Long-form Notices, Exs. A–B to Settlement Agreement – ECF No. 119 at 59–67.

### 7. *Cy Pres* Award

The court defers consideration of the award until the final approval hearing.

### 8. Compliance with Class Action Fairness Act

The motion and the Settlement Agreement do not address compliance with the Class Action Fairness Act. The plaintiffs must provide notice of the settlement — which is deemed filed as of the date of this order — and other information showing compliance with the Act's notice requirements (28 U.S.C. § 1715) to the appropriate federal and state officials. Any final settlement approval will be more than ninety days after service as required by the Act.

### 9. Procedures for Final Approval Hearing

#### 9.1   Deadlines

The court approves the parties' proposed deadlines, except that it sets the final approval hearing on May 26, 2022 at 9:30 a.m.[43]

#### 9.2   Final Approval Hearing

At the hearing, the court will consider whether to (1) finally approve the settlement agreement and the releases in it, (2) finally approve the service award, (3) finally approve the *cy pres* award, and (4) award attorney's fees and costs to class counsel. The court may, for good cause, extend any of the deadlines or continue the Final Approval Hearing without further notice to the class members. If the Final Approval Hearing is continued, "the updated hearing date shall be posted on the Settlement Website."[44]

---

[43] Proposed Order – ECF No. 125 at 4–6.
[44] Proposed Order – ECF No. 115-2 at 5 (¶ 12).

### 9.3    Objections to or Exclusions from the Settlement

The objection procedures will be those in the Settlement Agreement.[45] No second opportunity for requests for exclusion will be provided.

### 9.4    Defined Terms

All defined terms in this Order have the same meaning as in the Settlement Agreement.

### 9.5    Use of Settlement Agreement and Ancillary Items

Neither the Settlement Agreement (whether or not it is finally approved), nor any ancillary documents, actions, statements, or filings in furtherance of settlement (including matters associated with the mediation) will be admissible or offered into evidence in this action or any related or similar action for the purposes of establishing, supporting, or defending against any claims that were raised or could have been raised in this action or are similar to such claims.

"If [the] Settlement Agreement terminates for any reason, this Action will revert to its previous status in all respects as it existed immediately before the Parties executed the Settlement Agreement. This Order will not waive or otherwise impact the Parties' rights or arguments."[46]

### CONCLUSION

The court (1) preliminarily approves the settlement and authorizes notices as set forth in this order, (2) approves the notice plan, (3) provisionally appoints the class representative and class counsel, (4) appoints Atticus as the claims administrator, (5) orders the procedures in this order, and (6) orders the parties and the claims administrator to carry out their obligations pursuant to the Settlement Agreement. The court will separately file the signed copy of the proposed order at ECF No. 125, which reflects the schedule in the case, including the May 26, 2022 hearing.

---

[45] Settlement Agreement, Ex. 1 to Von Rock Decl. – ECF No. 119 at 44–46 (¶ 31); Proposed Order – ECF No. 115-2 at 4 (¶ 5).

[46] Proposed Order – ECF No. 115-2 at 4 (¶ 8).

This disposes of ECF No. 115.

**IT IS SO ORDERED.**

Dated: February 3, 2022

_____
LAUREL BEELER
United States Magistrate Judge