1   Randall B. Aiman-Smith #124599
    Reed W. L. Marcy #191531
2   Hallie Von Rock #233152
    Brent A. Robinson #289373
3   **AIMAN-SMITH & MARCY, PC**
    7677 Oakport St. Suite 1150
4   Oakland, CA 94621
    T 510.817.2711
5   F 510.562.6830
    ras@asmlawyers.com
6   rwlm@asmlawyers.com
    hvr@asmlawyers.com
7   bar@asmlawyers.com

8   Attorneys for Plaintiffs and the Plaintiff
    Class
9

10

11                UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13                  SAN FRANCISCO DIVISION

14

15  KRISTAL NUCCI and KELLY SHAW,          Case No.: 19-cv-01434-LB
    individually and on behalf of all others
16  similarly situated and the California Labor &   **NOTICE OF MOTION AND MOTION**
    Workforce Development Agency, and ANA   **FOR FINAL APPROVAL OF CLASS**
17  GOSWICK, individually and on behalf of all   **ACTION AND PAGA SETTLEMENT**
    others similarly situated,
18                                          **MEMORANDUM OF POINTS AND**
                Plaintiffs,                 **AUTHORITIES IN SUPPORT**
19
                                            Date:  May 26, 2022
20        v.                                Time: 9:30 a.m.

21  RITE AID CORPORATION, THRIFTY
    PAYLESS, INC. and DOES 1-10, inclusive,
22                                          Hon. Laurel Beeler
                Defendants.                 Courtroom B, 15th Floor
23

24

25

26

27

28  **NOTICE OF MOTION AND MOTION; MEMO OF Ps &As IN SUPPORT OF MOTION FOR FINAL**
    **APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**
    *Nucci, et al. v. Rite Aid Corporation*                    **Case No. 19-cv-01434-LB**

1  TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF

2  RECORD:

3       NOTICE IS HEREBY GIVEN that on May 26, 2022, at 9:30 a.m., in Courtroom B,

4  15th Floor, located at 450 Golden Gate Avenue, San Francisco, CA 94102, before Hon.

5  Laurel Beeler of the United States District Court, Northern District of California, Plaintiffs

6  are Kristal Nucci, Kelly Shaw, and Ana Goswick, on behalf of themselves and the Class

7  Members ("Plaintiffs"), move the Court for final approval of the Class Action and Private

8  Attorneys General Act Settlement Agreement and Release (the "Settlement Agreement" or

9  the "Settlement," attached as **Exhibit 1** to the Declaration of Hallie Von Rock in Support of

10 Motion for Preliminary Approval of Class Action and PAGA Settlement (ECF 119)), and

11 entry of judgment in accordance with the Settlement.

12      Plaintiffs make this motion on the grounds that good cause exists and the Settlement,

13 which was reached after arm's length negotiations by counsel for Plaintiffs and the Class and

14 counsel for Defendants Rite Aid Corporation and Thrifty Payless, Inc. ("TPI"), is fair and

15 reasonable, has drawn an overwhelmingly favorable response from the Class (indeed, not a

16 single objection to the Settlement was made), and should be given approval by the Court for

17 all the reasons set forth in the memorandum in support of the motion.

18      The Motion is based on this notice, the following Memorandum of Points and

19 Authorities, the Declarations of Hallie Von Rock, Bryn Bridley of Atticus Administration,

20 Kristal Nucci, Kelly Shaw, and Ana Goswick, and all other records, pleadings, and papers on

21 file in the Action and such other evidence or argument as may be presented to the Court at

22 the hearing on this Motion. Plaintiffs also submit a Proposed Order Granting Final Approval

23 of Class Action Settlement with their moving papers.

24 Date: April 20, 2022                    Respectfully submitted,

25                                          */s/ Hallie Von Rock*

26                                          _____

27                                          Hallie Von Rock
                                            AIMAN-SMITH & MARCY PC

28 **NOTICE OF MOTION AND MOTION; MEMO OF Ps &As IN SUPPORT OF MOTION FOR FINAL
APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**
*Nucci, et al. v. Rite Aid Corporation*                    **Case No. 19-cv-01434-LB**
Page i

1

**TABLE OF CONTENTS**

2   I.    INTRODUCTION ........................................................................................ 1

3   II.   BACKGROUND ........................................................................................ 2

4         A.    Summary of Litigation. ................................................................. 2

5         B.    Settlement Negotiations. .............................................................. 5

6         C.    Preliminary Approval of the Settlement. ...................................... 5

7
    III.  TERMS OF THE SETTLEMENT ........................................................... 6
8
          A.    Settlement Class. .......................................................................... 6
9
          B.    Notice Process. ............................................................................. 6
10
          C.    The Gross Settlement Payment. .................................................... 8
11
          D.    Payment of Settlement Shares. ..................................................... 9
12
          E.    Release by Class Members and Plaintiffs. .................................. 10
13
    IV.   THE SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL. ................ 11
14
          A.    The Settlement Is Fair, Reasonable, and Adequate and Therefore
15              Satisfies the Final Approval Standards Under Rule 23. ................... 11
16
                1.    The Strength of Plaintiff's Case; the Risk, Expense, Complexity,
17                    and Likely Duration of Further Litigation; and the Risk of
18                    Maintaining Class-Action Status Throughout Trial. ............................ 13
19
                2.    The Amount Offered in Settlement Provides Substantial, Certain
20                    Benefits and Avoids the Risk, Cost, Delay and Burden of Further
21                    Litigation. ................................................................................... 15
22
                3.    The Extent of Discovery Completed and the Stage of the
23                    Proceedings. ............................................................................... 17
24
                4.    The Experience and Views of Counsel. .................................... 18
25
                5.    The Presence of a Government Participant. ............................... 18
26
                6.    Class Members' Response to the Settlement Is Overwhelmingly
27                    Positive. ...................................................................................... 19

28

NOTICE OF MOTION AND MOTION; MEMO OF Ps &As IN SUPPORT OF MOTION FOR FINAL
APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT
*Nucci, et al. v. Rite Aid Corporation*          **Case No. 19-cv-01434-LB**

B.    The Settlement Is Presumed Fair Because the Parties Engaged in Arm's Length Negotiations. ........................................................................... 20

C.    The Distribution of the Settlement Proceeds Is Equitable and Tailored to the Class Members' Respective Claims. ............................................. 20

D.    The Best Practicable Notice of Settlement Was Provided to the Class Members in Accordance with the Process Approved by the Court. ................. 21

**V.    THE SETTLEMENT ADMINISTRATION COSTS ARE FAIR AND REASONABLE.** ................................................................................ **22**

**VI. CONCLUSION** ...................................................................... **23**

1

**TABLE OF AUTHORITIES**

2

3

**Cases**

4

*Boyd v. Bechtel Corp* 485 F.Supp. 610 (N.D. Cal. 1979)..................................................12, 17

5

*Carrington v. Starbucks Corp.,* 30 Cal.App.5th 504 (2018) ...................................................14

