UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| KRISTAL NUCCI, KELLY SHAW, and ANA GOSWICK, individually and on behalf of all others similarly situated and the California Labor & Workforce Development Agency,<br><br>Plaintiffs,<br><br>v.<br><br>RITE AID CORPORATION, THRIFTY PAYLESS, INC., and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 19-cv-01434-LB<br><br>**FINAL APPROVAL ORDER**<br><br>Re: ECF Nos. 130, 131 |

## INTRODUCTION

This is a wage-and-hour class action under Federal Rule of Civil Procedure 23. The plaintiffs — current and former employees of defendants Rite Aid Corporation and Thrifty Payless, Inc. — challenge the defendants' alleged failure to reimburse their expenses for uniforms and resulting failures to pay minimum wage, issue accurate wage statements, pay wages due on termination of employment, and pay all wages due on regularly scheduled paydays. The plaintiffs claim violations of an Industrial Welfare Commission (IWC) Wage Order, the California Labor Code, California's Unfair Competition Law (UCL), and California's Private Attorneys General Act

(PAGA).[1] The parties settled their case, and the court approved the settlement preliminarily.[2] The plaintiffs then moved for final approval and for attorney's fees, costs, and service awards.[3] The court grants the unopposed motions but reduces the requested $30,000 in service awards to $22,500.

## STATEMENT

### 1. The Lawsuit

The plaintiffs filed the lawsuit on March 19, 2019, claiming failure to indemnify business expenses under the California Labor Code, failure to reimburse for required uniforms under IWC Wage Order 7, and unfair business practices under the UCL.[4] They filed a first amended complaint on May 23, 2019, adding a named plaintiff, claims under the California Labor Code and IWC Wage Order 7 for failure to pay minimum wage, failure to furnish accurate wage statements, and waiting time penalties, and a claim for PAGA penalties.[5] They also filed a second amended complaint on October 2, 2019, adding another named plaintiff.[6]

The court certified the following class under Rule 23(b)(3) on June 14, 2020: "All non-exempt employees, excluding pharmacists, pharmacy interns, and asset protection agents, working in any Rite Aid store in California at any time from March 13, 2015 through the trial date."[7]

The court approved notice to the class on December 3, 2020.[8] The notice was sent on December 23, 2020, and twenty-two class members requested exclusion.[9]

---

[1] Second Am. Compl. (SAC) – ECF No. 30. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Settlement Agreement, Ex. 1 to Von Rock Decl. in Supp. of Mot. for Prelim. Approval – ECF No. 119 at 23–58; Order – ECF No. 128.

[3] Mot. – ECF No. 130; Mot. for Attorney's Fees, Costs, and Incentive Awards – ECF No. 131.

[4] Compl. – ECF No. 1.

[5] First Am. Compl. – ECF No. 13.

[6] SAC – ECF No. 30.

[7] Order – ECF No. 69 at 34.

[8] Order – ECF No. 86.

[9] Von Rock Decl. – ECF No. 132 at 4 (¶ 10).

The parties engaged in extensive discovery, including initial and supplemental initial disclosures, seven sets of document requests and six sets of special interrogatories, meet and confer efforts, "thousands of pages of documents and time and payroll records" provided by the defendants, depositions, exchanges of class member declarations, and exchanges of expert and rebuttal expert reports.[10] The defendants produced data that, in conjunction with the plaintiffs' experts' assessments, allowed the plaintiffs' counsel to evaluate class damages.[11]

The parties had four mediations. They mediated twice before class certification with Michael Loeb, Esq., on December 13, 2019, and March 20, 2020. After class certification, they mediated on November 20, 2020, with the Honorable Daniel Weinstein (Ret.) and Lizbeth Hasse, Esq. Finally, they had a full-day mediation with Jeff Ross, a respected wage-and-hours mediator, on September 30, 2021. One day later, they accepted a proposal from Mr. Ross and reached an agreement to settle the entire case. Following that initial agreement, the parties "met and conferred extensively over the detailed terms of the settlement" and executed a settlement agreement on October 21, 2021.[12]

At the time of settlement, there were pending two motions for summary judgment and a motion to decertify the class.[13] All of these motions were fully briefed. Trial was scheduled to begin on November 19, 2021.[14]

On October 22, 2021, the plaintiffs moved for preliminary approval of the settlement.[15] The court held a hearing and preliminarily approved the settlement on February 3, 2022.[16] The plaintiffs then moved for final approval and for attorney's fees, costs, and service awards.[17] The

---

[10] *Id.* at 4–6 (¶¶ 13–19).