6

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).............................................15

7

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992) ...........................2, 12

8

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980) ...............................12, 18

9

*Franklin v. Kaypro Corp.,* 884 F.2d 1222 (9th Cir. 1989) ...................................................11

10

*Garner v. State Farm Mut. Auto Ins. Co.*, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010).....20

11

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ...........................................16

12

*Greko v. Diesel U.S.A., Inc*. No. 10-cv-02576 NC, 2013 WL 1789602

13

   (N.D. Cal. April 26, 2013) .................................................................................................14

14

*Gutilla v. Aerotek, Inc.*, No. 1:15-cv-00191-DAD-BAM, 2017 WL 2729864

15

   (E.D. Cal. Mar. 22, 2017) .................................................................................................19

16

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .......................................11, 13, 18

17

*Holmes v. Continental Can Co.,* 706 F.2d 1144 (11th Cir. 1983) .........................................21

18

*In re AT & T Mobility Wireless Data Services Sales Tax Litigation,*

19

   789 F.Supp.2d 935 (N.D. Ill. 2011) .................................................................................21

20

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000)............................................17

21

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, (9th Cir. 1995)....................................................18

22

*Lewis v. Starbucks Corp.* No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690

23

   (E.D. Cal. Sept. 11, 2008)..................................................................................................17

24

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998)........................................15

25

*M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc*., 671 F. Supp. 819

26

   (D. Mass 1987).................................................................................................................12

27

28

*Magadia v. Wal-Mart Associates, Inc.,* 384.F.Supp.3d 1058 (May 31, 2019) ...................... 14

*Monterrubio v. Best Buy Stores, L.P.,* 291 F.R.D. 443 (E.D. Cal. 2013) .............................. 17

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)..................................... 22

*Nat'l Rural Telecomm. Coop. v. DirecTV*, Inc., 221 F.R.D. 523 (C.D. Cal 2004)................ 20

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982 .......... 11, 12, 15

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ...................................................... 12

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ..................................... 18, 20

*Staton v. Boeing Co.,* 327 F.3d 938, 959 (9th Cir. 2003) .................................... 2, 11

*Thieriot v. Celtic Ins. Co.*, No. C 10-04462 LB, 2011 WL 1522385 (N.D. Cal. April 21,

   2011).......................................................................................................... 14

*Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314 (N.D. Cal. 2013) ..................................... 20

*Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370 (9th Cir. 1993)................................... 12

*Villafan v. Broadspectrum Downstream Services, Inc.*, No. 18-cv-06741-LB, ECF 150

   (N.D. Cal. April 8, 2021) ........................................................................... 13

**Statutes**

28 U.S.C. § 1715(b) ..................................................................................... 19

Business and Professions Code § 17200........................................................... 4

Labor Code § 1194....................................................................................... 4

Labor Code § 1194.2.................................................................................... 4

Labor Code § 1197....................................................................................... 4

Labor Code § 201......................................................................................... 4

Labor Code § 202......................................................................................... 4

Labor Code § 203......................................................................................... 4

Labor Code § 2698....................................................................................... 4

Labor Code § 2699(i).................................................................................... 8

Labor Code § 2802....................................................................................... 4

**Rules**

Fed. R. Civ. P. 23(e)(2) ................................................................................................... 1, 12, 13

**Regulations**

IWC Wage Order 7, § 9 (A) ................................................................................................... 4

## I.      INTRODUCTION

Plaintiffs Kristal Nucci, Kelly Shaw, and Ana Goswick, on behalf of themselves and the Class Members ("Plaintiffs"), having reached a class-wide settlement with Defendants Rite Aid Corporation and Thrifty Payless, Inc. (collectively "Defendants" and/or "TPI") that was preliminarily approved by the Court (ECF 128), now seek final approval of the settlement.[1] The settlement of this wage and hour class and representative action meets the criteria for final approval. The settlement fairly resolves Plaintiffs' claims that TPI violated California wage and hour laws by requiring Class Members to wear and purchase uniforms and that Defendants failed to compensate Class Members for uniforms, which resulted in violations of various California Labor Code sections (including, *inter alia*, unreimbursed business expenses, unpaid minimum wages, wage statement violations, failure to pay wages upon separation, and PAGA).

After two and a half years of intense litigation, and on the eve of trial, and following class certification, formal discovery, expert discovery, pending cross-motions for summary judgment and a motion to decertify the class that were fully briefed and on the verge of being decided, and extensive arm's-length negotiations with four mediations, the Parties have reached a global settlement of the Action, memorialized in the Settlement.

The Settlement, in the amount of $12,000,000, readily satisfies the Rule 23 standard of being "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Specifically:

- Class Counsel (who are highly experienced handling complex wage and hour class and collective action) conducted sufficient discovery to enable them to adequately evaluate the claims and defenses in the Action before agreeing to the Settlement. *See,* Declaration of Hallie Von Rock in Support of Final Approval and Motion for Award of Attorney's Fees, Costs, and Incentive Award ("Von Rock Dec.") ¶¶ 13-19.

---

[1] The Settlement is attached as **Exhibit 1** to the Declaration of Hallie Von Rock in Support of Motion for Preliminary Approval of Class Action and PAGA Settlement (ECF 119).

- The Settlement is consistent with the strengths and weaknesses of Plaintiffs' claims given the risk, expense, complexity, and likely duration of further litigation. *See, Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).

- The Class responded overwhelmingly favorably to the Settlement. The Settlement Administrator sent out close to 30,000 notices of Settlement and received **no** objections. *See*, Declaration of Bryn Bridely, Atticus Administration ("Atticus Dec.") ¶ 19.

Given the strong recovery and that the Settlement will provide significant monetary payments to Class Members, the Court should approve the Settlement. By any measure, the Settlement provides a great benefit to the Class and an efficient outcome in the face of expanding litigation. It is fair, reasonable, and adequate in all respects. Accordingly, as set forth herein, the Settlement should be finally approved.[2]

## II.     BACKGROUND

### A.     Summary of Litigation.

Plaintiffs and Class Members are those individuals who, according to Thrifty Payless, Inc.'s ("TPI") personnel and payroll records, worked for TPI as non-exempt associates, excluding pharmacists, pharmacy interns, and asset protection agents, in a Rite Aid retail store in California at any time during the period of March 19, 2015 through February 3, 2022 (the date of preliminary approval). *See,* Von Rock Dec., ¶ 2.

As set forth in the Declaration of Hallie Von Rock in Support of Preliminary Approval, Rite Aid estimated that there were 25,000 Class Members. *See,* ECF 119 at *2, ¶ 4.  At the time the initial Class List was provided in September 2020, Rite Aid had identified 19,940 Class Members. *See,* Von Rock Dec., ¶ 3. Rite Aid represented that there were an additional 4,500 Class Members hired after the Team Colors policy ended on March 22,

---

[2] In a separate motion filed concurrently with this motion, Plaintiffs seek approval of an award of attorneys' fees, costs, and incentive awards for the Named Plaintiffs.