[11] *Id.* at 12–16 (¶¶ 41–54).

[12] *Id.* at 6–7 (¶¶ 20–21).

[13] Mots. – ECF Nos. 95, 97, 98.

[14] Order – ECF No. 90.

[15] Mot. for Prelim. Approval – ECF No. 115.

[16] Order – ECF No. 128.

[17] Mot. – ECF No. 130; Mot. for Attorney's Fees, Costs, and Incentive Awards – ECF No. 131.

ORDER – No. 19-cv-01434-LB                3

court held a final fairness hearing on May 26, 2022. The parties consented to magistrate-judge jurisdiction.[18]

## 2. The Proposed Settlement

All defined terms in this order have the same meaning as in the Settlement Agreement.

### 2.1 Settlement Class

The Class is defined as in the order granting class certification: "All non-exempt employees, excluding pharmacists, pharmacy interns, and asset protection agents, working in any Rite Aid store in California at any time from March 19, 2015 through the date of the preliminary approval of the settlement by the Court."[19] The preliminary-approval date was February 3, 2022.[20]

Rite Aid initially estimated, for mediation purposes, that there were about 25,000 Class Members, including about 4,500 hired after the defendants ended their mandatory dress policy on March 22, 2020.[21] After preliminary approval was granted, a Rite Aid data consultant compiled the final Class List, "comprised of 29,451 Class Members, which includes 23,051 Class Members hired prior to March 22, 2020, and 5,950 Class Members hired after March 22, 2020."[22]

The Class excludes the twenty-two individuals who requested exclusion after the original class notice. Class Members were not provided a second opportunity to request exclusion.[23]

### 2.2 Settlement Amount and Allocation

The Gross Settlement Amount is $12,000,000, and the Net Settlement Amount — the fund recovered by the Class — is proposed as approximately $7,444,460 after the following deductions: (1) representative payment awards to the named plaintiffs of $30,000 ($10,000 to each); (2)

---

[18] Stipulation – ECF No. 121.

[19] Settlement Agreement, Ex. 1 to Von Rock Decl. in Supp. of Mot. for Prelim. Approval – ECF No. 119 at 26 (¶ 8(b)).

[20] Order – ECF No. 128.

[21] Von Rock Decl. in Supp. of Mot. for Prelim. Approval – ECF No. 119 at 2 (¶ 4).

[22] Von Rock Decl. – ECF No. 132 at 2–3 (¶ 3); Bridley Decl. – ECF No. 130-1 at 2 (¶ 3).

[23] Settlement Agreement, Ex. 1 to Von Rock Decl. in Supp. of Mot. for Prelim. Approval – ECF No. 119 at 26–27 (¶ 8(b)(i)), 44 (¶ 30).

attorney's fees of $3,999,600 (approximately one third of the gross amount); (3) costs of $300,940; (4) administration costs of $75,000; and (5) PAGA penalties of $150,000 to be paid to the California Labor and Workforce Development Agency.[24] $50,000 of the Net Settlement Amount is for PAGA penalties to be paid to the PAGA Aggrieved Employees (those Class Members who worked "in any Rite Aid store in California at any time from March 19, 2018 through the date of the preliminary approval of the settlement by the Court").[25] Of the Net Settlement Amount, 10% will be allocated as wages and 90% will be allocated as "non-wages for the settlement of expense reimbursements, interest claims, statutory and civil penalty claims, and for attorneys' fees."[26]