1   2020; these Class Members would not be subject to the Team Colors policy at issue in this

2   Action, but they are being included in this Settlement in consideration for a release of their

3   claims. *Id*. The final Class List was compiled by a data consultant for Rite Aid, who

4   calculated a slight increase in the class size compared to the data pulled internally for

5   mediation purposes. *Id*.  The final Class List is comprised of 29,451 Class Members, which

6   includes 23,051 Class Members hired prior to March 22, 2020, and 5,950 Class Members

7   hired after March 22, 2020. *Id*.  Because Plaintiffs' calculations for the purposes of

8   mediation were based on an estimate of 25,000 Class Members, the increased total number

9   of class members, which is due, in part, to post-March 2020 Class Members, does not

10   materially affect the settlement in any way. *Id*.  On behalf of both parties, it was determined

11   that the increase from the estimated class size of 25,000 to the final class size of 29,451 does

12   not alter the settlement position of either party; that the final class size is within the

13   parameters provided to the claims administrator and the administration costs of $75,000 set

14   forth in the Notice remains the same; and the updated average settlement payment of $308

15   still constitutes full reimbursement of all uniform purchases (which averaged $286) plus a

16   compromised amount for potential penalties. *Id*.

17        Plaintiffs allege that Class Members experienced wage and hour violations in their

18   work for Defendants. *See,* Von Rock Dec., ¶ 4. In particular, Plaintiffs contend that Rite Aid

19   required Class Members to dress in "Team Colors," consisting of navy-blue tops and khaki

20   bottoms with specific style requirements for both garments.  *Id.* The gravamen of Plaintiffs'

21   case is that Team Colors are a uniform under the Wage Order and, accordingly, Labor Code

22   section 2802 requires Rite Aid to reimburse its employees for purchases of Team Colors

23   clothing.  Plaintiffs also asserted additional claims based on wage and hour violations,

24   including for minimum wages, wage statement penalties, waiting time penalties, and PAGA

25   penalties, all related to the Class Members' uniform clothing purchases. *Id.*

26

27

28

On March 19, 2019, Plaintiff Kristal Nucci filed a class action Complaint in this Court for Failure to Indemnify Business Expenses (Labor Code § 2802); Failure to Reimburse for Required Uniforms (IWC Wage Order 7, § 9 (A)); Unfair Business Practices (Business and Professions Code § 17200, *et seq*.); and Injunction (Business and Professions Code § 17200, *et seq*.). *See,* ECF 1.

On May 23, 2019, a First Amended Complaint was filed that added Plaintiff Ana Goswick and added cause of actions for Failure to Pay Minimum Wage (Labor Code §§ 1194, 1194.2, 1197, IWC Wage Order No. 7, § 4(A)), Failure to Furnish Accurate Wage Statements (Labor Code § 226), Waiting Time Penalties (Labor Code §§ 201, 202, and 203), and Penalties under the Private Attorneys General Act ("PAGA") (Labor Code § 2698, *et seq*.). *See,* ECF 13.

On October 2, 2019, a Second Amended Complaint was filed that added Plaintiff Kelly Shaw. *See,* ECF 30.

On February 6, 2020, Plaintiffs moved for Class Certification.  The Court granted Plaintiffs' motion for Class Certification on June 16, 2020.  *See,* ECF 69.

On December 3, 2020, the Court granted Plaintiffs' Motion for Provision of Notice of Pendency of Class Action. *See,* ECF 86.

On December 23, 2020, the Notice of Class Action was sent.  The exclusion deadline for the Class Action was January 27, 2021; twenty-two (22) persons excluded themselves from the Class Action. *See,* Von Rock Dec., ¶ 10.

On July 20, 2021, Plaintiffs filed a Motion for Partial Summary Judgment, Defendants filed a Motion for Summary Judgment, and Defendants filed a Motion to Decertify Class. *See,* ECF 95, 97, 98. These motions were fully briefed as of August 10, 2021; the respective hearing dates were vacated by the Court. *See,* Von Rock Dec., ¶ 11.

Trial was set for November 19, 2021, with a final pre-trial conference scheduled for October 28, 2021. *See,* ECF 90.

**B.      Settlement Negotiations.**

The Parties participated in four mediations. *See,* Von Rock Dec., ¶ 20. Prior to class certification, the parties mediated twice with Michael Loeb, Esq., on December 13, 2019, and on March 20, 2020. *Id.* Following class certification, the parties mediated with Hon. Daniel Weinstein (Ret.) and Lizbeth Hasse, Esq., on November 20, 2020. Additional negotiations continued after the mediation, but the parties did not progress toward a settlement.  *Id.*

On September 30, 2021, the parties participated in a full-day mediation with mediator Jeff Ross, Esq.  *Id.*, ¶ 21. With the assistance of Mr. Ross, who has vast experience mediating wage and hour disputes, counsel engaged in serious and arm's-length negotiations. *Id.* Ultimately, the next day, the Parties accepted a mediator's proposal, which culminated in an agreement in principle to settle for $12,000,000, on October 1, 2021.  *Id.*

After the agreement to settle, counsel for the Parties extensively met and conferred over the detailed terms of the settlement for purposes of executing a long-form settlement agreement and worked to finalize the Settlement Agreement and corresponding notice documents, subject to the Court's approval. *Id.*, ¶ 22. Several drafts and revisions were circulated in order to arrive at the final settlement. *Id.* The Settlement Agreement was fully executed on October 21, 2021. *Id.*

**C.      Preliminary Approval of the Settlement.**

On February 3, 2022, the Court held the hearing on Plaintiffs' Motion for Preliminary Approval of Class Action and PAGA Representative Action Settlement and filed its Order Granting Motion for Preliminary of Approval of Class-Action Settlement. (ECF 128) In its Order, the Court found that: "The court has evaluated the Settlement Agreement for overall fairness under the *Hanlon* factors and concludes preliminarily that it is free of collusion and approval is appropriate. … First, the settlement provides good value (when contrasted to the maximum damages estimated by the plaintiffs, which assumes complete success on the merits) … Second, the value of the settlement is significant compared to the litigation risks

and uncertainties … Third, a class action allows members – who otherwise would not pursue their claims individually because costs would exceed recoveries – to obtain relief … Finally, the settlement is the product of serious, non-collusive, arm's-length negotiations and was reached after mediation with an experienced mediator with subject-matter expertise. … The court has also considered the Rule 23(e)(2) factors and finds that they support preliminary approval of the settlement as fair, reasonable, and adequate. … [And] [t]he PAGA allocation is within the range of reasonable settlements." (ECF 128)

Review of the factors for final approval support the Court's preliminary findings that the Settlement was entered into good faith and is in the best interests of the Class Members.

## III.    TERMS OF THE SETTLEMENT

The following is a summary of the material elements of the Settlement.

### A.    Settlement Class.

The Class is defined in the order granting class certification:

> All non-exempt employees, excluding pharmacists, pharmacy interns, and asset protection agents, working in any Rite Aid store in California at any time from March 19, 2015 through February 3, 2022 [the date of the Court's order granting preliminary approval of the Settlement]. (ECF 128, ¶ 2.1.)