The Net Settlement Amount will be allocated as individual settlement payments to Class Members as follows. Class Members hired after March 2020 will receive a "nominal payment" of $25. Class Members hired before March 2020 will receive a payment based on their respective shares of workweek totals during the Class Period, and if they no longer work for the defendants, "an additional four workweeks will be added to their total workweeks."[27] In addition, the PAGA Aggrieved Employees will share the $50,000 in PAGA penalties "on a pro rata basis."[28]

Claim forms are not required.[29] The Settlement Administrator will issue settlement payments as either checks or digital payments. Class Members who made no choice and whose mailed notice was deemed deliverable will receive a check. The checks and digital payments will be good for 180 days.[30]

---

[24] *Id.* at 29–31 (¶ 10), 33–35 (¶¶ 14–16); Mot. – ECF No. 130 at 15.

[25] Settlement Agreement, Ex. 1 to Von Rock Decl. in Supp. of Mot. for Prelim. Approval – ECF No. 119 at 28 (¶ 8(e)), 31 (¶ 10(c)).

[26] *Id.* at 32–33 (¶ 13).

[27] *Id.* at 31–32 (¶ 11).

[28] *Id.*

[29] Von Rock Decl. – ECF No. 132 at 9 (¶ 30).

[30] Settlement Agreement, Ex. 1 to Von Rock Decl. in Supp. of Mot. for Prelim. Approval – ECF No. 119 at 42 (¶ 29); Bridley Decl. – ECF No. 130-1 at 5 (¶ 13).

ORDER – No. 19-cv-01434-LB                               5

The Settlement is non-reversionary.[31] Uncashed checks and unactivated digital payments will be distributed as follows. If after 180 days their total amount is less than $200,000, the amount will be distributed to the *cy pres* beneficiary Legal Aid at Work, which "provides legal services assisting low-income, working families and promotes [a] better understanding of the conditions, policies, and institutions that affect the well-being of workers and their families and communities." If the amount is $200,000 or more, a second distribution will be made to those Class Members who did cash their checks or activate their digital payments. The second distribution will be allocated according to workweek totals, as described above. Any uncashed checks or unactivated digital payments from the second distribution will be distributed to the *cy pres* beneficiary.[32]

**2.3   Release**

The release provisions of the settlement agreement are, in short, (1) a release of the class and PAGA claims for all claims under federal or state law that were pleaded or could have been pleaded under the facts alleged in the complaint (plus any potential claims under the Fair Labor Standards Act), and (2) a general release by the named plaintiffs.[33]

**2.4   Administration**

The court appointed Atticus Administration as the Settlement Administrator.[34] The administration procedures — including the notice program and procedures for exclusions and objections — were set forth in the Settlement Agreement.[35]

Atticus complied with these procedures. Between March 18, 2022, and April 18, 2022, notice was sent to all Class Members by mail (following address updates using the National Change of

---

[31] Von Rock Decl. – ECF No. 132 at 8 (¶ 28).

[32] Settlement Agreement, Ex. 1 to Von Rock Decl. in Supp. of Mot. for Prelim. Approval – ECF No. 119 at 42–43 (¶ 29); Von Rock Decl. – ECF No. 132 at 10 (¶ 34).

[33] Settlement Agreement, Ex. 1 to Von Rock Decl. in Supp. of Mot. for Prelim. Approval – ECF No. 119 at 47–49 (¶¶ 33–35).

[34] Order – ECF No. 128 at 10.

[35] Settlement Agreement, Ex. 1 to Von Rock Decl. in Supp. of Mot. for Prelim. Approval – ECF No. 119 at 37–46 (¶¶ 23–32).

Address Database) and 22,477 Class Members by email. Of the mailed notices, 2,010 were initially returned as undeliverable, and Atticus resent them after obtaining forwarding addresses for some and otherwise "perform[ing] advanced address research." As of April 18, 2022, the notice results were as follows: "of the 29,451 Notices mailed, 29,103 or 98.81% were deemed delivered and 348 or 1.19% [were] deemed undeliverable," and "1,417 [emailed] Notices have been returned to Atticus as undeliverable."[36] In addition, Atticus has been maintaining a Settlement Website.[37]

The objection deadline was April 18, 2022, and the Notice informed Class Members of the objection procedures. There were no objections.[38]

## ANALYSIS

### 1. Jurisdiction

The court has diversity jurisdiction under the Class Action Fairness Act (CAFA). *See* 28 U.S.C. § 1332(d)(2).