There are a total of 29,451 current and former employees in the Class, who did not exclude themselves from the Action. *See,* Atticus Dec., ¶¶ 3-4.

### B.    Notice Process.

The Court directed that the proposed Class Notice be sent to Class Members in the manner specified by the Settlement. (ECF 128, ¶ 5) The Parties implemented the Court's directions in this regard. *See,* Atticus Dec., ¶ 3-11.

After obtaining quotes for multiple administrators, the Parties selected, and the Court approved, Atticus Administration ("Atticus"), to administer the Settlement. *See,* Von Rock Dec. ¶ 24; (ECF 128, ¶ 2.4).  Bryn Bridley was the designated Senior Project Manager for the administration of the Settlement. *See,* Atticus Dec., ¶¶ 1-2.

On February 3, 2022, Plaintiffs' Counsel provided Atticus with the Order Granting Preliminary Approval, the approved Notice of Settlement, and the Settlement Agreement. *See,* Von Rock Dec. ¶ 25. The Parties agreed to the following settlement website domain: www.RiteAid-UniformSettlement.com, which included Plaintiffs' Motion for Preliminary Approval and supporting documents, the Settlement Agreement and Release, the Preliminary Approval Order, and Class Notice. *Id.* ¶ 26; Atticus Dec., ¶¶ 12-15. Attached as Exhibit B to the Atticus Declaration is a copy of the final Notice of Class Action and Private Attorneys General Act Settlement and Release. Also on the settlement website was a form for Class Members to choose a digital payment option. *See,* Atticus Dec., ¶ 13.

Counsel for TPI provided Atticus with the Class List, containing mailing addresses for 29,451 Class Members, which included their names, employee identification numbers, last known address, Social Security Number, and number of workweeks during the Class and PAGA periods (the "Class Members' Data"). *See,* Atticus Dec., ¶¶ 3-4. TPI also provided email addresses available, which accounted for approximately 22,477 email addresses. *Id.,* ¶ 10.

The mailing addresses contained in the Class Members' Data were processed and updated by Atticus using the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. *See,* Atticus Dec., ¶ 4. Prior to mailing Notice, Atticus updated the address information for Class Members on the Class List using data from the NCOA database. *Id.*

On March 18, 2022, Atticus mailed Class Notices to all Class Members via first-class mail. *Id.,* ¶ 5. Atticus also e-mailed Class Notices to those Class Members for whom TPI provided email addresses. *Id.,* ¶ 10. The Class Notices informed Class Members that they could submit an objection to the Settlement postmarked by April 18, 2022. *Id.,* Exs. A, B.

As of April 18, 2022, 2,010 Notices have been returned to Atticus as undeliverable without a forwarding address.  *See,* Atticus Dec., ¶ 8. Atticus performed advanced address

1  research for these undeliverables and re-mailed 1,662 Notices to the new addresses. Of the

2  1,662 remailed, 348 were returned as undeliverable without a forwarding address a second

3  time. Atticus also received 254 Notices returned with a forwarding address from the USPS that

4  were promptly remailed.  Of the 1,662 Notices remailed to a USPS forwarding address, 23 were

5  returned as undeliverable a second time without a forwarding address. *Id*. As of April 18, 2022,

6  of the 29,451 Notices mailed, 29,103 or 98.81% were deemed delivered and 348 or 1.19%

7  deemed undeliverable. *Id*., ¶ 9.

8        Atticus received no objections to the Settlement. *Id*., ¶ 19.

9        **C.    The Gross Settlement Payment.**

10        The Settlement creates a non-claims-made, non-reversionary common fund of

11  $12,000,000 (the "Gross Settlement Amount"). (Settlement, ¶ 10 a.)  After deducting (i) the

12  Class enhanced payment to the three named Plaintiffs in the amount of $10,000 each; (ii)

13  Class Counsel's Attorneys' Fees of $3,999,600; (iii) Class Counsel's Litigation Expenses

14  Reimbursement of $300,940 (which is less than the maximum $305,000 set forth in the

15  Settlement); (iv) the settlement administration expenses of $75,000; (v) the $150,000 PAGA

16  payment (75% of the total $200,000 PAGA allocation, pursuant to Labor Code section

17  2699(i)), to be paid to the California Labor and Workforce Development Agency

18  ("LWDA"), the remainder of the Settlement will be distributed as Settlement Shares to the

19  Class Members whose mailing address was confirmed by the Settlement Administrator (the

20  "Net Settlement Amount"). (Settlement, ¶ 10 b.)

21        The Net Settlement Amount is comprised of two parts: (1) the "Net PAGA Settlement

22  Amount" (i.e., $50,000, representing the Aggrieved Employees' 25% share of the total

23  PAGA allocation, pursuant to Labor Code section 2699(i)); and (2) the "Net Class

24  Settlement Amount" (*i.e.*, the entire Net Settlement Amount less the Net PAGA Settlement

25  Amount, which is approximately $7,444,460).

26  / / /

27

28

**D.      Payment of Settlement Shares.**

The Net Settlement Amount to be paid to Class Members is approximately $7,444,460. *See,* Von Rock Dec., ¶ 29. Class Members will receive a settlement award payment without the need to submit a claim form. *Id.*, ¶ 30.

The allocation is set forth as follows:  (1) Rite Aid implemented a new dress code policy in March 2020, which no longer required that Class Members dress in Rite Aid's specific "Team Colors" – accordingly, those Class Members hired after March 2020 were not necessarily required to purchase uniform clothing and, therefore, a nominal payment of $25.00 is being provided to Class Members hired after March 2020 for the release of any potential claims alleged in the Action; (2) for Class Members hired prior to March 2020, Class Members will receive a share of the Net Settlement Amount, after subtracting the payment to the Class Members hired after March 2020, based on their pro-rata percentage of workweeks determined by dividing the number of weeks worked (that is, weeks of employment, regardless of any leave or vacation) by the total number of Class Members, such that these Class Members will receive a dollar amount calculated by multiplying each of their respective percentages by the Net Settlement Amount; (3) for those Class Members hired prior to March 2020 whose employment has terminated with Defendants, an additional four workweeks will be added to their total workweeks, as described above in this paragraph, in consideration of their release of waiting time penalties; and (4) for Aggrieved Employees, the Net PAGA Settlement Amount of $50,000 will be shared on a pro rata basis among Aggrieved Employees. *See,* Von Rock Dec., ¶ 31; Settlement Agreement, ¶ 11.