### 2. Certification of Settlement Class

The court previously certified the class under Rule 23, as described above. Excluded from the class are the twenty-two individuals who submitted the requests for exclusion.

### 3. Approval of Settlement

A court may approve a proposed class-action settlement only "after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether":

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;

---

[36] Mot. – ECF No. 130 at 13–15; Bridley Decl. – ECF No. 130-1 at 3–4 (¶¶ 5–11).
[37] Bridley Decl. – ECF No. 130-1 at 4–6 (¶¶ 12–15).
[38] *Id.* at 6 (¶¶ 18–19).

  (C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

  (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). These factors "are substantially similar to those articulated" in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). *Student A v. Berkeley Unified Sch. Dist.*, No. 17-cv-02510-JST, 2021 WL 6332353, at *2 n.2 (N.D. Cal. July 8, 2021).

  In *Hanlon*, the Ninth Circuit identified factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class-action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. 150 F.3d at 1026.

  "Where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable." *Garner v. State Farm Mut. Auto Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *13 (N.D. Cal. Apr. 22, 2010); *see, e.g.*, *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019) ("[W]e put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.") (cleaned up); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair.").

  The court has evaluated the Settlement Agreement for overall fairness and concludes that it is free of collusion and approval is appropriate.

  First, the settlement provides good value when contrasted with the maximum damages estimated by the plaintiffs, which assumes complete success on the merits. As discussed above, counsel reached the settlement only after obtaining discovery sufficient to allow a robust damages

assessment. The net individual settlement payments average $308, which is "more than 100% of [Class Members'] actual out-of-pocket [uniform] reimbursement damages."[39] The gross amount "represents more than 25% of the total maximum damages and penalties for all claims."[40] That percentage compares favorably with other settlements in uniform-reimbursement cases.[41] A settlement now also results in money paid now, while litigation results in delay and expense.

Second, the value of the settlement is significant compared to the litigation risks and uncertainties.[42] The maximum recovery assumes complete success for the plaintiffs, which was not a guaranteed outcome, particularly given the defendants' pending motion for summary judgment (arguing that the defendants' mandatory dress was not a uniform) and motion to decertify the class. When viewed against the risk of no recovery, this settlement is fair. *See, e.g.*, *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 331 (N.D. Cal. 2014) (litigation risks, including maintaining class-action status, favor settlement approval). Moreover, settlement allows payment to the Class Members now, before costly and protracted litigation.

Third, a class action allows class members — who otherwise would not pursue their claims individually because costs would exceed recoveries — to obtain relief.

Fourth, the settlement is the product of serious, non-collusive, arm's-length negotiations and was reached after mediation with an experienced mediator with subject-matter expertise.

Fifth, the PAGA allocation is also within the range of reasonable settlements. *See, e.g.*, *Viceral v. Mistras Grp., Inc.*, No. 15-cv-02198-EMC, 2016 WL 5907869, at *8–9 (N.D. Cal. Oct. 11, 2016).

Finally, the reaction of the class is favorable — there were no objections. A court "may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it." *Ching v. Siemens Indus.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *6

---

[39] Von Rock Decl. – ECF No. 132 at 11–12 (¶ 40), 17 (¶ 56).

[40] *Id.* at 11 (¶ 40).

[41] Chart, Ex. 3 to Von Rock Decl. in Supp. of Mot. for Prelim. Approval – ECF No. 119 at 79.

[42] Mot. – ECF No. 130 at 20–22.

(N.D. Cal. June 27, 2014); *cf. Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (court should consider "reaction of the class members to the proposed settlement").