Class Members were given an option to choose a digital payment or a hard copy check. *See,* Von Rock Dec., ¶ 32. If a Class Member does not affirmatively choose a digital payment, a hard copy check will be mailed. *Id*. Class members will have one hundred eighty (180) calendar days to activate their digital payment. As of April 18, 2022, 157 Class Members chose to receive a digital payment by E-Mastercard, 221 Class Members chose to receive a digital payment by PayPal, 649 Class Members chose to receive a digital payment

1  by Zelle, 429 Class Members chose to receive a digital payment by ACH, and 383 Class

2  Members chose to receive a digital payment by Venmo. *See,* Atticus Dec., ¶ 13; Von Rock

3  Dec. ¶ 32.

4         For the other 27,612 Class Members who had a Notice deemed deliverable, settlement

5  payments will be sent by check. *See,* Atticus Dec., ¶ 13. All settlement checks will be valid

6  for one hundred eighty (180) calendar days. At the end of the 180-day period, settlement

7  checks will be canceled and digital payments not activated will be combined with the

8  uncashed settlement checks. *See,* Von Rock Dec., ¶ 33.

9         If the total residual amount of uncashed settlement checks and non-activated digital

10  payments is less than Two Hundred Thousand Dollars and Zero Cents ($200,000.00), then

11  the amount will revert to *cy près*. *See,* Von Rock Dec., ¶ 34; Settlement Agreement, ¶ 29 d.i.

12  The Parties propose Legal Aid at Work as the *cy près* recipient. Legal Aid at Work provides

13  legal services assisting low-income, working families and promotes better understanding of

14  the conditions, policies, and institutions that affect the well-being of workers and their

15  families and communities. *Id.*; *see also,* https://legalaidatwork.org/

16         If the total residual amount is Two Hundred Thousand Dollars and Zero Cents

17  ($200,000.00) or greater, a second distribution will occur to those Class Members who

18  cashed their Settlement Award checks and activated their digital payments. *See,* Von Rock

19  Dec., ¶ 35; (Settlement, ¶ 29 d.ii.)

20         **E.      Release by Class Members and Plaintiffs.**

21         Upon the Final Approval by the Court, and subject to the exclusions described below,

22  each Class Member fully releases all claims that were raised in the litigation and all claims

23  that could have been brought based on the facts alleged in the complaint. *See,* Von Rock

24  Dec., ¶ 36; Settlement Agreement ¶¶ 33, 35. The released claims are co-extensive with the

25  certified claims, with the addition of a release of potential claims arising from the same facts

26  under the Fair Labor Standards Act. *Id.* Plaintiffs Nucci, Shaw, and Goswick also agree to a

27

28

1   general release from all known and unknown claims they may have against the Released

2   Parties. *Id.*; Settlement Agreement ¶ 34.

3   **IV.     THE SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL.**

4           Federal law strongly favors and encourages settlements, especially in class actions.

5   *See, Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("[T]here is an

6   overriding public interest in settling and quieting litigation. This is particularly true in class

7   action suits."). Moreover, when reviewing a motion for approval of a class settlement, the

8   Court should give due regard to "what is otherwise a private consensual agreement

9   negotiated between the parties," and must therefore limit the inquiry "to the extent necessary

10  to reach a reasoned judgment that the agreement is not the product of fraud or overreaching

11  by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is

12  fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*,

13  688 F.2d 615, 625 (9th Cir. 1982).

14          **A.      The Settlement Is Fair, Reasonable, and Adequate and Therefore Satisfies**

15                  **the Final Approval Standards Under Rule 23.**

16          "[V]oluntary conciliation and settlement are the preferred means of dispute

17  resolution," especially in complex class actions. *Officers for Justice*, 688 F.2d at 625. Class

18  action lawsuits readily lend themselves to compromise because of the difficulties of proof,

19  the uncertainties of the outcome, and the typical length of the litigation. *Class Plaintiffs*, 955

20  F.2d at 1276 (noting that "strong judicial policy […] favors settlements, particularly where

21  complex class action litigation is concerned"). On a motion for final approval of a class

22  action settlement under Federal Rule of Civil Procedure 23(e), a court's inquiry is whether

23  the settlement is "fair, adequate and reasonable," recognizing that "'it is the settlement taken

24  as a whole, rather than the individual component parts, that must be examined for overall

25  fairness.'" *Staton*, 327 F.3d at 952 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026

26  (9th Cir. 1998)).

27

28

1    When determining whether to grant final approval, the Court should balance "the

2  strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further

3  litigation; the risk of maintaining class action status throughout the trial; the amount offered

4  in settlement; the extent of discovery completed, and the stage of the proceedings; the

5  experience and views of counsel […] and the reaction of the class members to the proposed

6  settlement." *Officers for Justice*, 688 F.2d at 625; *see also, Class Plaintiffs*, 955 F.2d at 1291

7  (quoting *id.); accord, Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).

8  "The recommendations of plaintiffs' counsel should be given a presumption of

9  reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Ellis v.*

10 *Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd* 661 F.2d 939 (9th Cir.

11 1981) ("[T]he fact that experienced counsel involved in the case approved the settlement

12 after hard-fought negotiations is entitled to considerable weight.").

13    The Court should begin its analysis of this Settlement with a presumption that it is fair

14 and should be approved, due to (1) the fact that not a single Class Member objected to the

15 Settlement, (2) the meaningful discovery conducted, (3) Class Counsel's significant

16 experience in this kind of litigation, and (4) the arm's-length negotiations before an

17 experienced mediator. *See, Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999) (holding

18 that arm's-length negotiations conducted by competent counsel after appropriate discovery

19 are prima facie evidence that the settlement is fair and reasonable); *M. Berenson Co., Inc. v.*

20 *Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass 1987) ("Where, as here, a

21 proposed class settlement has been reached after meaningful discovery, after arm's length

22 negotiation, conducted by capable counsel, it is presumptively fair."). These factors are well

23 satisfied here.

24    A court may approve a proposed class-action settlement "only after a hearing and

25 only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "The court

26 need not ask whether the proposed settlement is ideal or the best possible; it determines only

27

28

1  whether the settlement is fair, free of collusion, and consistent with the named plaintiff's

2  fiduciary obligations to the class." *See, Villafan v. Broadspectrum Downstream Services,*

3  *Inc.*, No. 18-cv-06741-LB, ECF 150 at *10-11 (N.D. Cal. April 8, 2021) (Beeler, M.J.),

4  citing *Hanlon*, 150 F.3d at 1026–27 (9th Cir. 1998). In *Hanlon*, the Ninth Circuit identified

5  factors relevant to assessing a settlement proposal: "[(1)] the strength of the plaintiff's case;

6  [(2)] the risk, expense, complexity, and likely duration of further litigation; [(3)] the risk of

7  maintaining class-action status throughout trial; [(4)] the amount offered in settlement; [(5)]

8  the extent of discovery completed and the stage of the proceeding; [(6)] the experience and

9  views of counsel; [(7)] the presence of a government participant; and [(8)] the reaction of the

10 class members to the proposed settlement." *Id*. at 1026 (citation omitted).

11      Applying this standard of review to other federal and California wage and hour class

12 actions, this Court and others in this District have previously approved settlements similar to

13 that reached in this case. Likewise, in its February 3, 2022 order, the Court preliminarily

14 approved the Settlement with respect to these Class Members. (*See,* ECF 128)*.* Accordingly,

15 the only step that remains is final approval of the Settlement as to the Class. Consistent with

16 the precedent of this Circuit and this Court's own decisions, the Settlement should be finally

17 approved.