In sum, viewed as a whole, the proposed settlement is sufficiently "fair, adequate, and reasonable" to warrant approval. *See Officers for Just. v. Civ. Serv. Comm'n of City and Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).

## 4. Appointment of Class Representative, Class Counsel, and Settlement Administrator

The court previously appointed Kristal Nucci, Kelly Shaw, and Ana Goswick as class representatives.[43]

The court confirms its appointment of Class Counsel: Randall B. Aiman-Smith, Reed W.L. Marcy, Hallie Von Rock, and Brent A. Robinson (all of Aiman-Smith & Marcy PC). They have sufficient qualifications, experience, and expertise in prosecuting class actions.[44]

The court also confirms its appointment of Atticus as the Settlement Administrator. Atticus is entitled to $75,000 for settlement administration costs.[45]

## 5. Class Notice

As described above, the Settlement Administrator provided notice to the class in the form the court approved previously. The notice met all legal prerequisites: it was the best notice practicable, satisfied the requirements of Rule 23(c)(2), adequately advised class members of their rights under the settlement agreement, met the requirements of due process, and complied with the court's order regarding court notice. The forms of notice fairly, plainly, accurately, and reasonably provided class members with all required information, including (among other things): (1) a summary of the lawsuit and claims asserted; (2) a clear definition of the class; (3) a description of the material terms of the settlement, including the estimated payment; (4) a disclosure of the

---

[43] Order – ECF No. 69.

[44] Von Rock Decl. – ECF No. 132 at 18 (¶ 60); Firm Resume, Ex. A to *id.* – ECF No. 132 at 30–39.

[45] Proposed Order – ECF No. 130-2 at 5 (¶ 13); Bridley Decl. – ECF No. 130-1 at 8 (¶ 24); Von Rock Decl. – ECF No. 132 at 27–28 (¶¶ 85–87).

release of the claims; (5) the date, time, and location of the final fairness hearing; and (6) the identity of class counsel and the provisions for attorney's fees, costs, and class-representative service awards.[46]

The court previously declined to refuse to approve the settlement unless it afforded a new opportunity for Class Members to request exclusion.[47] Fed. R. Civ. P. 23(e)(4).

**6. Service Awards**

The plaintiffs moved for service awards of $10,000 for each of the three class representatives.[48] Recognizing the presumption in this district of a $5,000 award, but also recognizing the work of the class representatives, the court awards $7,500 to each, for a total of $22,500 (not the requested $30,000).

District courts must evaluate proposed awards individually, using relevant factors that include "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977 (cleaned up). "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (cleaned up). The Ninth Circuit has "noted that in some cases incentive awards may be proper but [has] cautioned that awarding them should not become routine practice." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013) (discussing *Staton*, 327 F.3d at 975–78). District courts "must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Id.* at 1164. In this

---

[46] Bridley Decl. – ECF No. 130-1; Notices, Exs. A–B to *id.* – ECF No. 130-1 at 9–18.
[47] Order – ECF No. 128 at 11.
[48] Mot. for Attorney's Fees, Costs, and Incentive Awards – ECF No. 131 at 27–29.

1   district, a $5,000 incentive award is presumptively reasonable. *Bellinghausen v. Tractor Supply*

2   *Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015) (collecting cases).

3       The class representatives estimate that they collectively spent at least 155 hours on this case, helping to achieve a recovery for the Class and incurring a reputational risk. They did such things as attend mediations and depositions.[49] Under the circumstances of this case, and considering the presumptive $5,000, the court determines that $7,500 is justified. *See, e.g., Harris v. Vector Mktg. Corp.*, No. 08-cv-5198-EMC, 2012 WL 381202, at *7–8 (N.D. Cal. Feb. 6, 2012) (awarding $12,500 where the plaintiff spent "more than 100 hours on this case (which included being deposed twice)" and the defendant "pursued disclosure of her private information"); *Dyer*, 303 F.R.D. at 335–36 (awarding $10,000 where the plaintiff was deposed, attended a four-day mediation (which required her to travel and miss work), and spent "more than 200 hours assisting in the case"); *Bellinghausen.*, 306 F.R.D. at 267–68 (awarding $15,000 where the plaintiff spent 73 hours on the case, attended mediation, and was rejected by potential employers because of his status as class representative); *Bolton v. U.S. Nursing Corp.*, No. 12-cv-4466-LB, 2013 WL 5700403, at *6 (N.D. Cal. Oct. 18, 2013) (approving $10,000 as an incentive award where the average recovery was $595.91 but "the largest settlement recovery is estimated to be $4,602.67, and 204 class members will receive more than $1,500").