18                  **1.  The Strength of Plaintiff's Case; the Risk, Expense, Complexity,**
                        **and Likely Duration of Further Litigation; and the Risk of**
19                      **Maintaining Class-Action Status Throughout Trial.**
20

21      Weighing the significant risks associated with further litigation against the strengths

22 of Plaintiffs' case supports approval of the Settlement here. When a party continues to deny

23 liability, there is an inherent risk in continuing litigation. Litigating the class action claims,

24 here, would require substantial additional preparation and resources. *See,* Von Rock Dec. ¶

25 37. The parties were preparing for a series of pre-trial deadlines for a rapidly approaching

26 trial date that was only six weeks away. *Id*. Additionally, dispositive motions were pending

27 that could have seriously curtailed Plaintiffs' claims if the Court were to adopt Defendants'

28

definition of a "uniform." *Id*. Furthermore, whichever way the Court ruled on the definition of a uniform would have likely resulted in the losing party appealing, since there is virtually no binding precedent on this issue. Plaintiffs' statutory penalty claims were also subject to formidable defenses by Defendants, including that failure to include unreimbursed business expenses on wage statements are not an injury subject to Labor Code section 226 penalties and that Defendants had a good faith belief that the Rite Aid dress code did not require a "uniform," which would prevent Labor Code section 203 penalties. *Id.* If the Court had sided with Defendants on either of those defenses, Class Members would not receive any statutory penalties. *Id.*

As to PAGA penalties, it is within the Court's discretion to determine the amount, which could have resulted in a lesser award than recovered under the Settlement. *Id.,* ¶ 38. For example, in *Carrington v. Starbucks Corp.,* 30 Cal.App.5th 504 (2018), the trial Court reduced the PAGA penalty amount to only $5 per pay period and in *Magadia v. Wal-Mart Associates, Inc.* 384.F.Supp.3d 1058 (May 31, 2019), the Court awarded only $5.8 Million of the $34.7 Million in PAGA penalties sought by Plaintiffs.

Defendants also had a pending motion to decertify the class. If the Court had granted Defendants' motion, it would have resulted in substantial delay or no recovery at all for Class Members.

While Plaintiffs are confident in their ability to successfully litigate the alleged claims on the merits, the risks of doing so are substantial. In *Thieriot v. Celtic Ins. Co.*, No. C 10-04462 LB, 2011 U.S.Dist.LEXIS 44852, at *5 (N.D. Cal. April 21, 2011) (Beeler, M.J.), this court approved a settlement agreement in which the defendant specifically denied liability, noting that such denial of liability illustrated the risk to continued litigation. *See also, Greko v. Diesel U.S.A., Inc.* No. 10-cv-02576 NC, 2013 WL 1789602, at *5 (N.D. Cal. April 26, 2013) ("[E]ven with a strong case, further litigation would be time-consuming and expensive …). Here, TPI similarly continues to contest liability and the propriety of class certification,

1   injecting uncertainty and risk in continuing to litigate.

2       Resolving this case by means of the Settlement will yield a prompt, certain, and

3   substantial recovery for the Class Members. Such a result will benefit the Parties and the

4   court. It will bring finality to years of arduous litigation and will foreclose the possibility of

5   expanding litigation.

6       Moreover, this Rule 23 California class action involved intricate legal and factual

7   questions as the parties prepared for trial. As is typical with any case, but especially so with

8   class actions, appeals would probably follow, with the result that payments to Class

9   Members, if any, would likely occur only after several years of delay.  In contrast, the

10  Settlement will yield a prompt, certain, and substantial recovery for the Class Members,

11  benefiting the Parties and the court.

12      **2.      The Amount Offered in Settlement Provides Substantial, Certain
13              Benefits and Avoids the Risk, Cost, Delay and Burden of Further
                Litigation.**
14

15      The Settlement is substantial, especially as its adequacy must be judged as "a yielding

16  of absolutes and an abandoning of highest hopes […]  Naturally, the agreement reached

17  normally embodies a compromise; in exchange for the saving of cost and elimination of risk,

18  the parties each give up something they might have won had they proceeded with

19  litigation[.]" *Officers for Justice*, 688 F.2d at 624 (citations omitted). Accordingly, the

20  "settlement is not to be judged against a […] speculative measure of what might have been

21  achieved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (emphasis

22  in original, citation omitted). In the end, "[s]ettlement is the offspring of compromise; the

23  question we address is not whether the final product could be prettier, smarter or snazzier,

24  but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. In

25  addition, the Court should consider that the Settlement provides for payment to the Class

26  now, rather than a speculative payment many years down the road. *See generally, City of*

27  *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by*

28

1     *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

2        Here, the value of the Settlement – $12,000,000 – is not only fair and reasonable, but

3 an exceptional result, especially in light of the defenses raised by Defendants. *See,* Von Rock

4 Dec., ¶ 40. Moreover, the Settlement amount represents a meaningful recovery for Class

5 Members. *See., e.g., Jiangchen v. Rentech, Inc.,* No. CV 17-1490-GW(FFMx)) 2019

6 U.S.Dist.LEXIS 180474 (C.D.Cal. Oct. 10, 2019), at *21 (finding 10% recovery of the total

7 maximum damages potentially available reasonable in light of the risks of continued

8 litigation). The negotiated non-reversionary Gross Settlement Amount of $12,000,000

9 represents more than 25% of the total estimated damages and penalties for all claims. Again,

10 these figures are based on Plaintiffs' assessment of a best-case-scenario. On a more realistic

11 note, the $12,000,000 settlement represents a full recovery for the unreimbursed uniform

12 purchases and minimum wages, valued at $8,192,264 (including interest). That Class

13 Counsel was able to secure a full payment of out-of-pocket expenses and unpaid wages for

14 Class Members plus nearly $4,000,000 more in a compromise of penalties, which were

15 uncertain, provides an excellent recovery in the face of expanding and uncertain litigation.

16 *See,* Von Rock Dec., ¶ 40.

17        The Settlement will result in immediate and certain payment to Class Members of

18 meaningful amounts. *Id.*, ¶ 56. The settlement net average claim amount is approximately

19 $308 for Class Members hired prior to March 22, 2020, with the highest claim payment

20 being approximately $831. *Id.*; Atticus Dec. ¶ 22. As set forth in the Allocation Plan, Class

21 Members not subject to the Team Colors Policy, hired after March 22, 2020, will receive a

22 $25.00 payment. Class Members who are also Aggrieved Employees will receive a PAGA

23 claim payment on a *pro rata* basis based on the number of workweeks they worked in the

24 PAGA period with the average PAGA payment of $3.49. *See,* Atticus Dec., ¶ 21. This

25 provides significant compensation to the Class Members and provides an excellent recovery

26 in the face of expanding and uncertain litigation. Class Members were provided estimates of

27 their claim amounts in the Notice of settlement and no objections were received. In light of

28     **NOTICE OF MOTION AND MOTION; MEMO OF Ps &As IN SUPPORT OF MOTION FOR FINAL**
       **APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**
       *Nucci, et al. v. Rite Aid Corporation*               Case No. 19-cv-01434-LB
       Page 16

1    all of the risks, the settlement amount is fair, reasonable, and adequate.