### 7. Attorney's Fees and Costs

Class Counsel moved for $3,999,600 in fees (about one third of the settlement amount) and $300,940 in costs.[50] The court awards both amounts.

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

The court must ensure that the award is reasonable. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). The court is not bound by the parties' settlement agreement as to

---

[49] Von Rock Decl. – ECF No. 132 at 28 (¶¶ 88–90); Goswick Decl. – ECF No. 131-1; Nucci Decl. – ECF No. 131-2; Shaw Decl. – ECF No. 131-3.

[50] Mot. for Attorney's Fees, Costs, and Incentive Awards – ECF No. 131.

the amount of fees. *Id.* at 941–43. The court must review fee awards with special rigor:

> Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs. Accordingly, fee applications must be closely scrutinized. Rubber-stamp approval, even in the absence of objections, is improper.

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (cleaned up).

When counsel recovers a common fund that confers a "substantial benefit" on a class of beneficiaries, counsel is "entitled to recover their attorney's fees from the fund." *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002). In common-fund cases, courts may calculate a fee award under either the "lodestar" or "percentage of the fund" method. *Id.*; *Hanlon*, 150 F.3d at 1029.

The "percentage of the fund" method is typically used. The Ninth Circuit has established a "benchmark" that fees should equal twenty-five percent of the settlement, although courts diverge from the benchmark based on factors that include "the results obtained, risk undertaken by counsel, complexity of the issues, length of the professional relationship, the market rate, and awards in similar cases." *Morales v. Stevco, Inc.*, No. CIV-F-09-0704-AWI-JLT, 2013 WL 1222058, at *2 (E.D. Cal. Mar. 25, 2013); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming thirty-three-percent fee award); *Pac. Enters.*, 47 F.3d at 379 (same).

Finally, Ninth Circuit precedent requires courts to award class counsel fees based on the total benefits made available to class members rather than the actual amount ultimately claimed. *Young v. Polo Retail, LLC*, No. C-02-4546-VRW, 2007 WL 951821, at *8 (N.D. Cal. Mar. 28, 2007) ("district court abused its discretion in basing attorney fee award on actual distribution to class" instead of amount made available) (citing *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997)).

If the court applies the percentage method, it then typically calculates the lodestar as a "cross-check to assess the reasonableness of the percentage award." *See, e.g.*, *Weeks v. Kellogg Co.*, No. CV-09-8102-MMM-RZx, 2013 WL 6531177, at *25 (C.D. Cal. Nov. 23, 2013); *see also Serrano v. Priest*, 20 Cal. 3d 25, 48–49 (1977); *Fed-Mart Corp. v. Pell Enters.*, 111 Cal. App. 3d 215, 226–27 (1980). "The lodestar . . . is produced by multiplying the number of hours reasonably expended

by counsel by a reasonable hourly rate." *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26 (2000). "Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative 'multiplier' to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Id.*; *accord Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503–06 (2016) (holding, under California law, that "the percentage method to calculate [attorney's] fee[s] in a common fund case" is appropriate and the trial court has "discretion to conduct a lodestar cross-check on a percentage fee").