2              **3.     The Extent of Discovery Completed and the Stage of the
3                       Proceedings.**

4              The Parties engaged in substantial investigation and analysis of the legal issues in

5    reaching a Settlement in this case. *Cf., In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 459

6    (9th Cir. 2000) (emphasizing that touchstone of analysis is whether "the parties have

7    sufficient information to make an informed decision about settlement," including formal and

8    informal discovery) (citation omitted).

9              The amount of discovery completed prior to reaching a settlement is important

10   because it bears on whether the Parties and the Court have sufficient information before them

11   to assess the merits of the claims. *See, e.g.*, *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 617, 625

12   (N.D. Cal. 1979); *Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL

13   4196690, at *6 (E.D. Cal. Sept. 11, 2008). Informal discovery may also assist parties with

14   "form[ing] a clear view of the strengths and weaknesses of their cases." *Monterrubio v. Best*

15   *Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013).

16             Here, all fact and expert discovery had been completed by the time of the mediation

17   on September 30, 2021, and the Parties were preparing for trial. The Parties engaged in

18   extensive discovery, including: initial disclosures; two sets of supplemental initial

19   disclosures; Plaintiffs served and Defendants responded to four sets of document demands

20   and three sets of special interrogatories; Defendants amended multiple responses following

21   extensive meet and confer efforts; Defendants provided thousands of pages of documents

22   and time and payroll records; Defendants served and Plaintiffs responded to three sets of

23   document demands and three sets of special interrogatories; all three Plaintiffs' depositions

24   were taken; Defendants' 30(b)(6) depositions were taken with four deponents; the deposition

25   of a store manager was taken; a total of 64 Class Member declarations obtained by Plaintiffs

26   and Defendants were exchanged; expert and rebuttal expert reports were exchanged; all four

27

28

of Plaintiffs' experts' depositions were taken, plus deposition of one of Defendants' experts. *See,* Von Rock Dec., ¶¶ 13-19.

Accordingly, better than in most cases, the Parties were able to accurately assess the legal and factual issues that would arise if the case proceeded to trial. *See,* Von Rock Dec., ¶ 19.  In addition, in reaching this Settlement, Class Counsel relied on their substantial litigation experience in similar wage and hour class actions. *Id.*  Class Counsel's liability and damages evaluation was premised on a careful and thorough analysis of the effects of Defendants' policies and practices on Class Members' pay. *Id.* Ultimately, in their fourth mediation, facilitated by mediator Jeff Ross, the Parties used this information and discovery to fairly resolve the litigation. *Id.*

### 4.    The Experience and Views of Counsel.

The judgment of experienced counsel regarding the settlement is entitled to great weight. *Hanlon*, 150 F.3d at 1026; *Boyd*, 485 F.Supp. at 622; *Ellis*, 87 F.R.D. at 18. Reliance on such recommendations is premised on the fact that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

Here, both parties agreed that the Settlement was fair, adequate, and reasonable. Plaintiffs' Counsel and Defendants' Counsel each have extensive experience in prosecuting and litigating class action wage-and-hour suits like this one. *See,* Von Rock Dec., ¶¶ 19, 68. The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate heavily favors this Court's approval of the Settlement.

### 5.    The Presence of a Government Participant.

Defendant provided Notice pursuant to Section 1715(b) of the Class Action Fairness Act of 2005 ("CAFA"), which states that "each defendant that is participating in the proposed settlement shall serve upon the appropriate State official of each State in which a

1   class member resides and the appropriate Federal official, a notice of the proposed

2   settlement.....” 28 U.S.C. § 1715(b). Section 1715(d) states that a Court may not issue an

3   order granting final approval of a proposed settlement “earlier than 90 days after the latter of

4   the dates on which the appropriate Federal official and the appropriate State official are

5   served with the notice.” 28 U.S.C. § 1715(b).  Defendants served the CAFA Notices on

6   February 7, 2022, on forty-four State officials.  The service was completed more than 90

7   days prior to the hearing on Final Approval and, thus, satisfies the notice requirements. *See,*

8   *Von Rock Dec.*¶ 57.  Defendants represented that of the class members whose last-known

9   addresses are available at this time, 98.3% are in California, and these California residents

10  are expected to receive 95.8% of the settlement and 98.9% of the PAGA payment. *Id*., ¶ 57.

11  No objections or comments have been received in response to the CAFA notices. *Id.*, ¶ 58.

12      In addition, Plaintiffs submitted the proposed settlement to the LWDA through its

13  online portal. *See,* Von Rock Dec. ¶ 59. The LWDA has not commented on or objected to

14  the settlement. Accordingly, the Parties' submission is satisfactory under PAGA. *See, e.g.,*

15  *Gutilla v. Aerotek, Inc.*, No. 1:15-cv-00191-DAD-BAM, 2017 WL 2729864, at *3 (E.D. Cal.

16  Mar. 22, 2017) (after reviewing the parties' submission of proposed settlement to LWDA,

17  finding PAGA settlement “fair, reasonable, and adequate in light of the public policy goals

18  of PAGA”).

19
20                  **6.      Class Members' Response to the Settlement Is Overwhelmingly
                            Positive.**

21      The Court can presume that the Settlement is fair because not a single Class Member

22  objected to the Settlement. “The absence of a large number of objections to a proposed class

23  action settlement raises a strong presumption that the terms of a proposed class settlement

24  action are favorable to the class members.” *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,

25  221 F.R.D. 523, 529 (C.D. Cal 2004); *see also, Mandujano v. Basic Vegetable Prods., Inc.,*

26  541 F.2d 832, 837-838 (9th Cir. 1976). The overwhelmingly positive reaction by the Class

27

28

1    strongly supports final approval of the Settlement.

2       **B.      The Settlement Is Presumed Fair Because the Parties Engaged in Arm's**
3               **Length Negotiations.**

4          "Where a settlement is the product of arms-length negotiations conducted by capable

5    and experienced counsel, the court begins its analysis with a presumption that the settlement

6    is fair and reasonable." *Garner v. State Farm Mut. Auto Ins. Co*., 2010 WL 1687832, *13

7    (N.D. Cal. Apr. 22, 2010); *see also, Tijero v. Aaron Bros., Inc*., 301 F.R.D. 314, 324 (N.D.

8    Cal. 2013); *Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 965 (9th Cir. 2009) ("We put a

9    good deal of stock in the product of an arms-length, non-collusive, negotiated resolution...");

10   *Nat'l Rural Telecomm.*, 221 F.R.D. at 528; *Tsyn v. Wells Fargo Advisors, LLC*, No. 3:14-cv-

11   02552-LB, ECF 172 (N.D. Cal. Nov. 1, 2018) (Beeler, M.J.) .