Based on counsel's declaration and the results they achieved in this litigation, the requested fees are reasonable and appropriate as a percentage of the common fund, supported by a lodestar cross-check (with the plaintiff's suggested multiplier). Counsel obtained excellent benefits for the class (recovering, on a net basis, over 100% of the class's uniform-reimbursement damages, and recovering a gross amount that compares favorably with other uniform-reimbursement cases) and there were significant risks involved with the litigation.[51]

As for the lodestar cross-check, the billing rates are normal and customary for timekeepers with similar qualifications and experience in the relevant market. *Cuviello v. Feld Ent., Inc.*, No. 13-cv-04951-BLF, 2015 WL 154197, at *2 (N.D. Cal. Jan. 12, 2015) ("The Court has broad discretion in setting the reasonable hourly rates used in the lodestar calculation."); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001) (court can rely on its own experience); *accord Open Source Sec. v. Perens*, 803 F. App'x 73, 77 (9th Cir. 2020). Counsel also submitted a sufficient breakdown of the attorneys' hours to reach a conclusion about the lodestar and the positive multiplier.[52] The modest multiplier falls within the range of multipliers that courts approve. *Vizcaino*, 290 F.3d at 1051 n.6 ("Multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.") (cleaned up).

---

[51] Mot. for Attorney's Fees, Costs, and Incentive Awards – ECF No. 131 at 16–24; Von Rock Decl. – ECF No. 132 at 11–17 (¶¶ 37–56), 18–21 (¶¶ 60–69).

[52] Mot. for Attorney's Fees, Costs, and Incentive Awards – ECF No. 131 at 24–26; Von Rock Decl. – ECF No. 132 at 21–26 (¶¶ 70–83); Billing Records & Firm Resume, Exs. A–B to *id.* – ECF No. 132 at 30–44.

The court thus grants Class Counsel's request for fees of thirty-three percent of the Gross Settlement Amount, in line with similar wage-and-hour cases where the results obtained were excellent and the risks were great.[53]

Class Counsel also are entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 20 (9th Cir. 1994) (attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving reasonable costs in class action settlement). Costs compensable include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

The record establishes sufficiently the reasonableness of the requested costs.[54] The court approves the requested amount of $300,940.

### 8. *Cy Pres* Award

As detailed above, any unclaimed amount of the Net Settlement Amount will be given to the *cy pres* beneficiary Legal Aid at Work. This distribution is approved because it accounts for and has a substantial nexus to the nature of the lawsuit, the objectives of the statutes, and the interests of the silent class members. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 819–22 (9th Cir. 2012); *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038–41 (9th Cir. 2011).

### 9. Compliance with CAFA

On February 7, 2022, the defendants provided notice of the settlement and other information showing compliance with CAFA, 28 U.S.C. § 1715, to the appropriate government officials.[55] The court's final approval hearing was more than ninety days after service as required by CAFA.

---

[53] Mot. for Attorney's Fees, Costs, and Incentive Awards – ECF No. 131 at 22–23 (collecting cases).

[54] *Id.* at 26–27; Von Rock Decl. – ECF No. 132 at 26–27 (¶ 84); Cost Detail, Ex. C to *id.* – ECF No. 132 at 45–61.

[55] Von Rock Decl. – ECF No. 132 at 17–18 (¶¶ 57–58).

**10. Ancillary Items**

Upon the Effective Date, the named Plaintiffs and each Class Member, other than those who excluded themselves from the Class, will be deemed to have, and by operation of this Final Settlement Order and the Judgment will have released, waived and discharged with prejudice the Released Parties from the Released Claims.[56]

The court approves and orders adherence to the settlement implementation schedule set forth in the proposed order.[57]

Without affecting the finality of the Judgment, the court reserves jurisdiction over the implementation, administration and enforcement of the Judgment and the Settlement, and all ancillary matters.[58]

## CONCLUSION

The court approves the class-action settlement, including the fees and costs and service awards, but reduces the requested $30,000 in service awards to $22,500. This disposes of ECF Nos. 130 and 131.

**IT IS SO ORDERED.**

Dated: May 26, 2022

LAUREL BEELER
United States Magistrate Judge

---

[56] Proposed Order – ECF No. 130-2 at 3–4 (¶ 9), 6 (¶ 15).
[57] *Id.* at 5–6 (¶ 14).
[58] *Id.* at 6 (¶ 16).