12         Here, the settlement was a product of non-collusive, arm's-length negotiations. *See*,

13   Von Rock Dec., ¶ 21. The Parties participated in four mediation sessions, with the last

14   mediation taking place before Jeff Ross, a skilled mediator with many years of experience

15   mediating employment matters. *Id.,* ¶¶ 20-21. The Parties spent significant time discussing

16   settlement and negotiating the settlement agreement, with several rounds of edits related to

17   the terms and details of the Settlement. *Id.*, ¶ 21. Plaintiffs are represented by experienced

18   and respected class action litigators who feel strongly that the proposed Settlement achieves

19   an excellent result for the Class Members. *Id.*, ¶¶ 40, 60.

20      **C.      The Distribution of the Settlement Proceeds Is Equitable and Tailored to**
21               **the Class Members' Respective Claims.**

22         In an effort to equitably distribute the Settlement proceeds, the Parties have agreed to

23   allocate funds amongst Class Members in a manner that recognizes the amount of time that

24   the particular Class Member worked for Defendants in the applicable limitations period.  The

25   allocation method, which is based on the number of workweeks, will ensure that workers

26   who were subjected to the Team Colors dress code policy for longer periods of time due to

27

28

their longer tenure with TPI receive a greater recovery. Those hired after March 2020 and not subject to the Team Colors policy will receive a smaller, lump-sum payment. Thus, the allocation is closely tailored to each Class Members' claim.

A class action settlement need not benefit all class members equally. *Holmes v. Continental Can Co.,* 706 F.2d 1144, 1148 (11th Cir. 1983); *In re AT & T Mobility Wireless Data Services Sales Tax Litigation,* 789 F.Supp.2d 935, 979–80, 2011 WL 2204584 at *42 (N.D. Ill. 2011). Rather, although disparities in the treatment of class and collective members may raise an inference of unfairness and/or inadequate representation, this inference can be rebutted by showing that the unequal allocations are based on legitimate considerations. *Holmes,* 706 F.2d at 1148; *In re AT & T,* 789 F.Supp.2d at 979-80. Plaintiffs provide rational and legitimate bases for the allocation method here, and the Parties submit that it should be approved by the Court.

Additionally, Class Members were given the option to receive their settlement amount in a digital form. These digital payment options provide more flexibility for Class Members and provide a substantial benefit to Class Members who do not have traditional bank accounts. The Settlement Administrator provided a secure link on the settlement website for Class Members to submit a request for a digital payment option. *See*, Von Rock Dec., ¶ 32; Atticus Dec. ¶ 13. Through April 18, 2022, 1,839 Class Members selected a digital payment option. *Id.* For those Class Members who did not submit a request for a digital payment option, the Settlement Administrator will mail a check to the Class Member. This added level of payment flexibility will encourage participation in the Settlement.

**D.**   **The Best Practicable Notice of Settlement Was Provided to the Class Members in Accordance with the Process Approved by the Court.**

The mailing, and e-mailing, of the Class Notice to Class Members, and the general administration of the notice process as described above, meets the requirements for the "best notice practicable" in this case as necessary to protect the due process rights of Class Members. (ECF 128); *see also, In re Hyundai and Kia Fuel Econ. Litig.,* 926 F.3d 539, 567

1  (9th Cir. 2019) ("Notice is satisfactory if it generally describes the terms of the settlement in

2  sufficient detail to alert those with adverse viewpoints to investigate and to come forward

3  and be heard.") (internal quotation marks omitted)

4        Indeed, individual Class Notice was served on each Class Member at his or her most

5  recent address, after cross-referencing each address with U.S. Post Office records; skip-

6  tracing and other techniques were used to forward as many undeliverable notices as possible;

7  email notice was sent to those Class Members for whom email addresses were available;

8  Class Members also were directed to a dedicated website that included the Notice of Class

9  Action and Private Attorneys General Act Settlement and Release and other Settlement-

10  related information. Moreover, both the Class Notice and settlement website informed Class

11  Members of the pendency of the action and their right to object to the Settlement. *See,*

12  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (best practicable

13  notice is notice that is "reasonably calculated, under all the circumstances, to apprise

14  interested parties of the pendency of the action and afford them an opportunity to present

15  their objections"). The notice procedures meet the "best practicable notice" standard and the

16  Court may proceed to determine the fairness and adequacy of the Settlement, and order its

17  approval, secure in the knowledge that all absent Class Members have been given the

18  opportunity to participate fully in the opt-out, comment, and approval process.

19
20  **V.     THE SETTLEMENT ADMINISTRATION COSTS ARE FAIR AND
          REASONABLE.**

21        The Settlement Administration costs are $75,000, as set forth in the Declaration of

22  Bryn Bridley of Atticus Administration, submitted herewith. *See,* Atticus Dec., ¶ 24. This is

23  a slight increase from the original estimated cost of $67,000. The reason for the increase in

24  administrative costs is because of the increase in the class size. *See,* Von Rock Dec., ¶ 85.

25  The updated cost of $75,000 was included in the Notice sent to Class Members. There were

26  no objections by Class Members to the costs of the claims administration.

27
28

Atticus provided the most competitive bid after Plaintiffs obtained quotes from four established administration firms. *Id.,* ¶ 86. The administration costs include the services of distributing the Postcard Notices of Settlement via U.S. mail and email, re-mailing any Postcard Notices returned as non-deliverable but with forwarding addresses, and re-mailing the Notice to any new address obtained by way of skip-trace. *Id.* Atticus will also maintain a settlement website and toll-free number, receive and process workweek disputes, calculate the settlement payments, calculate all applicable payroll taxes, withholdings, and deductions, and prepare and issue all disbursements to Class Members, Service Awards to Plaintiffs, payment to the LWDA, payment to Class Counsel for fees and costs, and payment to itself for fees in administering the settlement.

The modest increase in administrative costs does not impact the reasonable valuable of the settlement. Atticus Administration will continue to administer the Settlement and provide a compliance report. Accordingly, the reasonable administrative costs of $75,000 should be approved.

**VI.     CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court grant final approval of the Settlement.

Date: April 20, 2022                    Respectfully submitted,

*/s/ Hallie Von Rock*

_____

Hallie Von Rock
AIMAN-SMITH & MARCY PC
Attorneys for Plaintiffs and Class Members

1

## <u>CERTIFICATE OF SERVICE</u>

2

   I hereby certify that I caused the foregoing document to be electronically filed with

3

the Clerk of the Court for the United States District Court, Central District of California, by

4

using the Court's CM/ECF system on April 20, 2022. Service will be accomplished on all

5

parties by the Court's CM/ECF system.

6

7

8

Dated: April 20, 2022                              /s/ Hallie Von Rock

9                                                  _____

                                                   Hallie Von Rock

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION; MEMO OF Ps &As IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**
*Nucci, et al. v. Rite Aid Corporation*                              **Case No. 19-cv-01434-LB**